EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar. No. 236225)
JEFFREY M. CHEMERINSKY (Cal. Bar No. 270756)
Assistant United States Attorney
Violent & Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0698/6520
     Facsimile: (213) 894-0141
     E-mail:    jeff.mitchell@usdoj.gov
                jeffrey.chemerinsky@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR. No. 14-297(A)-VAP |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date: February 23, 2016<br>Time:        9:00 a.m. |
| LARON DARRELL CARTER,<br>    aka "Birdd,"<br>    aka "Pi Birdd,"<br>    aka "Pi Pimpin Birdd,"<br>    aka "Garr Birdd,"<br>    aka "Garden Pimpin Birdd,"<br><br>         Defendant. | Place:       Courtroom of the<br>             Hon. Virginia A.<br>             Phillips |

Plaintiff United States of America, by and through its attorneys of record, Assistant United States Attorneys Jeff Mitchell and Jeffrey M. Chemerinsky, hereby file its Trial Memorandum.  The government

//

//

respectfully requests permission to file additional trial memoranda if necessary.

Dated: February 17, 2016          Respectfully submitted,

                                  EILEEN M. DECKER
                                  United States Attorney

                                  LAWRENCE S. MIDDLETON
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                   */s/ Jeffrey M. Chemerinsky*
                                  JEFFREY M. CHEMERINSKY
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   STATUS OF THE CASE.............................................1

     A.   Jury Trial Is Set to Begin on February 23, 2016..........1

     B.   The Indictment...........................................1

II.  ELEMENTS OF THE OFFENSES......................................1

     A.   Sex Trafficking of Minors in violation of 18 U.S.C.
          § 1591(a) (Counts 1, 3, 5, and 7)........................1

     B.   Transportation of a Child to Engage in Prostitution,
          in violation of 18 U.S.C. § 2423(a) (Counts 2, 4, 6,
          and 8)...................................................2

III. STATEMENT OF FACTS............................................3

     A.   Victims LH and AB........................................3

     B.   Victim MC...............................................4

     C.   Victim JC...............................................5

IV.  PRETRIAL MOTIONS AND FILINGS.................................5

V.   EVIDENTIARY AND LEGAL ISSUES.................................6

     A.   Expert and Lay Opinion Testimony........................6

     B.   Hearsay, Non-Hearsay, and Hearsay Exceptions............10

          1.   Prior Identifications of Defendant by a Witness.....10

          2.   Defendant's Statements.............................12

          3.   Co-conspirator's Statements........................13

          4.   Prior Consistent Statements........................13

          5.   Present Sense Impression and Excited Utterance......14

          6.   Records of Vital Statistics........................15

     C.   Scope of Cross Examination..............................15

     D.   Impeachment by Extrinsic Evidence and Prior
          Inconsistent Statements.................................16

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE

E.   Duplicates..............................................17

F.   Recorded Conversations..................................17

VI.   DEFENSES...............................................18

A.   Evidence Related to Defenses............................18

B.   Defense Expert Witnesses................................19

C.   Minor Cannot Consent....................................19

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

United States v. Brooks,
    610 F.3d 1186 (9th Cir. 2010)...................................19

United States v. Abel,
    469 U.S. 45, 55 (1984).........................................17

United States v. Barron,
    575 F.2d 752 (9th Cir. 1978)...................................18

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985)..................................15

United States v. Castillo,
    181 F.3d 1129 (9th Cir. 1999)..................................16

United States v. Cuozzo,
    962 F.2d 945 (9th Cir. 1992)...................................15

United States v. Dhingra,
    371 F.3d 557 (9th Cir. 2004))..................................19

United States v. Dicker,
    853 F.2d 1103 (3d Cir. 1988)...................................10

United States v. Elbert,
    561 F.3d 771 (8th Cir. 2009)...................................19

United States v. Elemy,
    656 F.2d 507 (9th Cir. 1981)...................................11

United States v. Fernandez,
    839 F.2d 639 (9th Cir. 1988)...................................12

United States v. Fleishman,
    684 F.2d 1329 (9th Cir. 1982)...................................7

United States v. Freeman,
    498 F.3d 893 (9th Cir. 2007)............................. 8, 9, 10

United States v. Gadson,
    763 F.3d 1189 (9th Cir. 2014).........................7, 8, 9, 10

United States v. Hinkson,
    526 F.3d 1262 (9th Cir. 2008)..................................17

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

United States v. Langford,
    802 F.2d 1176 (9th Cir. 1986)....................................7

United States v. Lewis,
    565 F.2d 1248 (2d Cir. 1977)...................................11

United States v. Matta-Ballesteros,
    71 F.3d 754 (9th Cir. 1995), modified, 98 F.3d 1100 (9th
    Cir. 1996).....................................................18

United States v. McDowell,
    918 F.2d 1004 (1st Cir. 1990)..................................13

United States v. McLellan,
    563 F.2d 943 (9th Cir. 1977), cert. denied, 435 U.S. 969
    (1978).....................................................14, 15

United States v. Navarro-Varelas,
    541 F.2d 1331 (9th Cir. 1976)..................................12

United States v. Ortega,
    203 F.3d 675 (9th Cir. 2000)...................................12

United States v. Schwyhart,
    123 Fed. Appx. 62, 66 (3rd Cir. 2005)..........................16

United States v. Simas,
    937 F.2d 459 (9th Cir. 1991)..................................7, 8

United States v. Skeet,
    665 F.2d 983 (9th Cir. 1982)....................................7

United States v. Smith,
    893 F.2d 1573 (9th Cir. 1990)..................................17

United States v. Smith,
    918 F.2d 1551 (11th Cir. 1990).................................12

United States v. Stuart,
    718 F.2d 931 (9th Cir. 1983)...................................14

United States v. Torres,
    908 F.2d 1417 (9th Cir. 1990)..................................18

iv

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

**FEDERAL STATUTES**

18 U.S.C. § 1591(a)..........................................1, 2, i

18 U.S.C. § 2423(a)..........................................1, 2, i

Fed. R. Evid. 607.................................................16

Fed. R. Evid. 608(b)...........................................16, 17

Fed. R. Evid. 611(b)..............................................15

Fed. R. Evid. 701.........................................7, 8, 9, 10

Fed. R. Evid. 703..................................................7

Fed. R. Evid. 801(c).............................10, 11, 12, 13, 14, 17

Fed. R. Evid. 803(1)..............................................14

Fed. R. Evid. 901 (b)(5)..........................................18

Fed. R. Evid. 1003................................................17

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   STATUS OF THE CASE**

    **A. Jury Trial Is Set to Begin on February 23, 2016**

A jury trial against defendant Laron Carter ("defendant") is scheduled for February 23, 2016.  The government estimates that its case-in-chief will last approximately five to six days.  The government expects to call approximately 13 witnesses in its case-in-chief.  Neither party has waived the right to trial by jury.  An interpreter is not required.  Defendant is in custody.

    **B. The Indictment**

Defendant is charged in a First Superseding Indictment with eight counts:  four counts of sex trafficking of a child and by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), (b)(2), (c); and four counts of transportation of a child in interstate commerce to engage in prostitution, in violation of 18 U.S.C. § 2423 (a).

**II.   ELEMENTS OF THE OFFENSES**

    **A. Sex Trafficking of Minors in violation of 18 U.S.C. § 1591(a)**
       **(Counts 1, 3, 5, and 7)**

The elements of the sex trafficking of minors or using force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a), as charged in Counts 1 and 3, are as follows:  (1) The defendant knowingly: recruited, enticed, harbored, transported, provided, or obtained by any means victim LH/AB, or benefitted financially, or received anything of value, from participating in a venture which recruited, enticed, harbored, transported, provided, or obtained by any means LH/AB; (2) the defendant did so knowing that: means of force, threats of force, fraud, coercion, or any combination of such means, would be

used to cause victim LH/AB to engage in a commercial sex act; or that LH/AB had not attained the age of 18 years and would be caused to engage in a commercial sex act; and (3) the recruiting, enticing, harboring, transporting, providing, or obtaining was in or affecting interstate commerce.

The elements of the sex trafficking of minors or using force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a), (c),[1] as charged in Counts 5 and 7, are as follows:  (1) The defendant knowingly: recruited, enticed, harbored, transported, provided, obtained, or maintained by any means victim MC/JC; or benefitted financially, or received anything of value, from participating in a venture which recruited, enticed, harbored, transported, provided, obtained, or maintained by any means MC/JC; (2) the defendant did so knowing, or in reckless disregard of the fact:  that means of force, threats of force, fraud, coercion, or any combination of such means, would be used to cause victim MC/JC to engage in a commercial sex act; or that MC/JC had not attained the age of 18 years and would be caused to engage in a commercial sex act; and (3) the recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining was in or affecting interstate commerce.

**B. Transportation of a Child to Engage in Prostitution, in violation of 18 U.S.C. § 2423(a) (Counts 2, 4, 6, and 8)**

The elements of transportation of a child in interstate commerce to engage in prostitution, as charged in Counts 2, 4, 6, and 8, are as follows:  (1) the defendant transported LH/AB/MC/JC from Arizona

---

[1] In 2006, Congress amended § 1951(a).  Given that the conduct relating victims LH/AB pre-dated the amendment, the pre-amendment version of the statute is applicable to the two § 1951(a) counts relating to LH/AB.

2

to California; (2) the defendant did so with the intent that LH/AB/MC/JC engage in prostitution; and (3) LH/AB/MC/JC was under the age of eighteen years at the time.

**III. STATEMENT OF FACTS**

This case centers on defendant's trafficking of four underage women, LH, AB, MC, and JC, for the purpose of the women serving as prostitutes.

The government expects to prove the following at trial, among other things:

**A. Victims LH and AB**

In approximately June 2003, when victim LH was 15 years old and had just had a baby, she met defendant in Phoenix, Arizona. Defendant started dating LH, including having sex with her despite the fact that LH was 15 years old.  Victims LH and AB were roommates at that time and LH introduced AB to defendant.

In or around November 2003, defendant told LH and AB that he knew someone in California and they could make money dancing, but they would not have to take their clothes off.  Defendant then drove LH and AB from Phoenix to Los Angeles.  When they arrived in Los Angeles, defendant told LH and AB that they were going to work as prostitutes.

LH worked as a prostitute for defendant for approximately a year to a year-and-a-half, and AB worked as a prostitute for defendant for approximately five months.  At some point, defendant instructed both LH and AB to have tattoos of birds placed on them, to denote that LH and AB belonged to defendant, who is known as "Birdd."

Both LH and AB observed defendant beat other girls working for defendant as prostitutes.  Defendant also stated that he would kill

3

LH if she talked to the police, and that he and his brothers (also pimps) knew where her family and baby were.

### B. Victim MC

In April 2010, MC met defendant in Los Angeles, and worked for defendant for a month as a prostitute.  MC was 13 years old at the time.  As with his other prostitutes, defendant established ground rules (standard in the pimp/prostitute world).  MC was to call defendant "Daddy," and was forbidden from looking at, or talking to, any other black men, because doing so would indicate disrespect and open the door for the other black men, presumed to be pimps, to recruit MC.  MC was required to call defendant when she turned a trick, and defendant told MC to charge a minimum of $80 for oral sex and $300 for "everything" (oral and vaginal intercourse). Defendant's final rule was to subject MC to violence if MC "disrespected" defendant.  Defendant would carry out his threat by subjecting MC to physical violence, and depriving her of food and sleep.

On or about May 23, 2010, after MC had worked for defendant for approximately one month, defendant drove MC to Las Vegas for the purpose of meeting men for prostitution.  The following night, defendant provided MC an outfit to wear but MC refused to wear it. Defendant punched MC in the face twice and in the abdomen twice for her disobedience.  After MC agreed to wear the outfit, one of defendant's other prostitutes escorted MC to the Hard Rock Hotel. While at the Hard Rock Hotel, the Las Vegas Metropolitan Police Department ("LVMPD") encountered MC and the other prostitute in the hotel after the other prostitute had solicited a customer for prostitution.  The LVMPD eventually rescued MC that night.

4

**C. Victim JC**

In December 2012, defendant began talking to JC, who was 16-years old and living in Minneapolis, Minnesota at the time. Defendant eventually persuaded JC to travel to Los Angeles, and defendant purchased a greyhound bus ticket for JC. On January 4, 2013, JC traveled by bus from Minnesota to Los Angeles.

When she arrived in Los Angeles, defendant picked her up at the bus station near LAX, gave her marijuana and alcohol, paid for lingerie and a manicure, and then took her to a Travelodge Hotel in El Segundo, California. At the hotel, defendant took pictures of JC in the lingerie and told JC that the pictures were now on Backpage.com.

Defendant told JC that she would now have to work as a prostitute for defendant. Defendant told JC that he would buy her clothes, food, wigs, condoms, and would give her a place to sleep, but all the money she earned as a prostitute would go directly to him. JC stayed with defendant, engaged in acts of prostitution, gave the money to defendant. JC ran away at one point, but she found herself lost with no money and returned. When she returned, defendant beat her and whipped her with a belt for leaving.

**IV. PRETRIAL MOTIONS AND FILINGS**

On February 8, 2016, the Court held a pretrial conference at which it discussed and provided its tentative rulings on the motions *in limine*. The following motions are still pending final ruling from the Court:

(1) Government's Motion *in Limine* to Admit Evidence Pertaining to Backpage Advertisement of Other Prostitutes (Dkt. No. 78);

(2)   Government's Motion *in Limine* to Admit Evidence Pertaining to Defendant's Two Prior Convictions for Aiding Prostitution (Dkt. No. 81);

(3)   Defendant's Motion *in Limine* to Exclude Defendant's Background and Character (Dkt. No. 82);

(4)   Defendant's Motion *in Limine* to Exclude Defendant's Admissions (Dkt. No. 83);

(5)   Defendant's Motion *in Limine* to Preclude Use of "Victim" (Dkt. No. 84);

(6)   Defendant's Motion *in Limine* for Pre-Trial Discovery and Order Vacating Protective Order (Dkt. No. 90);

(7)   Defendant's Motion *in Limine* to Introduce Evidence of Witnesses' Criminal History (Dkt. No. 91);

(8)   Defendant's Motion *in Limine* to Introduce Evidence of Witnesses' Sexual Background (Dkt. No. 97);

(9)   Defendant's Motion *in Limine* to Exclude Evidence of Witnesses' History and Background (Dkt. No. 98);

(10) Defendant's Motion *in Limine* to Exclude Government's Expert Witness (Dkt. No. 99); and

(11) Government's Motion *in Limine* to Exclude Testimony from Victim JC's Psychotherapists, filed under seal on February 9, 2016.

The parties filed joint proposed jury instructions and a statement of the Court on February 3, 2016.  Both parties have also now filed proposed *voir dire* questions.

## V.   EVIDENTIARY AND LEGAL ISSUES

### A. Expert and Lay Opinion Testimony

The admission of expert testimony or lay witness opinion testimony is within the discretion of the trial judge and will not be

6

disturbed unless "manifestly erroneous."  <u>United States v. Fleishman</u>, 684 F.2d 1329, 1335 (9th Cir. 1982); <u>United States v. Skeet</u>, 665 F.2d 983, 985-86 (9th Cir. 1982).  An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied on are of the type reasonably relied on by experts in the field.  Fed. R. Evid. 703.

The government has given notice of one expert witness: Oceanside Police Detective Jack Reed.  As set forth in the government's expert notice and summarized in the government's opposition to the defendant's Motion *in Limine* to Exclude Expert Testimony, Detective Reed will provide expert testimony regarding the operation of pimp-prostitution relationships, which assist the jury in understanding how this relationship typically works.

Lay opinion is admissible if it is "rationally based on the witness's perception" and is "helpful to clearly understanding the witness's testimony or to determining a fact in issue."  <u>See</u> Fed. R. Evid. 701; <u>United States v. Langford</u>, 802 F.2d 1176, 1179 (9th Cir. 1986).  In particular, a witness may testify concerning his or her understanding of the declarant's statements or conduct where such testimony may be helpful to the jury.  <u>See</u> <u>United States v. Simas</u>, 937 F.2d 459, 465 (9th Cir. 1991) ("The listener's understanding of the words and innuendo was helpful to the jury in determining what [the defendant] meant to convey.").

The Ninth Circuit has recently clarified the scope of Rule 701 in <u>United States v. Gadson</u>, 763 F.3d 1189 (9th Cir. 2014).  In <u>Gadson</u>, an investigating officer was permitted to testify at trial concerning the content of several intercepted telephone calls. Specifically, the officer testified at trial that he listened to

intercepted phone calls and testified that "Powell" refers to "Joe Powell, and references to "Donte" and "they have him on tape" to mean "the police had Donte Edwards on tape." Id. at 1210. The officer also offered an interpretation of a recorded statement that stated "'You know, he's the one' -- referring to the informant [] – 'that started this s**t.'" . . . "'That time with Batman, that was him.'" Id. at 1210.

On appeal, the defendant in Gadson argued that the officer's interpretation of these vague statements was inadmissible under Rule 701 because the officer was not a percipient witness to the conversation, his testimony was based on the investigation as a whole, and his interpretation of vague testimony usurped the jury's role as trier of fact. The Ninth Circuit disagreed. The Ninth Circuit reasoned that a jury may become confused by vague pronouns such as "who," "him," and "that." Id. The Ninth Circuit also held that the officer's interpretation of "that time" was admissible, because it was an interpretation of ambiguous conversation based upon the officer's direct knowledge of the investigation.

The Ninth Circuit held that "[i]n applying Rule 701 to the lay opinion testimony of law enforcement officers, we have held that an officer's interpretation of intercepted phone calls may meet Rule 701's "perception" requirement when it is an interpretation 'of ambiguous conversations based upon the officer's direct knowledge of the investigation." Id. at 1206 (citing United States v. Freeman, 498 F.3d 893, 904-05 (9th Cir. 2007); see also United States v. Simas, 937 F.2d 459, 464-65 (9th Cir. 1991) (finding no abuse of discretion in admitting officers' lay testimony "concerning their

understanding of what [defendant] meant to convey by his vague and ambiguous statements").

In Freeman, the Ninth Circuit also permitted an officer to interpret vague statements made during intercepted phone calls.  The officer testified that the statement "[m]an, it's done already" to mean "he's given the cocaine to [the defendant] and that he's received his money for it."  498 F.3d at 902. The Ninth Circuit held that "a police officer could provide lay witness opinion testimony regarding the meaning of statements in the defendant's intercepted phone calls because the testimony was based on the officer's "direct perception of several hours of intercepted conversations -- in some instances coupled with direct observation of [the defendants] -- and other facts he learned during the investigation."  498 F.3d at 904–05.

The Ninth Circuit has also recognized that "[l]ay witness testimony regarding the meaning of ambiguous conversations based on the witness's direct perceptions and experience may also prove 'helpful to the jury' for purposes of Rule 701."  Gadson, 763 F.3d at 1207 (citing Freeman, 498 F.3d at 904-05 (agent's "understanding of ambiguous phrases" based on the "direct perception of several hours of intercepted conversations" along with "direct observation" of defendants and "other facts he learned during the investigation" resulted in testimony that "proved helpful to the jury in determining what the [co-conspirators] were communicating during the recorded telephone calls").

On the other hand, an officer's testimony interpreting recorded conversations may fall outside the scope of Rule 701 if it is not based on the witness's perception (for example, if it is based on

speculation or hearsay) or is not helpful to the jury.  Id. at 1207 (citing Freeman, 498 F.3d at 905).  "Lay testimony is not helpful to the jury if it merely provides 'interpretation of clear statements' that are within the common knowledge of the jury."  Id. (quoting United States v. Dicker, 853 F.2d 1103, 1109 (3d Cir. 1988)).

In Gadson, the Ninth Circuit recognized that a minority of circuits have narrowly construed Rule 701 and barred officers from interpreting communications based on their review of the recordings and personal involvement in an investigation.  Id. at 1208.  The Ninth Circuit specifically rejected this approach and noted that those "evidentiary policies were rejected by the drafters of Rule 701."  Id.  The Ninth Circuit also specifically noted that "application of Rule 701 should not be influenced by concern that opinion testimony usurps the role of the jury."  Id. at 1209.

**B. Hearsay, Non-Hearsay, and Hearsay Exceptions**

Federal Rule of Evidence 801(c) defines "hearsay" as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  While hearsay is not admissible, the government will seek to introduce evidence that falls within non-hearsay and exceptions to the hearsay rules, some of which are described below.

1.   Prior Identifications of Defendant by a Witness

Prior identifications of defendant by a witness subject to cross-examination are excluded from the definition of "hearsay." Rule 801 specifically excludes from the definition of "hearsay" a prior identification made by a witness who is subject to cross-examination:

10

> (d) Statements that are not hearsay. A statement . . . is not hearsay [if] . . . [t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . (C) identifies a person as someone the declarant perceived earlier.

Fed. R. Evid. 801(d)(1)(C). "The reasons for admitting identification statements as substantive evidence are that out-of-court identifications are believed to be more reliable than those made under the suggestive conditions prevailing at trial, and the availability of the declarant for cross-examination eliminates the major danger of hearsay testimony." United States v. Elemy, 656 F.2d 507, 508 (9th Cir. 1981).

The "prior identification" exclusion from the definition of hearsay" applies regardless of whether the witness has accurately identified defendant during the witness's testimony at trial. See United States v. Lewis, 565 F.2d 1248, 1250-52 (2d Cir. 1977) (even though the witness could not identify defendant during the witness's trial testimony, and mistakenly identified a Deputy United States Marshal instead, evidence of that witness's prior, correct identification of defendant was deemed admissible under Rule 801(d)(1)(C)).

In addition, Rule 801(d)(1)(C) permits a witness to testify regarding an identification made by another witness provided that the other witness is available for cross-examination. See Elemy, 656 F.2d at 508 (explaining that Rule 801(d)(1)(C)'s rationale applies with equal force "when the person who testifies to the statement of identification is not the person who uttered it, so long as the latter also testifies and is available for cross examination").

11

Here, the government will seek to admit prior identifications by the victims of defendant, either through the victims who made the initial identifications or through another witness (so long as the witness who made the identification is available for cross-examination).

### 2.   Defendant's Statements

A defendant's statement is admissible only if offered against him by the government.  See Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).  A defendant's statement is not hearsay if the defendant "manifested an adoption or belief in its truth . . . ."  Fed. R. Evid. 801(d)(2)(B).

A defendant, on the other hand, cannot elicit his own prior statements, either on direct examination of his own witness, or cross-examination of the government's witness, because those statements are inadmissible hearsay.  See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).  Indeed, even where the government elicits the inculpatory portion of a defendant's statement from a witness, on cross-examination, the defendant is not entitled to elicit any exculpatory portion.  See id. at 682.  Moreover, a defendant cannot rely upon Rule 801(d)(1)(B), as an alternative basis for the admissibility of such testimony.  A prior consistent statement is not admissible if it is introduced in the absence of impeachment.  See United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir. 1976).

Statements not offered for their truth, but to provide context for what the defendant has said, such as the statements of persons in a conversation with the defendant, are not hearsay.  United States v.

12

Smith, 918 F.2d 1551, 1559 (11th Cir. 1990); United States v. McDowell, 918 F.2d 1004, 1007-08 (1st Cir. 1990).

At trial, the government intends to introduce evidence pertaining to two of defendant's Facebook accounts – Pi Birdd and Garr Birdd.  Defendant listed the Pi Birdd Facebook account on his Nevada parole forms, which the government will also introduce at trial.  The evidence from the Facebook accounts will take two forms. First, the government will introduce photos posted by defendant on his Facebook account, including a number of photos of women (many of whom have tattoos of a bird, which testimony at trial will show was a type of branding defendant expected of his prostitutes).  Several of the photographs feature defendant, either with other individuals or by himself.  The photographs will include images of some of the victims at trial.  Second, the government will introduce posts by and messages from defendant.  Many of the posts include references to being a pimp, the pimp life-style, and his controlling of prostitutes.

### 3.    Co-conspirator's Statements

Statements by one conspirator during the course of and in furtherance of the conspiracy may be used against another conspirator because such statements are not hearsay.  Fed. R. Evid. 801(d)(2)(E).  The government intends to introduce these statements for their truth under Rule 801(d)(2)(E).

In particular, here, the government will introduce co-conspirator statements from "Ducky" McCabe, who helped recruit victim JC to serve as a prostitute for defendant.

### 4.    Prior Consistent Statements

Prior consistent statements are admissible to rebut a charge of

13

recent fabrication or improper influence or motive.  Fed. R. Evid. 801(d)(1)(B); United States v. Stuart, 718 F.2d 931, 934 (9th Cir. 1983).  Rule 801(d)(1)(B) of the Federal Rules of Evidence provides that:  "A statement is not hearsay if -- . . . the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony and is offered: (i) to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground."

The government anticipates that it may seek to rehabilitate certain witnesses with prior consistent statements.  For example, if the defense attacks the credibility of the victim on cross examination, which is likely, the rule permits the government to admit consistent portions of victims' prior interviews with law enforcement that tend to rehabilitate the victims' credibility.

### 5.   Present Sense Impression and Excited Utterance

Fed. R. Evid. 803(1) provides an exception to the hearsay rule for statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Also, under Federal Rule of Evidence 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible evidence.  The Ninth Circuit has two requirements for a statement to qualify as an excited utterance: (1) there must be an exciting or startling event, and (2) the statement must be made while the declarant is still under the stress of excitement caused by the event.  United States v. McLellan, 563 F.2d 943, 948 (9th Cir. 1977),

14

cert. denied, 435 U.S. 969 (1978).  In order to admit evidence under a hearsay exception, the district court must find by a preponderance of evidence that the foundation requirements are satisfied. McLellan, 563 F.2d at 948.

The government may seek to elicit testimony from witnesses that fall within either one of these two rules.

### 6.   Records of Vital Statistics

Under Rule 803(9), "a record of birth, death, or marriage, if reported to a public office in accordance with a legal duty" is admissible.

Here, the government intends to introduce birth certificates for each of the four victims.

**C. Scope of Cross Examination**

Cross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.  The court may, in the exercise of its discretion, permit inquiry into additional matters as if on direct examination.  Fed. R. Evid. 611(b).  Additionally, under Federal Rule of Evidence 611(a), "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth;  (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  The scope of defendant's waiver is co-extensive with the scope of relevant cross-examination.  United States v. Cuozzo,

962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985).

**D. Impeachment by Extrinsic Evidence and Prior Inconsistent Statements**

Rules 607 and 608(b) do not permit the defendant to offer extrinsic evidence on a collateral issue -- i.e., only to contradict the witness.  Rule 607 permits a party to introduce extrinsic evidence to contradict a witness' statement on direct testimony. Fed. R. Evid. 607; United States v. Castillo, 181 F.3d 1129, 1132 (9th Cir. 1999).  The rule permitting contradiction by impeachment, however, is not without limits, the most basic being that a party may not use the rule to contradict a witness if the issue is "collateral" to genuine issues in the case -- i.e., that the only purpose for the evidence is to contradict the witness.  United States v. Schwyhart, 123 Fed. Appx. 62, 66 (3rd Cir. 2005)(unpub.)("We have recognized the doctrine of impeachment by contradiction, but it is limited by the collateral issue rule, which provides that evidence is inadmissible if it is offered solely for the purpose of contradiction and no other; that is, 'one may not contradict for the sake of contradiction; the evidence must have an independent purpose and an independent ground for admission.'" (quoting United States v. Payne, 102 F.3d 289, 294 (7th Cir. 1996)).

Similarly, Rule 608(b) provides that "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness'

16

character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." Fed. R. Evid. 608(b); see United States v. Hinkson, 526 F.3d 1262, 1306 (9th Cir. 2008) ("Rule 608(b) bars introduction of extrinsic evidence of a witness' past conduct.  On cross-examination, the witness may be impeached by referencing documents and probing the veracity of 'character for truthfulness or untruthfulness.' Nonetheless, Rule 608(b) 'limits the inquiry to cross-examination of the witness . . .  and prohibits the cross-examiner from introducing extrinsic evidence of the witness' past conduct.'" (quoting United States v. Abel, 469 U.S. 45, 55 (1984)).

Additionally, Federal Rule of Evidence 613(b) provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires.  This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2)."

**E. Duplicates**

"A duplicate is admissible to the same extent as an original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Evid. 1003; United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).  Here, many of the government's exhibits are duplicates of the originals.

**F. Recorded Conversations**

The government will present recorded conversations in this case

17

in the form of recorded calls.  One or more witnesses will provide the foundation for the calls the government selects to introduce at trial and identify the voices of the persons speaking in the calls. The foundation that must be laid for the introduction into evidence of recorded conversations is a matter largely within the discretion of the trial court.  There is no rigid set of foundational requirements.  Rather, the Ninth Circuit has held that recordings:

> [A]re sufficiently authenticated under Federal Rule of Evidence 901(a) if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.  This is done by proving a connection between the evidence and the party against whom the evidence is admitted, and can be done by both direct and circumstantial evidence.

United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995), modified, 98 F.3d 1100 (9th Cir. 1996)(internal citations and quotations omitted).  Witnesses may testify competently as to the identification of a voice on a recording.  A witness' opinion testimony in this regard may be based upon his having heard the voice on another occasion under circumstances connecting it with the alleged speaker.  Fed. R. Evid. 901 (b) (5); United States v. Torres, 908 F.2d 1417, 1425 (9th Cir. 1990) (testimony of voice recognition constitutes sufficient authentication).  Circumstantial evidence may also be introduced to identify the speaker in an intercepted conversation.  Fed. R. Evid. 901(b)(5), (6).

## VI.  DEFENSES

### A. Evidence Related to Defenses

Defendant has not given notice of any intent to rely on an alibi defense, an insanity defense, or a defense regarding mental condition, as required by the Federal Rules of Criminal Procedure. See Fed. R. Crim. Proc. 12.1, 12.2.  Therefore, defendant should be

precluded from presenting evidence of any such defenses.  See United States v. Barron, 575 F.2d 752, 756 (9th Cir. 1978) (holding that alibi witnesses not timely disclosed were properly excluded at trial).

## B. Defense Expert Witnesses

Also, defendant has not provided the United States with any notice concerning his intent to call any expert witnesses. Therefore, to the extent the defendant may attempt to introduce or use any documents at trial that he has not produced or any expert testimony, the United States reserves the right to object and to seek to have such documents or experts precluded.

## C. Minor Cannot Consent

Any claim that the minors were willing to engage in sexual activities is not a defense to the offense of sex trafficking of minors.  See United States v. Brooks, 610 F.3d 1186, 1199 (9th Cir. 2010) (citing United States v. Dhingra, 371 F.3d 557, 567 (9th Cir. 2004))("The victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation."); United States v. Elbert, 561 F.3d 771, 777 (8th Cir. 2009)(minor victims cannot legally consent to perform sex acts under § 1591).