Laron D. Carter
_____
NAME

#49082-048
_____
PRISON IDENTIFICATION/BOOKING NO.
Federal Correctional Institution Tucson
P.O.Box 23811, Tucson,AZ 85734
_____
ADDRESS OR PLACE OF CONFINEMENT

Note:     If represented by an attorney, provide name, address, & telephone
          number. *It is your responsibility to notify the Clerk of Court in
          writing of any change of address.*

**FILED**
CLERK, U.S. DISTRICT COURT

09/08/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: ____GSA____ DEPUTY

NO FEE REQ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Laron Darrell Carter<br>_____<br>FULL NAME OF MOVANT<br>(Include name under which you were convicted)<br><br>Petitioner. | CASE NUMBER:<br><br>CV ___2:25-cv-08559- ODW___<br>To be supplied by the Clerk of the United States District Court<br><br>CR ___2:14 - cr-00297 - VAP___<br>Criminal case under which sentence was imposed. |

### MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY 28 U.S.C § 2255

## INSTRUCTIONS - READ CAREFULLY

This motion must be legibly handwritten or typewritten and signed by the movant under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form. Where more room is needed to answer any questions use reverse side of sheet.

Additional pages are not permitted. No citation or authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

Upon receipt, your motion will be filed if it is in proper order. **NO FEE** is required with this motion

If you do not have the necessary funds for transcripts, counsel, appeal, and other costs connected with a motion of this type, you may request permission to proceed *in forma pauperis*, in which event you must execute the declaration on the last page, setting forth information establishing your inability to pay costs. If you wish to proceed *in forma pauperis*, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different judges or divisions either in the same district or in a different district, you must file separate motions as to each judgment.

Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the motion you file seeking relief from any judgment of conviction.

When the motion is fully completed, the original and three (3) copies must be mailed to the Clerk of the United States District Court, whose address is 255 East Temple Street, Suite TS-134, Los Angeles, California 90012.

CV-67 (05/18)

MOTION
28 U.S.C. § 2255

Page 1 of 12

MOTION

1. Name and location of court that entered judgment of conviction under attack: United States District Court, Central District of California-Western Division, 350 West First Street, Suite 4311, Los Angeles, California 90012

2. Date of judgment of conviction: April 27, 2016

3. Length of sentence: 40 years imprisonment        Sentencing judge: Virginia A. Phillips

4. Nature of offenses for which you were convicted: 18 U.S.C. Section 1591(a)(1), (a)(2), (b)(1), (b)(2), (c), and 18 U.S.C. Section 2423(a)

5. What was your plea?   [x] Not Guilty   [ ] Guilty   [ ] Nolo Contendere

6. Kind of trial:   [x] Jury   [ ] Judge only

7. Did you testify at the trial?   [ ] Yes   [x] No

8. Did you appeal from the judgment of conviction?   [x] Yes   [ ] No

9. If you did appeal, answer the following:

(a) Name of court: U.S. Court of Appeals, For The Ninth Circuit

(b) Result: Convictions and sentence on Counts One - Twelve affirmed, convictions and sentence on Counts Thirteen - Fourteen reversed and remanded for a new trial. United States v. Carter, 907 F.3d 1199 (9th Cir. 2018)

(c) Name  of court: Supreme Court of the United States

(d) Date or result: Certiorari denied. S. Ct. No. 23-7371

(e) Date or result: October 7, 2024

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?   [x] Yes   [ ] No

11. If your answer to question number 10 was "yes," give the following information:

(a)(1) Name of Court: United States District Court for the Central District of California, Western Division

(2) Nature of proceeding: Notice of Motion and Motion To Dismiss Counts One Through Ten of the Second Superseding Indictment For Violation of the Statute of Limitations, Case No. 2:14-cr-297-VAP, Doc. 337

(3) Grounds raised: Dismissal of Counts One - Ten per the statute of limitations

(4) Did you receive an evidentiary hearing on your petition, application, or motion?   [ ] Yes   [x] No

(5) Result: Denied

(6) Date of result: July 10, 2020

(b)(1) Name of Court: United States District Court for the Central District of California

(2) Nature of proceeding: First Notice of Motion and Motion to Dismiss Counts 1-12... Case No. 2:14-cr-297-VAP, Doc 348

(3) Grounds raised: Due to post-indictment delay under the Sixth Amendment and ineffective assistance of counsel under the Six Amendment when attorney waived a post-indictment delay claim

(4) Did you receive an evidentiary hearing on your petition, application, or motion? [ ] Yes [X] No

(5) Result: Denied

(6) Date of result: August 12, 2021

(c)(1) Name of Court: United States Court of Appeals for the Ninth Circuit

(2) Nature of proceeding: Petition for Rehearing and Rehearing En Banc, Appeal No. 21-50234, Doc 51-1

(3) Grounds raised: Overrule or at least clarify the "jurisdictional" rule adopted in Thrasher, which itself recognized that it was creating a conflict with several circuits and yet did not appreciate how far its "jurisdictional" rule departed from the prevailing view and Supreme Court precedent

(4) Did you receive an evidentiary hearing on your petition, application, or motion? [ ] Yes  [X] No

(5) Result: denied

(6) Date of result: January 30, 2024

(d) Did you appeal, to an appellate federal court having jurisdiction, the results of the action taken on any petition, application, or motion?

(1) First petition, etc. [x] Yes     [ ] No

(2) Second petition, etc. [ ] Yes  [X] No

(3) Third petition, etc. [ ] Yes  [X] No

(e) If you did not appeal from the adverse action on any petition, application, or motion, explain briefly why you did not: The Ninth Circuit concluded the statute of limitations issue, presented through an ineffective assistance of trial counsel claim, was actionable under 28 U.S.C. Section 2255, not on direct review.

12. State concisely every ground on which you claim that you are being held unlawfully.

A. Ground one:

Under Murray v. Carrier, 477 U.S. 478, 496 (1986), Schlup v. Delo, 513 U.S. 298 (1995), and Bousley v. United States, 523 U.S. 614 (1998), petitioner is actually innocent of Count One - Four of the Second Superseding Indictment (SSI), Doc. 195, because petitioner can show "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him", Schlup, Id. at 327-328, and can show "factual innocence, not mere legal insufficiency," Bousley, Id. at 623.

Supporting facts:

On February 5, 2016, defendant was charged by First Superseding Indictment (FSI). Doc. 125. On March 30, 2016, petitioner was charged in Count One - Four by the SSI with two violations of 18 U.S.C. Section 1591(a)(1), (a)(2), (b)(1), (b)(2), (c), and two violations of 18 U.S.C. Section 2423(a). Doc. 195. The SSI alleges in Count One that between "June 2003 [-] November 22, 2004" petitioner was engaged in criminal conduct. See Exhibit- A, 1-10.

Count Two between: "November 1, 2003 [-] November 22, 2004" petitioner was engaged in criminal conduct. Count Three: between "June 2003 [-] January 31, 2004" petitioner was engaged in criminal conduct. And, Count Four between: November 1, 2003 [-] January 31, 2004" petitioner was engaged in criminal conduct. Doc. 195, Id. See Exhibit- A, 7-10.

The attached California Department of Corrections (CDC) records, which are independently verifiable by the U.S. Marshal Service, show petitioner was incarcerated in two different counties of California between June 2003 - November 2004. As a result, no reasonable juror would find guilt beyond a reasonable doubt as petitioner cannot be in two places at once. Thus, petitioner is actually innocent of the charges that span across this time frame as a matter of law. See Exhibit- A, 11-25.

B. Ground Two:

Under Kimmelman v. Morrison, 477 U.S. 365, 375 (1986), petitioner's trial counsel performed unconstitutionally deficiently by failing to file a motion to dismiss Counts One - Ten of the SSI based upon the government's violation of the statute of limitations. That is, "[w]here defense counsel's failure to litigate a [substantive] claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his [substantive] claim is meritorious and that there is a reasonable probability that the verdict [and/or] outcome of the proceeding would have been different." Id. at 375.

Here, counsel failed to file a motion to dismiss the SSI based upon 18 U.S.C. Section 3282 because 18 U.S.C. Section 3283 does not apply retroactively to the charged conduct in Counts One - Ten, and the categorical approach to the term "sexual abuse" does not support the application of Section 3283. This failure to file such a motion to dismiss was objectively unreasonable, and caused the prejudice of petitioner being tried, convicted, and sentenced to a lengthy term of imprisonment on Counts One - Ten, instead of having those charges dismissed before trial.

For all of the reasons stated in Callahan's motion to dismiss, and petitioner's second appellate counsel, Mr. Benjamin L. Coleman's opposition to motion to dismiss, Appeal No. 21-50234, Doc. 25 and Doc. 27-1, trial counsel was unquestionably ineffective, and his deficient performance clearly caused the prejudice comprised of conviction and imprisonment. See Exhibit-B, 1-30.

Supporting Facts:

Between March 30, 2016 - April 19, 2016, trial counsel did not file any motion to dismiss on the public docket seeking dismissal based on the government's violation of the statute of limitations. See, Doc. 195 - April 19, 2016. On April 6, 2020, newly appointed trial counsel, Mr. Richard M. Callahan, Jr., on remand filed a 'Motion To Dismiss Counts One Through Ten', Doc. 337, with an April 26, 2019 declaration from former trial counsel, Mr. John N. Aquilina. Doc. 337, Page 13.

In Aquilina's declaration, he admits under oath:

"[p]rior to the commencement of the trial, my co-counsel, Ian Wallach and I discussed the issue of the applicable statute of limitation. When I researched the statute, I noted the filing of the indictment was timely, but did not take note of the date (July 26, 2006) of the enactment of the statute. In the course of the appellate proceedings, I was made aware for the first time that the statute of limitations covering the charged offenses, 18 U.S.C. Section 3299, was not enacted until 2006, which was after the conduct alleged in Counts One through Ten of the Second Superseding Indictment purportedly occurred. Had I realized before trial that Section 3299 was enacted subsequent to the offense conduct charged in Counts One through Ten, I would have raised a statute of limitations defense on those counts with the Court." Doc. 337, See Exhibit- B,14.

On February 2, 2023, Coleman filed a 'Opposition To Motion To Dismiss' with the Ninth Circuit. Appeal No. 21-50234, Doc. 25, doubling-down on the inexplicable nature of trial counsel's failure to seek dismissal upon the statute of limitations described therein. Both this Court and the Ninth Circuit reasoned that petitioner's claim should be brought under 28 U.S.C. Section 2255 instead of fragmenting the issue of ineffective assistance of counsel across direct review issues. At this juncture, Aquilina, Callahan, and Coleman have shown a clear-cut ineffective assistance of counsel claim exists. see Exhibit- B, 15-27

C. Ground Three:

Under Hinton v. Alabama, 571 U.S. 263 (2014), trial counsel performed unconstitutionally deficiently by failing provide the government with timely notice of an alibi defense under Fed. R. Crim. P. 12.1, and by failing to conduct basic research of petitioner's whereabouts at the time alleged in Counts One - Four of the SSI because "[a]n attorney's ignorance on a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland." Hinton, Id. at 274.

Counsel's deficient performance described above caused the prejudice of depriving petitioner of a Ninth Circuit Model Jury Instruction 6.01 alibi defense at trial, which resulted in the jury not hearing/viewing the California Department of Corrections records proving petitioner's whereabouts in 2003-2005, respectively. Had counsel provided timely notice of an alibi defense, acquired the Ninth Circuit Model Jury Instruction 6.01, and presented the corresponding CDC records, the outcome of the proceeding would have been different because defendant would more than likely have been acquitted.

Supporting Facts:

Between March 30, 2016 - April 19, 2016, trial counsel did not timely file a Rule 12.1 Notice of an Alibi Defense with the Court and/or the government. As a result, when some 7000 page of discovery were dumped on trial counsel and petitioner on the eve of trial in early April 2016, the CDC records were discovered, but excluded by the Court in limine due to the government's Rule 12.1 objection.

Had counsel performed basic research on petitioner's whereabouts prior to the 7000 pages being dumped, petitioner and counsel would have already been in possession of the CDC records and could have provided timely notice of an alibi defense to the government in accordance with Rule 12.1. However, because of counsel's unreasonable performance, the CDC records were not discovered until it was too late for the Court to admit the exhibits for an alibi defense.

As a result, the jury did not receive the CDC records, nor any corresponding testimony from a CDC official/witness to authenticate the CDC records, and the jury thus presumed petitioner did not have an alibi for his whereabout between 2003-2005 during the times/places charged in the SSI. This likely caused petitioner to be found guilty on at least Counts One - Four rather than being acquitted.

D. Ground Four:

Under Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012), trial counsel, Mr. Brian A. Newman, performed unconstitutionally deficiently by strongly/adamantly advising defendant not to accept the government's March 26, 2015 plea offer (that contained a 10 year sentence and non-prosecution agreement for human trafficking charges) because counsel had a prepared a Notice of Motion And Motion To Dismiss Superseding Indictment For Intentional Delay And Prejudice he assured defendant would be granted by the Court.

Counsel's deficient performance prejudiced defendant because counsel caused the government's March 26, 2015 plea offer (which had a one week deadline attached to it) to lapse by urging defendant not to accept it in lieu of counsel's anticipated Motion To Dismiss Superseding Indictment For Intentional Delay And Prejudice. As a result, defendant was prejudiced by the conviction on multiple counts as well as by being sentenced to 30 years more than the March 26, 2015 plea offer.

That is, to show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. The defendant must also show "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, Id. at 1385.

Supporting Facts:

On March 26, 2015, defendant and trial counsel attended a reverse proffer session at the U.S. Attorney's Office where the government was represented primarily by HSI Special Agents Nunez and Falche, as well as AUSA David Herzog. About halfway through the meeting, AUSA Herzog "stated that he has not drafted the plea offer; however, the plea offer that would likely be offered to CARTER would include a 10 year mandatory minimum sentence and a non-prosecution agreement for human trafficking charges. The deal had a one week deadline on it. See Exhibit- C, 2.

It should be noted, the offer spoke to a "specific sentence", not a "sentencing range", Fed. R. Crim. P. 11(c)(1)(C), and included a non-prosecution agreement. That sentence was a 10-year mandatory minimum sentence under Rule 11(c)(1)(C). Rather than seizing upon such a favorable offer, counsel advised defendant not to accept the plea offer during the reverse proffer, because counsel was absolutely sure he could get the indictment dismissed by the Motion To Dismiss Superseding Indictment For Intentional Delay And Prejudice he was drafting, and that defendant would win at a jury trial.

A week after the reverse proffer, the government issued a much less favorable offer of 262 months imprisonment because counsel failed to show interest in the government's initial offer at the reverse proffer. Counsel rejected, and advised defendant to reject that less favorable offer, and any plea offer in lieu of his impending Motion To Dismiss. After April 20, 2015, counsel provided defendant with a copy of his proposed Motion To Dismiss. Motion To Dismiss, and told defendant he planned to file the motion promptly to validate his reasons for advising defendant to reject the plea. See Exhibit- C, 3-11.

Counsel never filed the motion. After delay, and more delay, defendant grew impatient and distrustful of counsel because he simply would not file the motion he promised he would file that served as the justification to reject the 10-year and non-prosecution plea offer. Defendant ultimately terminated counsel's representation, and was never provided any other plea offers as a result of counsel's deficient performance and mishandling of the March 26, 2015 plea offer.

This deficient performance by counsel squarely prejudiced defendant under Lafler, Id. at 1385, because as a result of counsel's deception, defendant went to trial and was convicted on human trafficking charges and sentenced to 40 years imprisonment. In other words, absent counsel's advice and promise to acquire dismissal per his draft motion to dismiss, defendant would have accepted the government's 10-year plea offer and non-prosecution agreement, and would have been convicted on less serious charges as well as would have received a sentence of some 30 years less.

E. Ground Five:

Under United States v. Cronic, 466 U.S. 648, 659-661 (1984), trial counsel performed unconstitutionally deficiently by repeatedly seeking to remove Juror No. 7 on the eve of jury deliberations when Juror No. 7 was not in fact "sleeping" but was actively taking notes, and happened to be African American on the jury.

Furthermore, despite contrary observations of Juror No. 7 by the government and the Court in open court, counsel continued to seek Juror No. 7's removal over defendant's objections at the defense table. Ultimately, counsel succeeded and Juror No. 7 was removed right before jury deliberation commenced (after Juror No. 7 heard the entire trial and all the evidence) and was replaced by an alternate juror who happened to be a former attorney.

Trial counsel's deficient performance prejudiced defendant because Juror No. 7 was likely, based on her note-taking, a strong hold out against defendant's guilt. As a result, defendant was deprived of a fair trial by the deprivation of Juror No. 7 from the jury room during deliberations.

In other words, defendant was prejudiced by Juror No. 7's removal because Juror No. 7 did not participate in the deliberation process, which led defendant to be found guilty instead of acquitted on multiple counts that he may have been found not guilty on or had a mistrial declared on those same counts had Juror No. 7 been present in deliberations.

Specifically, in United States v. Depue, 879 F.3d 1021, 1027-1028 (9th Cir. 2018) the Ninth Circuit held that a juror should not dismissed for reasons related to their position on the merits of the case. Here, trial counsel clearly singled-out Juror No. 7 because of her thorough note taking, and advanced false claims that Juror No. 7 was simultaneously sleeping and taking notes to create a manufactured basis for her dismissal.

Counsel essentially sabotaged Juror No. 7 because he knew she was likely to be a holdout on the jury during deliberations. In doing so, counsel violated Cronic's requirement that counsel serve as an advocate presenting meaningful adversarial testing by seeking removal of the black juror on false claims of her sleeping. This undoubtedly prejudiced defendant because of the resulting jury verdict that Juror No. 7 was not a part of.

Supporting Facts:

On April 20, 2016 (Day Two), trial counsel stated, and the following exchange took place:

MR. AQUILINA: Your Honor, I'm concerned, and I have a motion, regarding juror number 7. During Agent Nunez' testimony this afternoon, she appears to have been asleep.
THE COURT: Is that Ms. Picket?
MR. AQUILINA: I'm sorry?
THE COURT: Is that Ms. Pickett?
MR. AQUILINA: I don't have the name in front of me.
THE COURT: Yes
MR. MITCHELL: I believe it is, your Honor.
THE COURT: It is. Well, it's a little hard to tell. Sometimes it looks like her eyes are closed, but they're not because she's making notes or something.

Trial Transcript, Day Two, Page 163, Id. at 23 - Page 164, Id. at 1-10. See Exhibit- D, 1-2.

On April 21, 2016 (Day Three), trial counsel stated, and the following exchange took place:

MR. AQUILINA: Your Honor, I just wanted to clarify one thing from yesterday, and that is, I indicated on the record that when I noticed that Juror No. 7 appeared to be asleep, that I said that the defense had a motion to bring, but I never indicated what the motion was. The motion at that point -- or this point, would have been to inquire of Juror No. 7, and in fact if she had missed any testimony or evidence, that we would move to have her excused and replaced with the alternate juror.
THE COURT: All right. What's the Government's position?
MR. MITCHELL: Your Honor, I noticed during my opening and during our first witness that the juror's head was down and what appeared to be possibly sleeping. But after closer examination, I noticed that she was writing the entire time, it seems. So at this point, I think with the CRD's instructions to her or inquiry of her I think would be sufficient, and I don't think there's any need to replace her at this time.
THE COURT: Well, Ms. Rogers reported to me that after she spoke to the jury yesterday afternoon they all agreed that it was important, they would make more efforts. One of them offered to bring diet Coke into the courtroom. That offer was rejected. But I watched after that in the last session, Mr. Nakamura appeared very alert. He was the other juror I had mentioned. It's hard to tell with Juror No. 7. Sometimes it does look like she's asleep, but then it appears that she's writing. I will take the matter under submission and continue to observe her, and we'll see how it goes.

Trial Transcript, Day Three, Page 5, Id. at 15 - Page 6, Id. at 1-20. See Exhibit- D, 3-4.

On April 26. 2016 (Day Five), trial counsel stated, and the following exchange took place:

MR. AQUILINA: Yes, Your Honor. It would still be our position that Juror No. 7, I believe Ms. Pickett, should be excused.
THE COURT: And replaced with the alternate?
MR. AQUILINA: With the alternate.
THE COURT: Any objection?
MR. MITCHELL: No objection, Your Honor.
THE COURT: All right. I think I'll wait until -- I'm trying to think what the best way to handle this is. I think what I'll do is, after all the closings and the instructions, I will tell Ms. Pickett, Juror No. 7, that she's been selected as the alternate, that she's still under the instruction not to discuss the case, et cetera, just like I would do with a regular alternate. And then I'll tell the other -- because I don't want to humiliate her in front of everyone else. And then I'll excuse the 12 jurors to go and deliberate. Is that agreeable?

MR. MITCHELL: That's fine with the Government.

MR. AQUILINA: That's fine. I wasn't quite understanding. The Court's going to select Ms. Pickett as the alternate?

THE COURT: I'm going to tell her that -- I'm going to excuse her, but rather than humiliate her in front of everyone, I'll tell her that she's been selected as the alternate and that's why she's not going back in.

MR. Aquilina: That's fine.

Trial Transcript, Day Five, Page 183, Id. at 9 - Page 184, Id. at 1-10. See Exhibit- D, 5-6.

On April 26, 2016 (Day Five), trial Judge stated:

THE COURT: All right. Now, except for Juror No. 2, Ms. Pickett, you've been selected to be the alternate in the case, so I'm going to ask you to remain behind. And all the rest of you are excused at this time. Take anything that -- your notebooks and anything that you brought into the courtroom with you to the jury room.

(The jury exits courtroom to commence deliberations.)

(Out of the presence of the jury, except Juror no. 2:)

THE COURT: All right. Ms. Pickett, it is now my opportunity to thank you very much for your service.

The role of an alternate is a little bit thankless because you put in the work of sitting through the trial and then you don't deliberate with your fellow jurors. But we do need always to have at least one alternate, and we do appreciate your service very much.

Trial Transcript, Day Five, Page 224, Id. at 8-22. See Exhibit- D, 7.

JURY SEATING CHART: Jury No. 2 was Rebecca Salazar, Not Cynthia Pickett who was Juror No. 7. See Exhibit- D, 8.

On April 27, 2016, defendant was found guilty by the jury that did not include Juror No. 7 in the deliberations after she sat through 6 days of trial and heard all the evidence.

F. Ground Six:

Under Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999), trial counsel's performance was unconstitutionally deficient because he failed to investigate and/or secure the appearance of Los Angeles County Sheriff's Deputy (LASD), Mr. Cary Bell, for trial as a defense witness.

This deficient performance prejudiced defendant because Bell's testimony and prior statements would have shown he was investigating another alleged perpetrator. For example, Bell's March 5, 2013 report where he describes his traffic stop of a orange Cadillac GTS with J.C. present in the vehicle shows Bell had no information pertaining to defendant.

That is, only after Bell subjected J.C. to coercive circumstances, obtained her Facebook login password, and printed out a one-to-one photo array of defendant, did Bell have any information regarding defendant. Trial counsel's failure to examine Bell across the one-to-one photo array and highly suggestive identification procedure prejudiced the defense.

Specifically, had the jury heard that Bell only involved defendant into his investigation after he pressured J.C. to get into her Facebook account, and subsequently subjected J.C. to an unduly suggestive photo-array the jury might have acquitted defendant because of the lack of credibility shown through such flimsy tactics employed by Bell.

Supporting Facts:

On October 28, 2015, trial counsel's private investigator, Mr. John White, generated a Memorandum to trial counsel detailing his interview with LASD Bell about the March 5, 2013 traffic stop and resulting investigation. Mr. White's Memorandum to trial counsel contained the following Footnote:

"John's note: I do not believe Detective Bell was telling the truth when he said he did not write a report. It is standard practice in law enforcement whenever anyone is taken into custody a report is written." See Exhibit- E, 1.

In fact, a report was discovered by trial counsel that was generated/authored by LASD Stonich describing his investigation into another person, who he believed was the actual pimp and/or perpetrator at the time he initiated the March 5, 2013 traffic stop of the orange Cadillac GTS where J.C. was found to be present. See Exhibit- E, 2-4.

As the Court public docket reflects in this case (Witness List, Subpoenas) LASD Bell was identified as a defense witness and his attendance was subpoenaed for trial, but trial counsel never called LASD Bell to the witness stand when it was trial counsel's turn to put on the defense. See Exhibit- E, 5-10.

Had counsel called LASD Bell to the witness stand, LASD Bell would have been compelled to testify that he falsified his conclusion that defendant was the target of his investigation, when in fact he was investigating an entirely different person suspected of sex trafficking. The jury would have been likely to acquit based on this evidence being shown.

G. Ground Seven:

Under United States v. Cronic, 466 U.S. 648, 659 (1984), trial counsel's performance was unconstitutionally deficient where he failed to file a Rule 33 motion based on false testimony pursuant to Napue v. Illinois, 360 U.S. 264, 269 (1959) and United States v. Renzi, 769 F.3d 731, 751-752 (9th Cir. 2014) in the wake of J.C.'s testimony that she was physically present with defendant on January 19, 2013 engaging in sex trafficking activities.

Although counsel filed a Rule 33 motion, he did not include any argument whatsoever seeking a new trial based on the clearly false testimony provided by J.C., that the government knew was false given defendant's imprisonment records, and three that implicated defendant so as to affect the jury's decision on whether to convict or not. Had counsel filed such a motion based on the testimony surrounding January 19, 2013 - such a motion likely would have succeeded.

Defendant was prejudiced by counsel's failure to file such a motion, because to date the false testimony has not been challenged or identified as false testimony in violation of Napue and Renzi. Simply put, defendant would not be convicted of the counts supported by J.C's testimony regarding January 19, 2013, and the convictions and sentence imposed constitute the prejudice defendant is still subjected to at this time.

Supporting Facts:

On April 22, 2016 (Day Four), J.C. stated, and the following exchange took place:

MR. AQUILINA: No. I'm not asking if you were arrested. I'm asking -- let me ask a double question. Were you at a police station and you called Mr. Carter to pick you up and he did so?
J.C: Yeah. I -- I think. Yeah.
MR. AQUILINA: Was that the Gardena Police Department?
J.C: I don't know if it was Gardena.
MR. AQUILINA: Okay.
J.C: But I remember being in jail and him coming and getting me, yes.
MR. AQUILINA: And at that time you told the police that you were working for Mr. Carter, did you not?
J.C: Yes.

Trial Transcript, Day Four, Page 125, Id. at 11-22. See Exhibit- F, 1.

On April 26, 2016 (Day Five), trial counsel stated:

MR. WALLACH: She tells Officer Stonich that Carter picked her up from the Gardena Police Department on January 19th. We know he's in custody on January 19th.

Trial Transcript, Day Five, Page 188, Id. at 22-24. See Exhibit- F, 2.

On April 26, 2016 (Day Five), trial counsel stated, and the following exchange took place:

MR. AQUILINA: Did Ms. Collaso tell you how long she was with Birdd?
DETECTIVE STONICH: From January 6th to the 21st of 2013.

Trial Transcript, Day Five, Page 29, Id. at 24-25. See Exhibit- F, 3.

On April 26, 2016 (Day Five), trial counsel stated:

MR. WALLACH: We know January 14th, 2013, Mr. Carter goes back into custody. And January 19th, Collaso says Carter picked her up at the Gardena police station.

Trial Transcript, Day Five, Page 208, Id. at 23-25. See Exhibit- F, 4.

This testimony is directly contradicted by the Criminal Complaint, Doc. 1, Page 26, The State of Nevada Board of Parole Commissioners Parole Agreement and the testimony by Officer Stronich, elicited during cross-examination. See, Exhibit-F, 5-6.

H. Ground Eight:

Under United States v. Cronic, 466 U.S. 648, 659 (1984), trial counsel's decision to call Mr. Evan Jackson, Gardena Police Department Officer ("Jackson") constituted a "complete denial of counsel" because counsel elicited inculpatory testimony from Jackson about prostitution that allegedly occurred on January 19, 2013 - a date where defendant was incarcerated at Las Vegas, Nevada in the High Desert State Prison.

The government did not call Jackson, and did not elicit testimony about prostitution on January 19, 2013 - and so for counsel to do so - counsel effectively served as an undercover prosecutor bringing forth prejudicial information about defendant and/or attempting to implicate defendant in front of the jury. This completely deprived defendant of his Sixth Amendment right to counsel, because counsel should have known defendant was incarcerated on that date.

The resulting prejudice from counsel's complete denial of advocacy in this regard is that the jury heard evidence about January 19, 2013 that gave the impression defendant was engaged in prostitution activities on that day, despite being physically incapacitated in Las Vegas, Nevada. In other words, it is more likely than not that had counsel not called Jackson to testify, the jury would have acquitted defendant on activities alleged to have occurred on January 19, 2013.

The outcome of the proceeding most likely would have been different had counsel not called Jackson to testify and had counsel not elicited testimony about January 19, 2013 - especially with the independently verifiable prison records showing where defendant was housed - directly at counsel's disposal.

Supporting Facts:

On January 14, 2013, defendant was sentenced to 12-36 months imprisonment in the Clark County District Court, Las Vegas Nevada until December 4, 2013. State of Nevada, Board of Parole Commissioners Report. See Exhibit- G, 1.

On April 26, 2016, counsel called Jackson to the witness stand under the guise of using his testimony to impeach the credibility of another government witness.

Trial Transcript, Day Five, Page 15, Id. at 13- Page 19, Id. at 17. See Exhibit- G, 2-6.

The jury thus heard evidence about defendant allegedly engaging in prostitution on January 19, 2013.


I. Ground Nine:

Under United States v. Cronic, 466 U.S. 648, 659 (1984), trial counsel's performance was unconstitutionally deficient by failing to object and/or file a motion to dismiss Count Five and Count Seven for constructive amendment of the indictment on those counts, and appellate counsel's performance was unconstitutionally deficient by failing to raise the constructive amendment of the indictment on those counts on direct appeal.

Trial counsel had plenty of opportunity to challenge the constructive amendment of Count Five and Count Seven in the verdict form within 14 days of the verdict during his window to file post-trial motions, but failed to do so. Likewise, appellate counsel had a strong opportunity to raise the constructive amendment of Count Five and Count Seven in defendant's opening brief on appeal, but did not. That claim would have likely resulted in vacatur/reversal on those counts.

This is especially true because United States v. Ward, 747 F.3d 1184, 1189-1194 (9th Cir. 2014) was published constructive amendment precedent readily available to trial counsel's disposal. Trial counsel should have known right away that the verdict form did not match Count Five and Count Seven in the Second Superseding Indictment (SSI), and should have swiftly filed a motion to dismiss those charges based on the constructive amendment.

Moreover, it is also true that United States v. Davis, 854 F.3d 601, 603-607 (9th Cir. 2017) was published constructive amendment precedent - specifically addressing a 18 U.S.C. Section 1591 case - that was readily available to appellate counsel during the preparation of defendant's opening brief. However, appellate counsel instead focused his energy on other issues that were not nearly as strong as a constructive amendment claim.

The prejudice resulting from both counts is that defendant currently stands convicted of more serious elements on Count Five and Count Seven (force, fraud, or coercion) that he would otherwise not be convicted of on those counts, and had both counsels filed the respective documents to address the constructive amendment, defendant would not be convicted of those counts as Count Five and Count Seven would have likely been dismissed and/or vacated.

Supporting Facts:

On March 30, 2016, the SSI charged defendant with Count Five and Count Seven, and neither Count Five or Count Seven charged defendant with "force, fraud, or coercion" anywhere when tracking the statutory language and the relevant foundational facts. Doc. 195, Page 6, Page 8, Id. See Exhibit- H, 1-2.

On April 27, 2016, the jury returned a verdict on Count Five and Count Seven containing the elements "force, fraud, or coercion". Trial Transcript Day 6, Page 8, Id. at 2-15. See Exhibit- H, 3.

Also, on April 27, 2016, the jury verdict forms containing the elements "force, fraud, or coercion" filed on the docket. Doc. 247, Page 6, Page 8, Id. See Exhibit- H, 4-5.


J. Ground Ten:

Under United States v. Cronic, 466 U.S. 648, 659 (1984), trial counsel performed unconstitutionally deficiently by failing to renew defendant's motion to sever counts. To be sure, the Ninth Circuit flagged the issue as being forfeited by trial counsel's failure to renew the motion to sever counts. United States v. Carter, 754 Fed. 534, 537 (9th Cir. 2018). In other words, had trial counsel properly renewed the motion to sever counts, the Ninth Circuit would have reviewed the issue under their de novo standard of review instead of their plain error standard of review.

Defendant is prejudiced by trial counsel's failure to renew the motion to sever because as a result the jury was permitted to hear highly prejudicial propensity/bad character evidence that would given the jury an inherently guilt view of defendant and allow of him to be convicted on all counts instead of acquitted on others. Specifically, by severing the counts, the jury would not have been subject to the spillover effect of the misjoinder of the counts. Defendant was forced to trial where unrelated highly prejudicial evidence of other acts essentially constituted "Propensity" evidence as to each of the groups of counts. Trying all counts together allowed the government to sidestep Fed.R.Evid. 403 and 404 and permitted the jury to hear highly prejudicial propensity evidence that would have been excluded at separate trials. Counts were improperly joined under Fed.R.Crim.P.8 and should otherwise be severed under Fed.R.Crim.P.14.CR 190.

The resulting prejudice is the convictions that resulted from the counts that were not severed from each other, as well as the resulting prisoner sentences imposed on the counts that defendant is currently serving. Had counsel renewed his motion to sever, it is more likely than not that defendant would have been acquitted on some counts because the propensity/bad character evidence would be isolated to the counts that such evidence directly pertained to. The evidence was not cross-admissible as to each of the counts. The weight of the evidence would have been entirely different if the groups had been properly separated. The evidence on one count was materially more inflammatory than on any other count. The essence of the government's case was based on alleged victims who had made prior inconsistent statements and had other credibility problems. The counts involve entirely different victims, locations, and time frames. The offenses were not within the same 24 hours time period and lack of a temporal relationship is significant and/or the offenses did not flow directly from one another. Counts were separated by several years and therefore were certainly not based on the same act or transaction under Rule 8.

Supporting Facts:

On March 28, 2016, trial counsel filed a Notice of Motion And Motion To Sever Counts. Doc. 190. On March 30, 2016, defendant was charged by the SSI. Doc. 195. After the government responded in opposition, on April 7, 2016 trial counsel filed a reply in support of the Motion To Sever Counts. Doc. 208.

On April 11, 2016, the Court held a hearing on the Motion To Sever Counts. Doc. 214. On April 13, 2016, the Court entered an order denying the Motion To Sever Counts. Doc. 219. Between April 19, 2016 - April 27, 2016, trial counsel did not orally move the Court to renew the Motion To Sever Counts, Doc. 190, and did not re-file or renew the Motion To Sever Counts in writing. See, Doc. 219-277.

K. Ground Eleven:

Under United States v. Cronic, 466 U.S. 648, 659 (1984) and Evitts v. Lucey, 469 U.S. 387 391-397 (1985), both trial counsel and appellate counsel performed unconstitutionally deficiently by failing to seek a judgment of acquittal on the basis of insufficient evidence beyond a reasonable doubt that defendant benefitted financially or by receiving anything of value from participation in a venture with respect to Count Eleven of the SSI.

Specifically, trial counsel orally moved the Court at the close of the government's case for a judgment of acquittal, but did not specify that the evidence did not show defendant benefitted financially or by receiving anything of value beyond a reasonable doubt. And, after the verdict, trial counsel did not renew his oral motion for a judgment of acquittal on Count Eleven despite the evidence at trial on Count Eleven showing defendant did not benefit or receive anything of value.

Likewise, appellate counsel failed to include an argument in defendant's opening brief on appeal challenging the sufficiency of the evidence beyond a reasonable doubt with respect to Count Eleven and the fact that the alleged victim testified that defendant did not receive any financial benefit and/or thing of value in exchange for his participation in the venture. Nowhere in appellate counsel's briefing was the sufficiency of the evidence of Count Eleven challenged.

Both trial and appellate counsel had a duty to challenge the sufficiency of the evidence regarding whether or not defendant benefitted financially or received anything of value because Ninth Circuit Pattern Criminal Jury Instruction No. 20.26 charges the jury with finding beyond a reasonable doubt:

"First, the defendant benefitted [financially] [or] [by receiving anything of value] from participation in a venture that [recruited] [enticed] [harbored] [transported] [provided] [obtained] [advertised] [maintained] [patronized] [or] [solicited] a person to engage in a commercial sext act". Ninth Circuit Pattern Criminal Jury Instruction No. 20.26, Id.

Whether or not defendant benefitted is a critical and essential element of the charge under 18 U.S.C. Section 1591(a)(2), and so both counsels to fail to challenge the sufficiency of the evidence on this point is unquestionably an objectively unreasonable performance by counsels.

Defendant is prejudiced by trial counsel's failure to renew his motion for judgment of acquittal on this point, because had counsel renewed the motion with respect to Count Eleven, it is more likely than not that defendant would not be convicted of Count Eleven and/or would not be serving a prison sentence for the conviction on Count Eleven.

Moreover, defendant is prejudiced by appellate counsel's failure to brief the Ninth Circuit on direct appeal of the insufficiency of the evidence of defendant's alleged benefit on Count Eleven because had appellate counsel argued such a point in the opening brief and reply brief, it is more likely than not that the Ninth Circuit would have reversed and/or vacated the conviction on Count Eleven for insufficient evidence of benefit beyond a reasonable a doubt.

Supporting Facts:

On April 20, 2016 (Day Two), during trial, the following exchange took place between trial counsel and M.C. about the essential element of defendant allegedly benefitting financially and/or receiving anything of value:

Q: Okay. And you've never given any money to Mr. -- the defendant, correct?
A: No.
Q: You've never had intimate relationships, an intimate -- you've never had sex with the defendant?
A: No.  ...
Q: You never worked for him previously in any capacity?
A: No.
Q: And you never told anyone that you worked with him -- you worked for him in any capacity?
A: No.
Q: Okay. You never told anyone, for example, that he -- a month before or two weeks before he drove you to a swap meet on Vernon?
A: No. Not that I can recall.

Trial Transcript, Day Two, Page 101, Id. at 25 - Page 102, Id. at 1-5, Id. at 11-19. See Exhibit - I, 1-2

At no point between April 20, 2016 - May 10, 2016, did trial counsel file a motion for judgment of acquittal based upon insufficient evidence of defendant's alleged benefit.

13. If any of the grounds listed in 12 A, B, C, D, et seq. were not previously presented, state briefly what grounds were not presented, and give your reasons for not presenting them:

Ineffective assistance of counsel claims cannot be brought on direct review according the controlling Ninth Circuit precedent. Despite this, I still attempted to raise the statute of limitations argument on remand for a new trial, but again the Ninth Circuit concluded the claims were cognizable in a 2255 proceeding.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?

[] Yes     [x] No

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At a preliminary hearing: Brian A. Newman

(b) At arraignment: Brian A. Newman

(c) At trial: John N. Aquilina

(d) At sentencing: John N. Aquilina

(e) On appeal: Benjamin L. Coleman

(f) On remand: Richard M. Callahan, Jr

(g) At resentencing: Brett A. Greenfield

(h) On appeal: Benjamin L. Coleman

(i) In any post-conviction proceeding: N/A

(j) On appeal from any adverse ruling in a post-sentencing proceeding: N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court at approximately the same time?

[] Yes     [x] No

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

[] Yes     [x] No

WHEREFORE, movant prays that the Court vacate the judgment of conviction and sentence while remanding for a new trial and/or imposing a judgment of dismissal on count one through twelve, or in the alternative, appoint counsel, convene an evidentiary hearing, and grant him all relief to which he may be entitled in this proceeding.

I declare under the penalty of perjury, 28 U.S.C. Section 1746, that the foregoing particulars are true and correct to the best of my personal knowledge.

Respectfully Submitted,

x _____
Mr. Laron Darrell Carter

Executed on
Date: 09 / 02 / 2025

EXHIBIT LIST
‾‾‾‾‾‾‾‾‾‾‾

(Exhibits   A - I)

EXHIBIT - A

In Support of Ground One

Exhibit - A, 1-5
First Superseding Indictment, "Doc 125" Counts One - Four
(5) Pages

Exhibit - A, 6-10
Second Superseding Indictment, "Doc 195" Counts One - Four
(5) Pages

Exhibit - A, 11-25
California Department of Corrections Records proving 2003 - 2005 whereabouts
(15) Pages

2016 FEB -5 PM 4:33
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2015 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LARON DARRELL CARTER,<br>  aka "Birdd,"<br>  aka "Pi Birdd,"<br>  aka "Pi Pimpin Birdd,"<br>  aka "Garr Birdd,"<br>  aka "Gardena Pimpin Birdd,"<br><br>Defendant. | CR No. 14-297(A)-VAP<br><br>**FIRST SUPERSEDING INDICTMENT**<br><br>[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), (b)(2), (c): Sex Trafficking of a Child and by Force, Fraud, and Coercion; 18 U.S.C. § 2423(a): Transportation of a Child in Interstate Commerce to Engage in Prostitution; 18 U.S.C. § 2(b): Causing an Act to Be Done] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), (b)(2)]

Starting in or around June 2003, and continuing to on or about November 22, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored,

transported, provided, and obtained by any means a person, namely, L.H. ("L.H."), and benefitted, financially and by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means L.H., knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(c)(2) (2004), would be used to cause L.H. to engage in a commercial sex act, and that L.H. had not attained the age of 18 years and would be caused to engage in a commercial sex act.

EXHIBIT - A, 2

COUNT TWO

[18 U.S.C. § 2423(a)]

Between on or about November 1, 2003, and on or about November 22, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly and willfully transported a minor, namely, L.H. ("L.H."), who was at the time approximately 16 or 17 years old, in interstate commerce, from the State of Arizona to the State of California, with the intent that L.H. would engage in prostitution and other sexual activity for which a person could be charged with a criminal offense.

3

COUNT THREE

[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), (b)(2)]

Starting in or around June 2003, and continuing to on or about January 31, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained by any means a person, namely, A.B. ("A.B."), and benefitted, financially and by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means A.B., knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(c)(2) (2004), would be used to cause A.B. to engage in a commercial sex act, and that A.B. had not attained the age of 18 years and would be caused to engage in a commercial sex act.

4

EXHIBIT - A, 4

COUNT FOUR

[18 U.S.C. § 2423(a)]

Between on or about November 1, 2003, and on or about January 31, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly and willfully transported a minor, namely, A.B. ("A.B."), who was at the time approximately 17 years old, in interstate commerce, from the State of Arizona to the State of California, with the intent that A.B. would engage in prostitution and other sexual activity for which a person could be charged with a criminal offense.

EXHIBIT - A, 5

FILED
2015 MAR 30 PM 1:18
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2015 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>LARON DARRELL CARTER,<br>　aka "Birdd,"<br>　aka "Pi Birdd,"<br>　aka "Pi Pimpin Birdd,"<br>　aka "Garr Birdd,"<br>　aka "Gardena Pimpin Birdd,"<br><br>　　　　Defendant. | CR No. 14-297(B)-VAP<br><br>**S E C O N D**<br>**S U P E R S E D I N G**<br>**I N D I C T M E N T**<br><br>[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), (b)(2), (c): Sex Trafficking of a Child and by Force, Fraud, and Coercion; 18 U.S.C. § 2423(a): Transportation of a Child in Interstate Commerce to Engage in Prostitution; 18 U.S.C. § 2(b): Causing an Act to Be Done] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), (b)(2)]

Starting in or around June 2003, and continuing to on or about November 22, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored,

transported, provided, and obtained by any means a person, namely, L.H. (⬛⬛⬛⬛), and benefitted, financially and by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means L.H., knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(c)(2) (2004), would be used to cause L.H. to engage in a commercial sex act, and that L.H. had not attained the age of 18 years and would be caused to engage in a commercial sex act.

EXHIBIT - A, 7

## COUNT TWO

### [18 U.S.C. § 2423(a)]

Between on or about November 1, 2003, and on or about November 22, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly and willfully transported a minor, namely, L.H. (M.H.H.), who was at the time approximately 16 or 17 years old, in interstate commerce, from the State of Arizona to the State of California, with the intent that L.H. would engage in prostitution and other sexual activity for which a person could be charged with a criminal offense.

3

EXHIBIT - A, 8

COUNT THREE

[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), (b)(2)]

Starting in or around June 2003, and continuing to on or about January 31, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained by any means a person, namely, A.B. ("A.B."), and benefitted, financially and by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means A.B., knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(c)(2) (2004), would be used to cause A.B. to engage in a commercial sex act, and that A.B. had not attained the age of 18 years and would be caused to engage in a commercial sex act.

4

## COUNT FOUR

### [18 U.S.C. § 2423(a)]

Between on or about November 1, 2003, and on or about January 31, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly and willfully transported a minor, namely, A.B. (A.B.), who was at the time approximately 17 years old, in interstate commerce, from the State of Arizona to the State of California, with the intent that A.B. would engage in prostitution and other sexual activity for which a person could be charged with a criminal offense.

5

EXHIBIT - A, 10



CARTER , LARON

NUMBER: K35167

CDC 128-C

California Institution for Men

RCGY000000000201

**TB CHRONO**

**TESTING/EVALUATION**

DISTRIBUTION

CENTRAL FILE: ☒

MEDICAL FILE: ☒

INMATE: ☒

INMATE TB ALERT CODE | 22

R. █ Rodriguez  MTA

MEDICAL SIGNATURE

DATE:

01-01-2003

**REDACTED**

EXHIBIT – A, 11



CDC#: K35167     NAME: CARTER, L                                    CDC128-G (Rev. 2/89)

Custody:   MIN8                          Assignment:   MKCFI.1213     PM COOK
Comments:

Effective February 20, 2003 , you are assigned to a full time Work/Education/ Vocation program at the California Institution For Men.   This CDC-128-G is to notify Institutional Records Departments that as of the assignment effective date, you are assigned to Work/Privilege Status Group "A-1A":

W. Powell, Correctional Lieutenant
Inmate Assignment Office
California Institution For Men

Date: February 20, 2003              CLASSIFICATION          California Institution For Men

**REDACTED**

EXHIBIT - A, 12

Case 2:14-cr-00297-VAP   Document 401   Filed 09/08/25   Page 27 of 135   Page ID #:3845



NAME and NUMBER   CARTER   , L. K35167   MI. H-9449U         CDC-128-B-B(REV. 4/74)

| CONTENT AREA | NUMB CORRECT | SCALE SCORE | GRADE EQUIV | XTILE |
|---|---|---|---|---|
| READING - F8/7/M - 03/10/2003 | 47 | 605 | 9.9 | 94 |

J. Martin
TABE Test Proctor

DATE 03/10/2003         TABE TEST RESULTS         CIM         GENERAL CHRONO

**REDACTED**

EXHIBIT - A, 13

NAME AND NUMBER:     CARTER, LARON     K-35167          CDC-128-C

SHAVING CHRONO: This inmate has pseudofolliculitis. He is exempt from shaving with a razor. His beard must be no longer than 1/4 inch. THIS CHRONO IS GOOD UNTIL THE INMATE LEAVES C.I.M

C-FILE,
MED-FILE
INMATE

R. Tabo, M.D. CIM-MSF

DATE: 5-23-03     CARTER, LARON     K-35167   RTabo  MEDICAL/DENTAL/PSYCHIATRIC

EXHIBIT - A, 14

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128-A (8-87)

**NAME AND NUMBER**   Carter, Laron   CDC# K-35167.,   BED# 9V/9-U

On 06-03-03 at approximately 1800 hours, while working as a Culinary Officer, I observed I/M Carter, Laron, CDC#. K-35167, Bed# 9V/9-U, to be in an Unauthorized Area in the CCWHSF Culinary. He was in the dining area sitting at a table. This area is designated as an out of bounds area. It should be noted that I/M Carter was assigned as a P.M. Cook. He should be at the cooking area. I/M Carter was verbally advised to stay out of the dining area, especially at chow time, anytime! He stated, "I don't care , write me up!" I/M Carter was unreceptive to counseling and is aware of this documentation.

ORIGINAL: CENTRAL FILE
  cc: PROGRAM FILE
      COUNSELOR
      INMATE
      WRITER

C/O _R_ Tran, Correctional Officer
Culinary Officer 3/Watch
CCWHSF

June 3, 2003   (CCR #3015 Unauthorized Area/Out Of Bounds)

DATE

CUSTODIAL COUNSELING

**REDACTED**

EXHIBIT - A, 15

NAME AND NUMBER:      CARTER, LARON   K-35167          CDC-128-C

**SOFT SHOE CHRONO:**
This inmate should be allowed to wear personal soft-soled shoes.  These shoes should be obtained through the normal procedure.   This chrono expires in one year.

Orig:  C-File
cc:    Medical File
       Inmate

_R. Schulze, M.D./CM/MSF_

DATE: 7-16-03       CARTER, LARON  K-35167    RS/be       MEDICAL/DENTAL/PSYCHIATRY

EXHIBIT - A, 16

Case 2:14-cr-00297-VAP   Document 401   Filed 09/08/25   Page 31 of 135   Page ID #:3849

NAME and NUMBER.        CARTER, LARON     CDC# K-35167     BED# 9449-U          CDC-128-B Rev. 4/74

On this date: August 08, 2003, at approximately 1200 hours, the following circumstances occurred: while performing my duties as Correctional Supervising Cook, I conducted a thorough search of the MSF Culinary and couldn't find Inmate CARTER, CDC# K-35167, BED# 9449-U. I contacted his housing unit and talked to Correctional Officer Price, asking him to see if Inmate CARTER was in the unit. Correctional Officer Price called me an confirmed that Inmate CARTER was still in the unit and said the inmate was waiting on a job change. Inmate CARTER has consecutive A days for not showing for work. His attitude toward staff has deteriorated. Inmate CARTER has been assigned to the culinary since 03/26/03. His work hours are from 1200 to 2000, with RDO's of S/S. Inmate CARTER is aware of this documentation.

ORIGINAL: CENTRAL FILE
    cc: PROGRAM FILE/SGT.LT.
        COUNSELOR
        WRITER
        INMATE

                                                    T. BAILESS, CSC
                                                    MSF Culinary, Third Watch
                                                    CIM-Minimum Support Facility

DATE    August 07, 2003     CCR §3041 (b) FAILURE TO REPORT          GENERAL CHRONO

EXHIBIT - A, 17

Case 2:14-cr-00297-VAP   Document 401   Filed 09/09/25   Page 32 of 135   Page ID #:3650

NAME and NUMBER

Carter                    K35167        BED#   9449U          COC-128 B Rev. 4/74

Inmate    Carter, Laron                    failed to successfully complete the
Re-Entry Program. He did not complete the twelve required projects, because of
"S" Time. This Re-Entry Education Program is conducted under the guidelines of AB 82/102.

CC:   Central File
      Teacher
      Education File
      Student File
      Inmate

V. Reiter
Academic Teacher

DATE   09.15.2003        RE-ENTRY PROGRAM TERMINATION/COMPLETION        GENERAL CHRONO

EXHIBIT - A, 18

NO. K-35167         NAME CARTER, IARON                                    CDC-128

CUSTODY:                          Assignment:
COMMENTS:

☑ CDC 812                    ☐ CDC 839/840                    ☑ CONFIDENTIAL FILE
☐ NO pending disciplinary(s)        ☐ Warrants/Detainers/Holds

PAROLE DATE:  09-30-2003         CASE REVIEWED IAW DOM SECTION 72040.5.1

                                 PRIOR TO RELEASE TO WORK FURLOUGH/PAROLE
                                 NO RAD NOTED

DATE 9-24-03          CLASSIFICATION (CSR ACTION)         INST:CIM/MIN

EXHIBIT - A, 19



**NAME and NUMBER**     K35187     R J Donovan Correctional Facility  CDC-171-C

CARTER LARON     F41800000000233U

## TB CHRONO

**DISTRIBUTION**     TB SKIN TESTING/ EVALUATION

CENTRAL FILE [X]
MEDICAL RECORD [ ]     INMATE TB ALERT CODE   22
INMATE [ ]

09-28-2004

**DATE**     L.N. LYLE, D.O. — DIRECTOR, PUBLIC HEALTH • RJDCF

MED **REDACTED** NTAL

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

CDC#: K35167          NAME CARTER

HOUSING: F418000000000233U

Comments:

THE ABOVE INMATE WAS ASSIGNED TO THE RECEPTION CENTER BRIDGING EDUCATION PROGRAM POSITION  RCA-2.005    THE INMATES WORKGROUP HAS CHANGED FROM "U" TO "A1" EFFECTIVE  9/21/2004 . THIS ACTION DOES NOT CHANGE YOUR PRIVILEGE GROUP, IT WILL REMAIN "U"

T. █ HILL

Assignment Lieutenant

Dated: 10/14/2004

ASSIGNMENT CHRONO

DCF  RC
CDC 128G

**REDACTED**

EXHIBIT - A, 21

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                    ARNOLD SCHWARZENEGGER, Governor

DEPARTMENT OF CORRECTIONS
PAROLE & COMMUNITY SERVICES DIVISION
CHULA VISTA REVOCATION #3
765 THIRD AVENUE SUITE 200
CHULA VISTA, CA. 91910
(619) 470-3714

Date:    NOVEMBER 17, 2004

To:

Notice of Parole Hearing

The parolee has been scheduled for a Parole Revocation Hearing.
The Hearing is set for:

Subject:    CARTER, LARON

Number:    K35167.

Date & Time:    TUESDAY, NOVEMBER 23, 2004 AT 8:30AM

Location:    R.J. DONOVAN CORRECTIONAL FACILITY
             480 ALTA ROAD, SAN DIEGO, CA  92179
             (VISITOR PROCESSING BLDG.)

Your appearance at this hearing has been requested by the
parolee.

Thank you for your cooperation.

M. MANSELL

Hearing Coordinator
Chula Vista Revocation

EXHIBIT - A, 22

**REDACTED**

Case 2:14-cr-00297-VAP    Document 401    Filed 09/08/25    Page 37 of 135    Page ID #:3855

| DATE OF RELEASE | TYPE OF RELEASE | |
|---|---|---|
| 01/10/2005 | ☐ PAROLE | ☐ OUT TO COURT |
| | ☐ PC 3060.7 | ☐ OUT-PATIENT STATUS |
| TIME OF RELEASE | ☐ PC 4755 | ☒ DISCHARGE/HC |
| INSTITUTIONAL CONVENIENCE | ☐ OTHER | RJDRC |

PLEASE ARRANGE FOR RELEASE OF THE FOLLOWING PERSON(S)

K35167   CARTER, LARON                    DISCHARGE-STATMAX

| COPY TO | NOTICE SENT PURSUANT TO: | | |
|---|---|---|---|
| | N/A PC 3058.6 | N/A PC 3058.65 | N/A PC 3058.9 |
| | N/A PC 3058.61 | N/A PC 3058.8 | N/A PC 3060.6 |

| R&R | PREPARED BY (SIGNATURE) | DATE |
|---|---|---|
| SALLYPORT GATE | *Sancho* | 1-10-05 |
| CONTROL | | |
| WATCH OFFICE | TYPE OR PRINT NAME & TITLE | |
| ACCOUNTING | Y. VIZCARRA, CCRM | |
| CLOTHING ROOM | | |
| OBIS | APPROVED BY (SIGNATURE) | DATE |
| | *Miller* | 1-10-05 |
| | TYPE OR PRINT NAME & TITLE | |
| | R. MILLSPAUGH, CCIII | |

CDC 161 (1/91)

# WARDEN'S CHECKOUT ORDER

STATE OF CALIFORNIA                         DEPARTMENT OF CORRECTIONS

EXHIBIT A-28

BOARD OF PRISON TERMS
STATE OF CALIFORNIA

Records Office Use Only
Projected Revocation Release Date
Revocation Release Date
Controlling Discharge Date
Discharge Review Date

## SUMMARY OF REVOCATION DECISION:
## HEARING WAIVED / SCREENING OFFER

### I. PRELIMINARY INFORMATION

A. Type of Hearing
REVOCATION

B. Basis for Charges
Parole Violation Report, Dated: 23-SEP-2004
CDC Rules Violation Report, Dated:
Other : Dated:

C. Admissions/Denials
Date Signed by Parolee:
Date of BPT Action: 26-OCT-2004
Assessment: 10I

D. Legal Data
Arrest Date: 14-SEP-2004   Hold Date: 14-SEP-2004

### II. DECISION

A. [X] Hold Status - RETAIN
B. [ ] SATCU/SATU: [ ] Approved [ ] Denied
C. [ ] Continue on Parole [ ] Dismiss [ ] Prop36
D. [ ] Schedule for Revocation Proceedings
E. [ ] Schedule for Revocation Extension Proceedings
F. Miscellaneous Action

G. [X] Parole Revoked-Return to Custody: 10 months
[ ] Serve Concurrently
[ ] Revocation Period Extended 0 days
[ ] Time Served: to

H. Attorney [ ] Conduct Determination [ ] Assignment
Reason

[ ] Eligible 3057 Credits      [ ] Prior Criminal History
[X] Ineligible 3057d·1         [ ] Circumstances & Gravity of
[ ] Ineligible 3057(d)(2)(E)    Parole Violation
[X] Parole Violation  PC 207
[ ] Commitment Offense
Specify Reason

H. Special Cond. of Parole: [ ] Noted [ ] Reaffirmed [ ] Amended

Add/Mod/Del Reason
No Alcohol
ANT
POC for Eval

Other Special Condition

Reason

I. Instructions to CDC or P&CSD Staff

Commissioner/Deputy Commissioner Signature                 Date
                                                           26-OCT-2004

### PAROLEE ACKNOWLEDGEMENT

[ ] 1. I accept the above return to custody order (Section F) and unconditionally waive my rights to contest the charges against me or have a hearing.

[ ] 2. I reject the above order (Section F) and request a revocation hearing.

[ ] 3. I accept the above order and optionally waive my right to a hearing.

Parolee Signature                                          Date

Witness Signature                                          Date

NAME                CDC NUMBER       INST/REGION / AGENT    SCREEN DATE
CARTER, LARON       K35167           LONG BEACH 3/3         26-OCT-2004
                                     SCHOLNICK

27-OCT-2004 02.00 PM

BPT 1104 (Rev. 7/88) Electronic              Page 1 of 3          PERMANENT ADDENDUM

**REDACTED**

STATE OF CALIFORNIA  DEPARTMENT OF CORRECTIONS
CDC 1882

# INITIAL HOUSING REVIEW

| Name of Inmate (Last, First, MI) | CDC Number | Institution |
|---|---|---|
| CARTER, LARON | H35167 | R.J.D.C.F |

The above named inmate has been screened prior to assigned housing. An inmate interview and available documents indicate the following:

| Ethnicity | Date of Birth | Place of Birth | County of Commitment |
|---|---|---|---|
| B | ▓▓▓▓ | CA | SAN DIEGO |
| CSR Endorsement | Sending Jail/Institution | Previous Housing Status (if known) | Release Date/Type |
|  | SAN DIEGO COUNTY SHERIFF'S DEPARTMENT |  |  |
| Enemies | C N/6 | Gang/Disruptive Group Affiliation | |
| Health Concerns | N/6 | Other Special Concerns | |
| History of In-Cell Assaults | N/6 | History of Aggression Toward Other Inmates | |
| Other Information/Comments | | | |
| Inmate's Remarks | | | |

Based on a review of the above, a determination has been made that:

☐ The inmate is suitable for dorm/cell housing with no special restrictions.
☐ The inmate is suitable for dorm/cell housing with the following restrictions:

☐ There are placement concerns which may require single cell assignment. These concerns are based upon the following documentation:

| SCREENING AUTHORITY | Signature: |
|---|---|
| | Printed Name: E. VIZCARRA |
| | Title: CORRECTIONAL SERGEANT |

| APPROVING AUTHORITY ☐ Not Applicable | Signature: |
|---|---|
| Single cell status is ☒ approved ☐ disapproved | Printed Name: D.▓ MCMAHAN |
| | Title: CORRECTIONAL LIEUTENANT |

DATE: September 21, 2004

DISTRIBUTION:
C-File (original)
Housing Assignment Authority
Facility Captain
Inmate

EXHIBIT - A, 25

REDACTED

EXHIBIT - B

In Support of Ground Two

Exhibit - B, 1-14
Richard M. Callahan's Motion to Dimiss "Doc. 337" (with Aquilina Declaration)
(14) Pages

Exhibit - B, 15-27
Benjamin L. Coleman's Opposition to Motion to Dismiss, Appeal No. 21-50234,"Doc. 25"
(13) Pages

Exhibit - B, 28-30
Benjamin L. Coleman's 02/16/2023 Letter Appeal No. 21-50234," Doc. 27-1"
(3) Pages

Exhibit - B, 31-41
Second Superseding Indictment "Doc. 195" Counts One - Ten
(11) Pages

RICHARD M. CALLAHAN, JR.
225 South Lake Avenue, Suite 300
Pasadena, CA 91101
Telephone: (626) 202-4060
Telecopier: (626) 794-4676
State Bar No. 100446
Email: *rmcallahanjr@gmail.com*

Attorney for Defendant
LARON DARRELL CARTER

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>LARON DARRELL CARTER,<br><br>    Defendant. | Case No. CR 14-297(B)-VAP<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COUNTS ONE THROUGH TEN OF THE SECOND SUPERSEDING INDICTMENT FOR VIOLATION OF THE STATUTE OF LIMITATIONS**<br><br>Date: April 6, 2020<br>Time: 9:00 a.m.<br>Place: Courtroom of the Honorable Virginia A. Phillips |

TO UNITED STATES ATTORNEY NICOLA HANNA AND ASSISTANT UNITED STATES ATTORNEYS JEFF MITCHELL AND DAMARIS DIAZ:

PLEASE TAKE NOTICE that on April 6, 2020 at 9:00 a.m., or at a date and time agreeable to the Court and the parties, defendant Laron Carter will move this Court to dismiss Counts One through Ten of the Second Superseding Indictment for violation of

/

/

/

/

-ii-

EXHIBIT - B, 1

the statute of limitations. This motion is based upon the attached points and authorities, case records, and any argument that may be heard on the matter.

Dated:  March 9, 2020.

Respectfully submitted,

THE LAW OFFICES OF
RICHARD M. CALLAHAN, JR.

By: _____

RICHARD M. CALLAHAN, JR.
Attorney for Defendant
LARON DARRELL CARTER

-ii-

EXHIBIT - B, 3

Case 2:14-cr-00297-VAP Document 337 Filed 03/09/20 Page 3 of 13 Page ID #:3369

## NOTICE OF MOTION AND MOTION TO DISMISS COUNTS ONE THROUGH TEN OF THE SECOND SUPERSEDING INDICTMENT FOR VIOLATION OF THE STATUTE OF LIMITATIONS

### I

### INTRODUCTION

In 2016, Laron Carter was convicted after a jury trial of seven counts of sex trafficking of a minor, in violation of 18 U.S.C. § 1591, and seven counts of transportation of a minor with the intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a). Mr. Carter appealed, and is now back before the Court after the Ninth Circuit affirmed his convictions on Counts One through Twelve but reversed his convictions on Counts 13 and 14 on Sixth Amendment grounds and remanded the entire case for resentencing. Counts 13 and 14 were eventually dismissed by the Court on the eve of trial after the complaining witness twice failed to appear for trial.

On direct appeal, Mr. Carter challenged Counts One through Ten as barred by the statute of limitations. The Ninth Circuit did not reach the merits of the statute of limitations argument, holding in an unpublished memorandum opinion that Mr. Carter could not raise the issue for the first time on appeal since he "failed to raise the statute of limitations in the district court." *United States v. Carter*, No. 16-50271, *2, 2018 WL 5781502 (9th Cir., Nov. 2, 2018). Now that the case has returned to the district court, Mr. Carter moves this Court to dismiss Counts One through Ten of the Second Superseding Indictment ("SSI") since the alleged conduct supporting these charges occurred *more than 10 years* before an indictment was returned by the grand jury, and no statute of limitations covers these charges.[1]

---

[1] This motion has a critical bearing on Mr. Carter's sentencing since the Court's ruling could impact the appropriate calculations under the Sentencing Guidelines, including application of a multi-count adjustment pursuant to U.S.S.G. §§ 3D1.1-5.

*UNITED STATES v. LARON DARRELL CARTER* -1- CR 14-297(B)-VAP

NOTICE OF MOTION AND MOTION TO DISMISS COUNTS ONE THROUGH TEN OF THE SECOND SUPERSEDING INDICTMENT FOR VIOLATION OF THE STATUTE OF LIMITATIONS

EXHIBIT - B, 4

Case 2:14-cr-00297-VAP Document 337 Filed 03/09/20 Page 4 of 13 Page ID #:3370

## II

## JURISDICTION AND TIMELINESS

### Federal Rule of Criminal Procedure 12

A motion to dismiss for expiration of the statute of limitations is authorized by Federal Rule of Criminal Procedure 12. While a motion challenging the statute of limitations can be made before trial, it need not be. Rule 12 was amended in 2014, including revision to section (b)(3) which deals with "defenses, objections and requests." Amended section 12(b)(3)(A) now provides a laundry list of motions that *must* be filed before trial. Conspicuously absent from that list is a claim that the indictment is untimely. The Advisory Committee specifically "dropped" reference to the statute of limitations from the list of challenges that must be made pretrial "to permit further debate over the treatment of such claims." *Id.* (advisory committee note to 2014 amendments). This challenge to the propriety of Counts One through Ten is therefore timely made.

### *Strickland v. Washington*

Alternatively, if this motion is deemed untimely, the Court should still consider the arguments raised in this motion on the merits since the failure to raise statute of limitations before trial in 2016 constituted ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Liu*, 731 F.3d 982, 995-98 (9th Cir. 2013) (*Strickland* claim based on statute of limitations raised for first time on appeal).

Under *Strickland*, a defendant must show that his counsel's performance "fell below an objective standard of reasonableness," and that, if so, there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To show prejudice under *Strickland* resulting from the failure to file a motion, "a defendant must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999)

(citing *Kimmelman v. Morrison*, 477 U.S. 365, 373-74 (1986)). Mr. Carter's trial counsel has provided a declaration (attached) in which he indicates he was unaware until after trial that § 3299 did not take effect until after the conduct alleged in Counts One through Ten occurred, and had he known, he would have raised a statute of limitations defense to those charges with the Court. As will be demonstrated below, this motion should be granted, and the dismissal of Counts One through Ten will result in Mr. Carter being in a more favorable position at sentencing. A finding of prejudice under *Kimmelman* is clear.

## III

## PROCEDURAL HISTORY

On May 1, 2014, federal authorities arrested Laron Carter on a federal complaint. Dkt. #1. The complaint alleged one count of violating 18 U.S.C. § 2423(a) based on the January 2013 conduct that ultimately formed Count 14 of the second superseding indictment. On May 20, 2014, the government filed a one-count indictment charging the same § 2423(a) offense alleged in the complaint. [Dkt. #15].

Almost two years later, on February 5, 2016, with trial less than three weeks away, the government filed a first superseding indictment ("FSI") adding new charges. [Dkt. # 125]. The trial was then continued to April 19, 2016. On March 30, 2016, the government then filed a second superseding indictment ("SSI") adding even more charges for a total of 14 counts. [Dkt. #195]. Contained in the SSI were Counts One through Ten, which alleged conduct that occurred substantially more than five years before these charges were filed: Counts One through Four alleged violations of 18 U.S.C. §§ 1591 and 2423(a) that allegedly occurred in 2003, 13 years before the SSI was filed; Counts Five through Ten alleged conduct in 2005, 11 years before the SSI was filed. Trial ultimately commenced on April 19, 2016, and Mr. Carter was convicted on all counts on April 27, 2016.

/

/

*UNITED STATES v. LARON DARRELL CARTER*          -3-                    CR 14-297(B)-VAP

NOTICE OF MOTION AND MOTION TO DISMISS COUNTS ONE THROUGH TEN OF THE SECOND SUPERSEDING INDICTMENT FOR VIOLATION OF THE STATUTE OF LIMITATIONS

EXHIBIT - B, 6

Case 2:14-cr-00297-VAP   Document 337   Filed 03/09/20   Page 6 of 13   Page ID #:3372

# IV

# ARGUMENT

## A. COUNTS ONE THROUGH TEN SHOULD BE DISMISSED FOR VIOLATION OF THE STATUTE OF LIMITATIONS

### 1. Statute of Limitations Overview

The general statute of limitations for non-capital offenses is five years. *See* 18 U.S.C. § 3282. In 2006, after the charges in Counts One through Ten occurred, Congress enacted 18 U.S.C. § 3299, which eliminated any statute of limitations for violating § 1591, or a felony under Chapter 117, where the § 2423(a) offense is found. *See* 18 U.S.C. § 3299 ("Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation . . . for any felony under chapter . . . 117, or section 1591."). For reasons discussed below, § 3299 does not apply to the conduct charged in Counts One through Ten and those charges should be dismissed.

### 2. Statutory Construction and Legislative Intent Demonstrate that Congress Did Not Intend Section 3299 to Apply to Offenses Occurring Before Its Enactment

#### a. There Is No Evidence that Congress Intended to Make § 3299 Applicable to Pre-enactment Conduct

Section 3299 does not apply to offenses like Counts One through Ten, committed before its enactment, due to the lack of clear congressional intent. Unless Congress clearly expresses its intent otherwise, the presumption is that the statute of limitations in effect when the offense was alleged to be committed applies. Because Congress did not clearly express an intent for § 3299 to apply to offenses committed before its enactment, and all indications are that Congress did *not* intend for it to apply to pre-2006 offenses, that extended limitations provision does not apply to Counts One through Ten.

While application of § 3299 to Mr. Carter may not have violated the Ex Post Facto Clause, *see Stogner v. California*, 539 U.S. 607 (2003), the issue raised here is a question of statutory construction and legislative intent, not constitutionality under the Ex Post

UNITED STATES v. LARON DARRELL CARTER          -4-          CR 14-297(B)-VAP

NOTICE OF MOTION AND MOTION TO DISMISS COUNTS ONE THROUGH TEN OF THE SECOND SUPERSEDING INDICTMENT FOR VIOLATION OF THE STATUTE OF LIMITATIONS

EXHIBIT - B, 7

Case 2:14-cr-00297-VAP   Document 401   Filed 09/08/25   Page 47 of 135   Page ID
Case 2:14-cr-00297-VAP   Document 337   Filed 03/09/20   Page 7 of 13   Page ID #:3373
#:3865

Facto Clause. The Supreme Court has made clear that, even before considering the Ex Post Facto Clause, a court must first determine as a threshold issue whether Congress intended for a criminal provision to apply to offenses committed before its enactment. *See Johnson v. United States*, 529 U.S. 694, 701-02 (2000); *see also Carr v. United States*, 560 U.S. 438, 458 (2010). In making this determination, the presumption is that Congress does *not* intend for criminal provisions to apply to offenses committed before their enactment, and that presumption can only be rebutted by a "clear statement" of contrary congressional intent. *Johnson*, 529 U.S. at 701.

In *United States v. Richardson*, 512 F.2d 105 (3d Cir. 1975), the Third Circuit faced the identical situation as presented here. The defendant in *Richardson* committed the offense of failing to register for the draft in 1968, when the statute of limitations was the general five-year period. In 1971, before the statute for the defendant's offense expired, Congress extended the limitations period for such draft violations. The indictment was returned in 1974 and therefore was untimely under the statute in effect at the time of the offense, but timely under the amendment. The Court held that "[t]he question is one of ascertaining congressional intent" and that "[c]riminal statute of limitations ... are to be interpreted in favor of repose." *Id.* at 106 (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)). The Court further explained that "a law is presumed to operate prospectively in the absence of a clear expression to the contrary" and therefore held that the indictment was untimely because there was no clear intention by Congress to apply the new statute of limitations to offenses committed before the amendment. *Id.* at 106.

Here, Congress did not express a clear intent to apply § 3299 to offenses committed before its 2006 enactment. If anything, Congress made it clear that § 3299 was *not* to apply to offenses committed before its enactment. Specifically, when Congress has intended for a new statute of limitations to apply to pre-enactment offenses, it has specifically said so in a note to the statute. For example, when Congress extended the statute of limitations for financial institution offenses, it twice included specific notes

Case 2:14-cr-00297-VAP Document 337 Filed 03/09/20 Page 8 of 13 Page ID #:3374

following the statute explaining that the amendments should apply to offenses committed before their enactment. *See* 18 U.S.C. § 3293.[2] Congress included a similar note when extending the limitations period for terrorism offenses. *See* 18 U.S.C. § 3286.[3] Congress included no such note regarding § 3299, demonstrating that it was not meant to apply to offenses committed before its enactment. *See Johnson*, 529 U.S. at 702 n.5 (comparing Congress' express statement of an effective date in related legislation in finding that criminal provision did not apply to offenses committed before its enactment).

### b. The Statute's Use of the Verb "Involving" Demonstrates an Intent to Make § 3299 Applicable Only to Future Conduct

The language used in § 3299 also supports the conclusion it does not apply to offenses committed before its enactment. Section 3299 uses the verb "involving," which is in the present tense. The Dictionary Act states that "words used in the present tense include the future as well as the present[,]" 1 U.S.C. § 1, but using the present tense demonstrates that a statute does not include past acts. *See Carr*, 560 U.S. at 457-50. If there is any doubt, the rule of lenity, *see, e.g., Burrage v. United States*, 571 U.S. 204, 216 (2014), and the rule that limitations provisions should be interpreted in favor of repose, *see Toussie*, 397 U.S. at 115, support the conclusion that § 3299 does not apply to pre-2006 offenses.

The Ninth Circuit decision in *United States v. Leo Sure Chief*, 438 F.3d 920 (9th Cir. 2006) does not undermine Mr. Carter's position regarding the applicability of

---

[2] In a note dealing with the 1989 amendment to § 3293, Congress stated "The amendments made by this subsection ... shall apply to an offense committed before the effective date of this section, if the statute of limitations applicable to that offense under this chapter ... had not run as of such date." Similar language was included in the note accompanying the 1990 amendment.

[3] In a note to the 2001 amendment to § 3286, Congress added that "The amendments made by this section [amending this section] shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section."

*UNITED STATES v. LARON DARRELL CARTER*      -6-      CR 14-297(B)-VAP

NOTICE OF MOTION AND MOTION TO DISMISS COUNTS ONE THROUGH TEN OF THE SECOND SUPERSEDING INDICTMENT FOR VIOLATION OF THE STATUTE OF LIMITATIONS

EXHIBIT - B, 9

Case 2:14-cr-00297-VAP Document 391 Filed 09/08/25 Page 49 of 135 Page ID
Case 2:14-cr-00297-VAP Document 337 Filed 03/09/20 Page 9 of 13 Page ID #:3375
#:3867

§ 3299. In *Leo Sure Chief*, the Ninth Circuit rejected an argument that a 2003 amendment to the child abuse statute of limitations provision, 18 U.S.C. § 3283, repealed a prior version under which the prosecution was timely. *See Leo Sure Chief*, 438 F.3d at 923. Mr. Carter is not making such a repeal by implication argument. He is simply contending that § 3299 does not apply to offenses committed before its 2006 effective date, as Congress has clearly indicated.

### 3. Counts One through Ten Cannot Be Salvaged by Use of the Limitations Period Provided by Section 3283

As it did during Mr. Carter's appeal, the government likely will contend that even if § 3299 does not apply to Counts One through Ten, those counts were still timely under § 3283. The version of § 3283 in effect at the time of the offenses alleged in Counts One through Ten provided:

> No statute of limitations that would otherwise preclude prosecution
> for an offense involving the sexual or physical abuse, or kidnaping,
> of a child under the age of 18 years shall preclude such prosecution
> during the life of the child.

18 U.S.C. § 3283 (2003). Section 3283 does not apply to the §§ 1591 and 2423(a) offenses alleged in Counts One through Ten because those offenses do not *categorically* constitute "sexual abuse" of children. In *Bridges v. United States*, 346 U.S. 209 (1953) the Supreme Court dealt with applicability of a wartime extension of the limitations provision. The defendant had been charged with making a false statement in a naturalization petition. The Court utilized the categorical approach requiring examination of the elements of the offense rather than the factual predicate for the alleged conduct. The statute of limitations involved defrauding the United States, which the Court found was not an "essential ingredient of the crime charged." *Id.* at 221. The Court disregarded language added to the indictment alleging fraud since the "embellishment" of the indictment does not lengthen the time for prosecution, but rather it is the "statutory definition of the offense" that controls. The *Bridges* test has more

recently and repeatedly used in interpreting other similar statutes. *See Descamps v. United States*, 570 U.S. 254 (2013) (categorical approach is an "elements-based inquiry" and not an "evidence-based" one); *Taylor v. United States*, 495 U.S. 575 (1990) (adopting categorical approach).

The Court has clarified that the particular language used in § 3283 compels a categorical analysis. Section 3283 applies to "offense[s] *involving* the sexual or physical abuse, or kidnaping of a child . . . ." 18 U.S.C. § 3283 (emphasis added). Using the word "offense" requires a court to look to the elements of the statute "rather than to the particular facts relating to [the defendant]'s crime." *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004). Despite some earlier confusion among the courts, the Supreme Court has now twice clarified that using the word "involving" does not expand the elements-based inquiry, as "it too refers to crimes as generically defined." *Nijhawan v. Holder*, 557 U.S. 29, 36 (2009); *see James v. United States*, 550 U.S. 192, 201-02 (2007). After *Nijhawan* and *James*, it is well-established that the "use of the word 'involving' . . . is entirely consistent with . . . an element of the generic crime" approach. *Olivas-Motta v. Holder*, 746 F.3d 907, 915 (9th Cir. 2014) (citing *Nijhawan* and *James*).

For a myriad of reasons, §§ 1591 and 2423(a) do not involve sexual abuse of a minor under a categorical approach. Most fundamentally, neither statute requires "abuse." *See, e.g., United States v. Martinez*, 786 F.3d 1227, 1231 (9th Cir. 2015). For example, both statutes include a broad range of consensual activities with older adolescents. *See, e.g., United States v. Gomez*, 757 F.3d 885, 904 (9th Cir. 2014). Furthermore, under both statutes, the commission of a sex act is *not even an element* of the offense. *See United States v. Backman*, 817 F.3d 662, 666 (9th Cir. 2016) (§ 1591); *United States Broxmeyer*, 616 F.3d 120, 130 n.8 (2d Cir. 2010) ("§ 2423(a) is a crime of intent and a conviction is entirely sustainable even if no underlying criminal sexual act ever occurs"). This demonstrates the statutes are not categorically sexual abuse statutes. *See Martinez*, 786 F.3d at 1231. The statutes also do not require a "knowingly" *mens*

*UNITED STATES v. AARON DARRELL CARTER*          -8-          CR 14-297(B)-VAP

NOTICE OF MOTION AND MOTION TO DISMISS COUNTS ONE THROUGH TEN OF THE SECOND SUPERSEDING INDICTMENT FOR VIOLATION OF THE STATUTE OF LIMITATIONS

EXHIBIT - B, 11

*rea, see, e.g., United States v. Taylor*, 239 F.3d 994, 997 (9th Cir. 2001), which also disqualifies them under a categorical approach. *See Martinez*, 786 F.3d at 1231.

Finally, *Bridges* mandates a strict categorical approach and does not allow a *modified* categorical approach by embellishing the indictment. *Bridges*, 346 U.S. at 222-23. Even if a modified categorical approach could apply, it would not trigger the extended statutes of limitations in § 3283 as to Counts One through Ten. Sections 1591 and 2423(a) are not divisible to allow application of the modified categorical approach to cure their overbreadth. *See, e.g., Mathis v. United States*, 579 U.S. __, 136 S. Ct. 2243, 2251-52 (2016). The allegations in Counts One through Ten do not establish "sexual abuse" even if a modified categorical approach were permissible. Thus, § 3283 is inapplicable to Counts One through Ten. To the extent there is any doubt, the rule of lenity, *see, e.g., Burrage*, 571 U.S. at 216, and the principle that statutes of limitations are to be "liberally interpreted in favor of repose" would control. *Toussie*, 397 U.S. at 115.

Because §§ 3283 and 3299 are not applicable to Counts One through Ten, the general five-year statute of limitations in 18 U.S.C. § 3282 governs. Counts One through Ten were filed well outside the five-year limitations period, and should be dismissed.

## CONCLUSION

Counts One through Ten of the Second Superseding Indictment should be dismissed with prejudice as untimely.

Dated: March 9, 2020.

Respectfully submitted,

THE LAW OFFICES OF
RICHARD M. CALLAHAN, JR.

By: _____
RICHARD M. CALLAHAN, JR.
Attorney for Defendant
LARON DARRELL CARTER

NOTICE OF MOTION AND MOTION TO DISMISS COUNTS ONE THROUGH TEN OF THE SECOND SUPERSEDING INDICTMENT FOR VIOLATION OF THE STATUTE OF LIMITATIONS

EXHIBIT - B, 12

Case 2:14-cr-00297-VAP   Document 337   Filed 03/09/20   Page 12 of 13   Page ID #:3378

# DECLARATION
# OF
# JOHN N. AQUILINA, ESQ.

EXHIBIT - B, 13

Case 2:14-cr-00297-VAP    Document 401    Filed 09/08/25    Page 53 of 135   Page ID
#3871
Case 2:14-cr-00297-VAP   Document 337   Filed 03/09/20   Page 13 of 13   Page ID #:3379

## DECLARATION OF JOHN N. AQUILINA

I, John Aquilina, declare:

1. I was trial counsel for Laron Carter in the case of *United States v. Laron Carter*, CR 14-297(B)-VAP which went to trial in 2016. Mr. Carter was convicted on 14 counts and was sentenced to an aggregate term of 40 years in custody. On information and belief, on November 2, 2018, the Ninth Circuit affirmed Counts One through Twelve, but reversed and remanded Counts 13 and 14 for a new trial, which is scheduled for July 9, 2019 before this Court.

2. Prior to the commencement of the trial, my co-counsel, Ian Wallach and I discussed the issue of the applicable statute of limitation. When I researched the statute, I noted the filing of the indictment was timely, but did not take note of the date (July 26, 2006) of the enactment of the statute. In the course of the appellate proceedings, I was made aware for the first time that the statute of limitations covering the charged offenses, 18 U.S.C. § 3299, was not enacted until 2006, which was after the conduct alleged in Counts One through Ten of the Second Superseding Indictment purportedly occurred. Had I realized before trial that § 3299 was enacted subsequent to the offense conduct charged in Counts One through Ten, I would have raised a statute of limitations defense on those counts with the Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.

Executed on April 2019 in Orange County, California.

JOHN N. AQUILINA

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 21-50234 |
| | ) | |
| Plaintiff-Appellee, | ) | D.C. No. 14CR00297-VAP |
| | ) | |
| v. | ) | OPPOSITION TO MOTION |
| | ) | TO DISMISS |
| LARON DARRELL CARTER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

## INTRODUCTION

Appellant Laron Darrell Carter submits this opposition to the Government's Motion to Dismiss for Lack of Jurisdiction. After obtaining an extension of three months to file its answering brief, the government waited until the new due date and instead filed a 10-page motion to dismiss. The government asserts that the district court lacked "jurisdiction" under the rule of mandate doctrine to decide Mr. Carter's claim that he received ineffective assistance of counsel when his trial attorney failed to move to dismiss Counts 1-10 based on the statute of limitations. The government did not make this argument or object in any way to consideration of the claim in the district court, and its failure to do so is not surprising, as the belated "jurisdictional" contention is without merit.

Not only did the district court have "jurisdiction" to deny Mr. Carter's claim on the merits, *see United States v. Cronic*, 466 U.S. 648, 667 n.42 (1984), but

whether it did so or not is besides the point. *See United States v. Van Alstyne*, 584 F.3d 803, 813 n.10 (9th Cir. 2009). In short, the government's untimely and waived request for dismissal inaccurately describes the prior proceedings and fails to address or even cite controlling Ninth Circuit and Supreme Court precedent that undermines its motion. This Court should therefore deny the motion to dismiss, and, even if the motion somehow had any merit, the appropriate relief would be to permit Mr. Carter to file a new opening brief rather than reward the government's sandbagging with a dismissal.

## BACKGROUND

In Mr. Carter's first appeal, he contended that Counts 1-10 were barred by the statute of limitations. He contended that trial counsel's pretrial motion to dismiss based on delay was sufficient to preserve the issue, and, in response to the answering brief's assertion that the claim was waived, he argued in his reply that this Court could alternatively reverse due to ineffective assistance of counsel. He cited *United States v. Liu*, 731 F.3d 982, 995-98 (9th Cir. 2013), which established that there could be no reasonable tactical decision for failing to file a meritorious limitations motion, and that such ineffective assistance could be determined in the first instance on direct appeal.

In an unpublished memorandum, this Court explicitly declined to resolve the merits of the limitations argument and the ineffective assistance of counsel issue:

2

"We do not reach the merits of Carter's argument that the prosecution of Counts 1-10 was barred by the statute of limitations because Carter failed to raise the statute of limitations in the district court. . . . We also decline Carter's request – made for the first time in his reply brief – that we consider his statute of limitations argument as a claim of ineffective assistance of counsel. 'Arguments not raised by a party in its opening brief are deemed waived,' and in any event we so no reason to depart from our 'general rule' that 'we do not review challenges to the effectiveness of defense counsel on direct appeal.'" *United States v. Carter*, 754 Fed. Appx. 534, 536 (9th Cir. 2018) (citations omitted). In a published opinion, this Court vacated Counts 13-14 due to a Confrontation Clause violation, and both the published and unpublished decisions remanded for resentencing. *See United States v. Carter*, 907 F.3d 1199 (9th Cir. 2018).

Although the decisions mentioned a remand for resentencing, in accordance with well-established practice, the parties and the district court proceeded under the rule that issues left unresolved by this Court were still open for consideration. For example, although this Court's decisions did not explicitly state that the government could retry Counts 13-14, the government took the position that it could do so, and nobody disagreed. CR 303. The government ultimately elected to dismiss Counts 13-14, but it did so because its witness was unavailable and not because anyone thought that the "mandate" precluded a retrial. CR 327.

3

Likewise, because this Court explicitly declined to resolve the statute of limitations question and related ineffective assistance of counsel, the parties and the district court all agreed that it could be considered on remand. Mr. Carter filed a motion to dismiss Counts 1-10 based on ineffective assistance of counsel, and his trial attorney submitted a declaration stating that he missed the issue and would have filed such a motion had he not overlooked the effective dates of the limitations provisions. CR 337, 347. In response, the government did not dispute that the issue could be decided by the district court nor did it raise any "jurisdictional" or procedural objections; instead, it only addressed the merits of the limitations argument, essentially conceding that Mr. Carter was entitled to relief due to ineffective assistance of counsel if his limitations claim was meritorious. CR 340. The district court likewise only addressed the merits of the limitations argument in denying the claim. 1-ER-11-17.

Based on the government's concessions below, appellate counsel for Mr. Carter only raised the limitations/ineffective assistance claim in the opening brief for the instant appeal, although there were potential sentencing claims that could have been raised. After obtaining a lengthy extension of time to file the answering brief, the government is now asserting that this appeal should be dismissed because the district court lacked "jurisdiction" to consider the limitations/ineffective assistance claim under the rule of mandate doctrine.

EXHIBIT - B, 18

## ARGUMENT

### I. The district court had "jurisdiction."

The motion to dismiss ignores *United States v. Cronic*, 466 U.S. 648 (1984), which rejected the government's argument that a district court must wait for 28 U.S.C. § 2255 proceedings to entertain an ineffective assistance of counsel claim and instead held that a district court has "jurisdiction" to deny such a claim even after judgment has been entered, a notice of appeal has been filed, and a case is pending before the court of appeals. *Id.* at 667 n.42 ("The District Court denied that motion for lack of jurisdiction because the case was pending on direct appeal at the time, but that ruling was erroneous."). A district court therefore certainly has "jurisdiction" to entertain an ineffective assistance claim while a case is back in the district court and before final judgment is pronounced, as was done here.

Under *Cronic*, even after a notice of appeal has been filed and a case is no longer in the district court, a district court has "jurisdiction to entertain the [ineffective assistance] motion and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case." *Id.* (citing numerous cases including *United States v. Hays*, 454 F.2d 274, 275 (9th Cir. 1972)).[1] The point is to streamline the

---

[1]     *Cronic* also cited Fed. R. Crim. P. 33, which has certain time limitations, but those limitations are *not* "jurisdictional" and instead constitute "claim-processing"

5

proceedings. *See United States v. Quinn*, 475 F.3d 1289, 1290-91 (D.C. Cir. 2007); *United States v. Camacho*, 302 F.3d 35, 36-37 (2d Cir. 2002). If the district court denies the motion, the claim can then be resolved by the appellate court on direct appeal, as there is no reason to require a separate § 2255 proceeding and a second appeal. If the district court intends to grant the motion, it can alert the appellate court and thereby potentially avoid expending the resources of an appeal.

The government essentially wants this Court to postpone consideration of Mr. Carter's claim until § 2255 proceedings, and sustaining its argument would lead to inefficiency and absurdity, which is why the Supreme Court rejected it in *Cronic*. Under the government's view, this Court should find that the district court lacked "jurisdiction," which would then mean that Mr. Carter would file the same claim in a § 2255 motion, the district court would presumably enter the same order denying it, and then this Court would hear the same appeal in another year or two. That simply makes no sense, and "the traditional rule of mandate" is not intended to create situations where "injustice or absurdity would result." *United States v. Kellington*, 217 F.3d 1084, 1095 n.12 (9th Cir. 2000).[2] Ninth Circuit "cases make

---

rules; thus, to the extent that there were any timeliness defects with Mr. Carter's motion in the district court, they were waived by the government when it failed to object. *See United States v. Berry*, 624 F.3d 1031, 1039 (9th Cir. 2010); *see also Eberhart v. United States*, 546 U.S. 12 (2005).

[2] If Mr. Carter's claim is needlessly postponed until later, perhaps the only difference will be an unfair one -- that he may not receive appointed counsel for a §

clear that the rule of mandate is designed to permit flexibility where necessary, not to prohibit it." *Id.* The district court had the flexibility, particularly given *Cronic*, to consider and deny Mr. Carter's ineffective assistance claim when this Court explicitly declined to resolve its merits in his first appeal.

Indeed, under the mandate rule, "the ultimate task is to distinguish matters that have been decided on appeal, and are therefore beyond the jurisdiction of the lower court, from matters that have not" been resolved. *Kellington*, 217 F.3d at 1093. In the first appeal, this Court clearly stated that it was not deciding Mr. Carter's ineffective assistance claim, and therefore the mandate rule did not bar the district court from doing so. The point was so clear that the government did not even attempt to make a contrary argument below, nor did the district court express any hesitation about its "jurisdiction," which was clear under *Cronic*. Given that this Court did not decide the ineffective assistance claim on direct appeal, the district court would have even had "jurisdiction" to *grant* Mr. Carter's motion without certifying its intention to this Court. At the very least, however, the district court had "jurisdiction" to *deny* the motion under *Cronic*. *See Cronic*, 466 U.S. at 667 n.42; *Hays*, 454 F.2d at 275.

This Court is bound by *Cronic*, and nothing about the mandate doctrine

---

2255 motion and appeal. This Court should not reward the government's new-found and untimely desire to exploit this disadvantage.

7

should cause this Court to create a conflict with Supreme Court precedent. The purpose of the mandate rule is to promote "consistency, finality and efficiency," and also to preserve "the hierarchical structure of the court system." *United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007).[3] It is the government's interpretation of the mandate rule that would lead to inefficiency in this case, and entertaining Mr. Carter's claim would not create inconsistency or undermine the hierarchical structure of the court system because this Court explicitly declined to resolve the limitations and ineffective assistance issues in the first appeal.

Finally, *Thrasher* noted that there is a circuit-split on whether the mandate rule is "jurisdictional." *Id.* at 982 ("The circuits appear to be split four to four on the issue."). Mr. Carter preserves an argument that the mandate rule is never jurisdictional based on this out-of-circuit precedent. In any event, the mandate rule did not create a "jurisdictional" bar for the district court given the particular circumstances of this case and *Cronic*. For this reason alone, the government's motion should be denied.

---

[3] *Thrasher* applied the mandate rule to bar an ineffective assistance claim, but it was a § 2255 case where the defendant attempted to raise a new claim that he had not raised in his original § 2255 motion, and he did so only after he had obtained a remand for an evidentiary hearing on a limited issue in an initial § 2255 appeal. In other words, the defendant attempted to do an end-run around the jurisdictional and procedural default rules that govern § 2255 motions. This case, however, is on direct appeal and is therefore governed by *Cronic*.

8

## II. Whether the district court had "jurisdiction" is besides the point.

The government's argument is that the district court lacked "jurisdiction" under the mandate rule, and therefore his Court now lacks jurisdiction to review the district court's decision. As discussed above, the government is wrong; the district court had "jurisdiction." But even if the district court somehow lacked "jurisdiction," the government's argument ignores *United States v. Van Alstyne*, 584 F.3d 803, 813 n.10 (9th Cir. 2009), which demonstrates that, in this context, whether the district court had jurisdiction is besides the point.

In *Van Alstyne*, the defendant raised a claim challenging his conviction in an initial direct appeal. This Court rejected the conviction claim but remanded for resentencing. After the resentencing, the defendant re-raised the conviction claim in a second direct appeal and argued that he should receive relief due to changed circumstances (a new Supreme Court opinion). This Court rejected an argument that the rule of mandate barred the defendant's second appeal of his conviction, explaining that it could reconsider the conviction claim because "the challenge was raised in an earlier appeal." *Van Alstyne*, 584 F.3d at 812.

This Court also reasoned that the rule of mandate "doctrine applies to district court proceedings following remand, not to the scope of a second appeal." *Id.* at

813 n.10.[4] In this context, whether the rule of mandate limited the district court's "jurisdiction" on remand does not define this Court's "jurisdiction" and the scope of this second appeal. Because Mr. Carter raised the limitations and ineffective assistance questions in his first appeal and this Court explicitly declined to resolve them on the merits, this Court has "jurisdiction" to resolve them now under *Van Alstyne*. Moreover, the circumstances have changed, as the record now includes a declaration from trial counsel admitting deficient performance due to his failure to file the statute of limitations motion. The government has also now effectively conceded deficient performance and prejudice under the *Strickland v. Washington*, 466 U.S. 668 (1984) test if the statute of limitations claim is meritorious, and thus the scope of this second appeal boils down to the merits of the limitations issues.

Because Mr. Carter raised the statute of limitations related claims in his first appeal, this case is controlled by *Van Alstyne* and not *United States v. Luong*, 627 F.3d 1306 (9th Cir. 2010), the main case relied upon by the government. In *Luong*, the defendants did not raise their claims challenging their convictions in their initial appeal and only attempted to do so for the first time on remand in the district court. Because the defendants had not previously raised the conviction claims in

---

[4] *Van Alstyne* also rejected the government's argument that the law of the case doctrine barred the second appeal. The government does not rely on law of the case in its motion, thereby waiving the argument and wisely so, as it clearly is inapplicable.

the first appeal, this Court reasoned that its jurisdiction depended upon whether the district court had jurisdiction to entertain the claims in the first instance on remand, explaining that a defendant is "not entitled to hold issues back for a string of appeals." *Id.* at 1309. Unlike the defendants in *Luong*, but like the defendant in *Van Alstyne*, Mr. Carter did not "hold back" his arguments in his first appeal; to the contrary, the only party to "hold back" arguments here is the government, which did not raise its "jurisdictional" objection in the district court.[5]

For this additional reason, this Court should deny the government's motion. Because Mr. Carter previously raised his limitations and ineffective assistance claims in his first direct appeal, whether the district court had "jurisdiction" on remand does not define this Court's "jurisdiction" and the scope of this second appeal.

## III. The government waived its motion, and dismissal is inappropriate.

While the mandate rule is "in some sense jurisdictional[,]" the word "jurisdiction" is "a word of many, [even] too many, meanings[,]" and the mandate rule does not *always* implicate a "jurisdictional" defect so as to excuse a party from raising it in the district court. *Thrasher*, 483 F.3d at 983 (Berzon, J., concurring). This case is a classic example. The district court clearly had the authority under

---

[5]     Also, unlike here, the defendants in *Luong* did *not* raise an ineffective assistance claim, and therefore *Luong* did not address or even cite *Cronic.*

EXHIBIT - B, 25

*Cronic* to *deny* Mr. Carter's ineffective assistance claim on the merits, thereby streamlining the proceedings by teeing the issue up for this appeal. Thus, if the government wanted to lodge an objection to the district court doing so, it had an obligation to raise that objection in the district court. By failing to do so, the government has waived and forfeited its current and untimely claim for dismissal. *See Berry*, 624 F.3d at 1039.

Even if there were somehow a "jurisdictional" defect that could not be waived by the government, this Court should decline to dismiss this appeal and instead should afford Mr. Carter an opportunity to file a new opening brief. Counsel for Mr. Carter chose to raise only the limitations/ineffective assistance issues based on the government's concession below that the district court could consider them. Indeed, the government *only* disputed the merits of the limitations claim below, and therefore it also effectively conceded that trial counsel's performance was deficient and that Mr. Carter was entitled to relief if his limitations arguments were meritorious. This Court should not reward the government's sandbagging by dismissing this appeal in its entirety. There were other potential sentencing issues that appellate counsel could have raised but opted not to do so based on the government's concessions below.

Accordingly, if this Court somehow finds that there is no "jurisdiction" to consider the claims in the opening brief, it should permit counsel an opportunity to

EXHIBIT - B, 26

file a new opening brief on Mr. Carter's behalf. The government would not suffer any unfair prejudice from such alternative relief, as it has not yet filed its answering brief even though it obtained a lengthy extension to do so but then sandbagged with the instant motion at the eleventh hour. The only unfair prejudice would be caused by ordering dismissal, and it would be suffered by Mr. Carter.

## CONCLUSION

For the foregoing reasons, this Court should deny the government's motion to dismiss.

Respectfully submitted,

*s/Benjamin L. Coleman*

Dated: February 2, 2023

BENJAMIN L. COLEMAN
BENJAMIN L. COLEMAN LAW PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 865-5106
blc@blcolemanlaw.com

*Counsel for Appellant*

13

EXHIBIT - B, 27

BENJAMIN L. COLEMAN LAW ᴾᶜ

February 16, 2023

Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, California 94103-1526

Re: *United States v. Laron Darrell Carter*, No. 21-50234

Dear Clerk:

Appellant Laron Darrell Carter attaches as Exhibit A the relevant pleadings in this case applicable to the government's motion to dismiss so that the Court has them easily accessible. These pleadings are important given the latest of the government's shifting and untimely arguments asserted in its reply brief -- its complaint that Mr. Carter did not raise ineffective assistance of counsel in his opening brief in this appeal.

- Exhibit A at 1-13 is Mr. Carter's motion to dismiss Counts 1-10 in the district court wherein he argued that the claim could be considered as an ineffective assistance of counsel claim, Ex. A at 4-5, and included a declaration from his trial attorney admitting the deficient-performance prong of the ineffective-assistance test. Ex. A at 13.

- Exhibit A at 14-24 is the government's opposition to the motion, wherein it did not make *any* arguments that the motion was procedurally defective or that the district court lacked jurisdiction, and *only* addressed the merits of the statute of limitations argument. Thus, the only argument that the government implicitly made as to ineffective assistance of

1350 COLUMBIA STREET, SUITE 600, SAN DIEGO, CA 92101 I 619.865.5106 I BLC@BLCOLEMANLAW.COM

EXHIBIT - B, 28

counsel was that there was no prejudice because the limitations motion was without merit and would have been denied.

- Exhibit A at 25-34 is Mr. Carter's reply brief, wherein he argued: "The government does not dispute that Mr. Carter's statute of limitations claim is properly before the Court, thereby waiving any contrary contention. *See, e.g., United States v. Sainz*, 933 F.3d 1080, 1083-85 (9th Cir. 2019); *United States v. Swisher*, 811 F.3d 299, 307 (9th Cir. 2016) (*en banc*). Given the government's concession, the only issue before the Court is the merits of the statute of limitations question." Ex. A at 26. He also pointed out in footnote 1 of his reply: "*Miller* and *Weingarten* [First and Second Circuit cases] declined to resolve the issue because the cases were in the posture of ineffective assistance of counsel claims raised for the first time on appeal (*Miller*) and in a 28 U.S.C. § 2255 motion (*Weingarten*). There was no record regarding why the attorney did not file a motion in *Miller*, and the attorney in *Weingarten* gave a strategic reason for his failure to file. Here, this motion is being made before judgment, and counsel has filed a declaration stating that he had no strategic reason for failing to file the motion and that he would have and should have done so had he not mistakenly overlooked the claim. Furthermore, as mentioned, the government has failed to make any argument other than on the merits of the statute of limitations question, and therefore it has waived any other arguments regarding ineffective assistance or the timing of this motion. *See, e.g., Sainz*, 933 F.3d at 1083-85; *Swisher*, 811 F.3d at 307." Ex. A at 27.

- Exhibit A at 35-41 is the district court's order on the motion, wherein it too only addressed the merits of the statute of limitations claim, implicitly finding that there was no ineffective assistance of counsel because the limitations argument was without merit and therefore there was no prejudice.

- Exhibit A at 42-45 are excerpts of Mr. Carter's opening brief wherein he explained the procedural posture of how the limitations issues arose to this Court, including in the context of ineffective assistance of counsel, and the government's waiver of any arguments other than the merits of the limitations claim: "In the first appeal, this Court declined to entertain Mr. Carter's claim that he received ineffective assistance of counsel when his attorney failed to move to dismiss Counts 1-10 as untimely under the statute of limitations. . . . . On remand . . . Mr. Carter moved to dismiss Counts 1-10. He again argued that the charges were barred by the statute of limitations, and his prior attorney submitted a declaration admitting deficient performance in failing to raise the claim. The government only responded by arguing the merits of the statute of limitations issue, thereby conceding that it was properly before the court and waiving any other arguments. The district court, accepting the government's concession, addressed the merits of the claim. . . . The district court held that Counts 1-10 did not violate the limitations period." Ex. A at 43-44 (citations omitted). Later in footnote 3 of the brief, Mr. Carter again pointed out: "The First Circuit in *Miller* declined to reach a definitive determination on related issues in the context of § 3283 because the case was in the posture of an ineffective assistance of counsel claim raised for the first time on appeal, and there was no record regarding why the attorney did not file a motion to dismiss. As mentioned, the government has waived any argument that the issue was not properly before the court, and the district court accepted the government's concession and solely addressed the substantive merits of the claim." Ex. A at 45.

Respectfully submitted,

s/Benjamin L. Coleman
BENJAMIN L. COLEMAN
Benjamin L. Coleman Law PC
*Counsel for Appellant*

---

BENJAMIN L. COLEMAN LAW ᴾᶜ

EXHIBIT - B, 30

2016 MAR 30 PM 1:18

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2015 Grand Jury

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

LARON DARRELL CARTER,
     aka "Birdd,"
     aka "Pi Birdd,"
     aka "Pi Pimpin Birdd,"
     aka "Garr Birdd,"
     aka "Gardena Pimpin Birdd,"

                    Defendant.

CR No. 14-297(B)-VAP

S E C O N D
S U P E R S E D I N G
I N D I C T M E N T

[18 U.S.C. §§ 1591(a)(1), (a)(2),
(b)(1), (b)(2), (c): Sex
Trafficking of a Child and by
Force, Fraud, and Coercion; 18
U.S.C. § 2423(a): Transportation
of a Child in Interstate Commerce
to Engage in Prostitution; 18
U.S.C. § 2(b): Causing an Act to
Be Done]

     The Grand Jury charges:

COUNT ONE

     [18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), (b)(2)]

     Starting in or around June 2003, and continuing to on or about November 20, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored,

transported, provided, and obtained by any means a person, namely, L.H. ████████, and benefitted, financially and by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means L.H., knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(c)(2) (2004), would be used to cause L.H. to engage in a commercial sex act, and that L.H. had not attained the age of 18 years and would be caused to engage in a commercial sex act.

2

EXHIBIT - B, 32

## COUNT TWO

### [18 U.S.C. § 2423(a)]

Between on or about November 1, 2003, and on or about November 22, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly and willfully transported a minor, namely, L.H. [redacted], who was at the time approximately [redacted] years old, in interstate commerce, from the State of Arizona to the State of California, with the intent that L.H. would engage in prostitution and other sexual activity for which a person could be charged with a criminal offense.

3

EXHIBIT - B, 33

COUNT THREE

[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), (b)(2)]

Starting in or around June 2003, and continuing to on or about January 31, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained by any means a person, namely, A.B. (A.B.), and benefitted, financially and by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means A.B., knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(c)(2) (2004), would be used to cause A.B. to engage in a commercial sex act, and that A.B. had not attained the age of 18 years and would be caused to engage in a commercial sex act.

4

EXHIBIT - B, 34

## COUNT FOUR

### [18 U.S.C. § 2423(a)]

Between on or about November 1, 2003, and on or about January 31, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly and willfully transported a minor, namely, A.B. █████████, who was at the time approximately 17 years old, in interstate commerce, from the State of Arizona to the State of California, with the intent that A.B. would engage in prostitution and other sexual activity for which a person could be charged with a criminal offense.

5

EXHIBIT - B, 35

## COUNT FIVE

[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(2)]

Starting in 2004, and continuing to on or about October 18, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained by any means a person, namely, A.D. ("A.D."), and benefitted, financially and by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means A.D., knowing that A.D. had not attained the age of 18 years and would be caused to engage in a commercial sex act.

6

EXHIBIT - B, 36

Case 2:14-cr-00297-VAP Document 195 Filed 03/30/16 Page 7 of 15 Page ID #:1059

COUNT SIX

[18 U.S.C. § 2423(a)]

Between on or about September 29, 2005, and on or about October 18, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly and willfully transported a minor, namely, A.D. ("A.D."), who was at the time approximately 17 years old, in interstate commerce, from the State of Arizona to the State of California, with the intent that A.D. would engage in prostitution and other sexual activity for which a person could be charged with a criminal offense.

EXHIBIT - B, 37

COUNT SEVEN

[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(2)]

Beginning on an unknown date, and continuing to on or about October 18, 2005, in San Bernardino and Los Angeles Counties, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained by any means a person, namely, D.S. ("D.S."), and benefitted, financially and by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means D.S., knowing that D.S. had not attained the age of 18 years and would be caused to engage in a commercial sex act.

8

EXHIBIT - B, 38

COUNT EIGHT

[18 U.S.C. § 2423(a)]

Between on or about September 29, 2005, and on or about October 18, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly and willfully transported a minor, namely, D.S. ("D.S."), who was at the time approximately 15 years old, in interstate commerce, from the State of Arizona to the State of California, with the intent that D.S. would engage in prostitution and other sexual activity for which a person could be charged with a criminal offense.

9

EXHIBIT - B, 39

COUNT NINE

[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), (b)(2)]

Beginning on an unknown date, and continuing to on or about October 18, 2005, in San Bernardino County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained by any means a person, namely, J.C.C. ("J.C.C."), and benefitted, financially and by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means J.C.C., knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(c)(2) (2004), would be used to cause J.C.C. to engage in a commercial sex act, and that J.C.C. had not attained the age of 18 years and would be caused to engage in a commercial sex act.

10

EXHIBIT - B, 40

COUNT TEN

[18 U.S.C. § 2423(a)]

Between on or about September 29, 2005, and on or about October 18, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly and willfully transported a minor, namely, J.C.C. ("J.C.C."), who was at the time approximately 14 years old, in interstate commerce, from the State of Arizona to the State of California, with the intent that J.C.C. would engage in prostitution and other sexual activity for which a person could be charged with a criminal offense.

11

EXHIBIT - C

In Support of Ground Four

Exhibit - C, 1-2
HSI Report Transcribing 03/26/2015 Reverse Proffer, Bates # CARTER 3851 & CARTER 3852
(2) Pages

Exhibit - C, 3-11
Draft (Unfiled) Motion to Dismiss Superseding Indictment for Intentional Delay and Prejudice Dated 04/20/2015
(9) Pages

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE   3 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N   C O N T I N U A T I O N | CASE NUMBER ▮▮▮▮▮▮ |
| | REPORT NUMBER: 056 |

DETAILS OF INVESTIGATION:

In April 2013, Homeland Security Investigations (HSI), Los Angeles, Human Smuggling and Trafficking Unit - Long Beach (HSTU-LB) received information from the Los Angeles Sheriff's Department (LASD) Major Crimes Bureau concerning minor child, J.C. J.C. was reported as a missing juvenile from Minneapolis, Minnesota and was recovered by LASD. While in custody, J.C. reported she was enticed by PI BIRDD, later identified as Laron CARTER, to travel from Minneapolis to Los Angeles, California. Upon her arrival, J.C. was forced by CARTER into prostitution. CARTER is a member of the SHOTGUN CRIPS. HSI Los Angeles HSTU-LB will continue the investigation into CARTER ET AL. for the domestic sex trafficking of minors.

On March 26, 2015, at approximately 1119 hours, HSI Special Agents (SA) Gabriel Nunez, SA Robert Falche, Assistant United States Attorney (AUSA) David Herzog, Defense Attorney Brian Newman, Paralegal Cynthia Lee, and Laron CARTER were present for a proffer session at the United States Attorney's Office in Los Angeles, California. AUSA Herzog provided the following non-verbatim statements to Laron CARTER:

AUSA Herzog stated to CARTER that the evidence against him was strong and indicated that he believes the government would not lose at trial. AUSA Herzog stated that CARTER should consider the plea offer in this case. AUSA Herzog stated to CARTER that if he were to go to trial that CARTER's sentence could be greatly increased.

AUSA Herzog showed CARTER and Defense Attorney Newman, a binder containing evidence that the government anticipates to use at trial. AUSA Herzog stated he is showing CARTER the evidence indicating why the government would not lose at trial. AUSA Herzog stated that the jury pool is made of approximately 17 to 18 million people and may not be knowledgeable of the commercial sex industry. AUSA Herzog stated that the jury may interpret the evidence differently than individuals who are knowledgeable about the commercial sex industry. AUSA Herzog indicated the evidence is overwhelming and corroborated.

AUSA Herzog explained to CARTER the current charge in this case. AUSA Herzog stated that he was considering superseding with additional charges in this case. AUSA Herzog explained that some defendants who are familiar with the state proceeding may believe that they are in a better position for plea offers as they get closer to trial. AUSA Herzog stated that this is usually not true for federal proceedings. AUSA Herzog explained that plea offers are extended to save resources from the government preparing for trial. AUSA Herzog stated to CARTER that he may exercise his right to continue to trial, but to be aware that the plea offers usually do not become more favorable for the defendant as the defendant gets closer to trial.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

CARTER 3851

EXHIBIT - C, 1

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE   4 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER |
| | REPORT NUMBER: 056 |

AUSA Herzog explained to CARTER that he has been charged with the transportation of a child to engage in prostitution which carries a 10 year mandatory minimum sentence. AUSA Herzog stated to CARTER that because of his criminal history that the judge has a range to sentence him; however, the judge cannot sentence lower than 10 years. AUSA Herzog stated the high end of the range in CARTER's charge should he continue to trial is 360 months to life in prison. AUSA Herzog stated that certain prior criminal conduct may increase the defendant's sentence. AUSA Herzog stated that he is not threatening CARTER, but instead is informing him of the facts. AUSA Herzog stated that he has not drafted the plea offer; however, the plea offer that would likely be offered to CARTER would include a 10 year mandatory minimum sentence and a non-prosecution agreement for human trafficking charges.

AUSA Herzog stated the current charge refers to moving the victim, J.C., utilizing the purchase of a bus ticket from Minnesota to Los Angeles and forcing her to engage in prostitution. AUSA Herzog stated that under the relevant human trafficking statute, 18 U.S.C. 1591, the mandatory minimum is 15 years. AUSA Herzog stated that should CARTER accept the likely plea offer with a 10 year mandatory minimum sentence then the government would not pursue the 18 U.S.C. 1591 charge that carry a 15 year mandatory minimum sentence. AUSA Herzog explained to CARTER that he would give the plea offer to Defense Attorney Newman with a one week deadline. AUSA Herzog stated that should CARTER refuse the likely 10 year mandatory minimum plea offer that Herzog would likely supersede with additional charges because the evidence supports the use of force necessary for the 15 year mandatory minimum under the human trafficking statute. AUSA Herzog stated to CARTER that there are three additional victims that would be willing to testify.

AUSA Herzog stated to CARTER that he may attack the credibility of the victims; however, the government has the evidence to corroborate their testimony. Additionally, Herzog indicated to CARTER that the victims are tattooed with his "BIRDD" moniker/symbol. AUSA Herzog stated that because of these facts, jurors would unlikely to believe that the victims were being untruthful.

AUSA Herzog explained to CARTER the evidence that the government would present at trial. Herzog stated in December 2012, CARTER met the victim, J.C., and persuaded her to come to Los Angeles. Herzog stated that J.C. would testify that CARTER wanted to purchase her a bus ticket, and that J.C. told CARTER that she did not have any identification. Herzog stated that CARTER purchased the bus ticket in his name and address. The bus ticket also noted that J.C. did not have any identification. This is important because it corroborates J.C.'s testimony. The passenger name on the bus ticket is "Natasha Spearman" which was an alias for J.C.

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

CARTER 3852

EXHIBIT - C, 2

Brian a. Newman for
Law Offices of Brian a. Newman
Post Office Box 987
Hermosa Beach, California  90254
(424) 275-4014; Fax: (424) 275-4015
Email: jjnewbee.newman@gmail.com
CA State Bar #89975
Attorney for Defendant Laron Carter

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CASE NO.  CR-14-00297-VAP-1 |
| | ) |
|         Plaintiff, | ) NOTICE OF MOTION AND MOTION |
| | ) TO DISMISS SUPERSEDING |
|   v. | ) INDICTMENT FOR INTENTIONAL DELAY |
| | ) AND PREJUDICE |
| LARON CARTER (#1) | ) |
| | ) DATE: |
|        Defendant. | ) TIME: |
| | ) CTRM: JUDGE VIRGINIA A. PHILLIPS |
| | ) |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF, THE UNITED STATES OF AMERICA, AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April xx, 2015 at 9:00 a.m. or as soon thereafter as defendant may be heard, Laron Carter, by and through his counsel of record, Brian A. Newman, will move this court to dismiss the superseding indictment against him for intentional delay and prejudice.

//

1

EXHIBIT - C, 3

This motion is based on this notice of motion and motion, the attached Memorandum of Points and Authorities, Rule 48(b)(2) of the Federal Rules of Criminal Procedure, the records and files in this case, any testimony and evidence presented at the hearing herein, or as stipulated to by the parties, and on such oral argument, additional documentation, and supplemental points and authorities, if any, as may be considered at the hearing for this matter or as authorized afterward.

DATED: April 20, 2015      Respectfully submitted,

LAW OFFICES OF BRIAN A. NEWMAN
Attorneys & Counselors At Law


By: _____/s/_____
         BRIAN A. NEWMAN
         Attorney for Defendant
         Laron Carter

2

EXHIBIT - C, 4

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

On May 20, 2014, Defendant was indicted by a Grand Jury for violations of 18 U.S.C § 2423 (a) - Transportation of a Child in Interstate Commerce to Engage in Prostitution; and 18 U.S.C. § 2 - Causing an Act to be Done.

Over the course of the next eleven months, no modification or superseding indictment was filed by the government. On March 26, 2015, Defendant's attorney met with representatives of the United States Attorney's Office in a reverse proffer session. During that meeting, Defendant was offered a 120-month sentence in exchange for a guilty plea to the charge of 18 U.S.C. 2423 (a). In addition, the United States Attorney's Office would agree not to pursue an additional charge of 18 U.S.C 1591 - Sex Trafficking of Children, against Defendant, which would carry a 180-month mandatory minimum sentence. However should Defendant fail to accept a plea, the government was prepared to seek a superseding indictment to include 18 U.S.C. 1591 against him. The government's position that the addition of that charge would result in "no new evidence" being required, and thus there would be no additional discovery obligation on their part.

On April 2, 2015, the government presented a Plea Agreement to Defendant's counsel. The agreement detailed that based upon

3

the plea, Defendant would be assigned a Offense Level Count of 37 (including the Base Offense with three potential enhancements) with a potential sentence of up to 262 months. A subsequently revised Plea Agreement was received on April 13, 2015, and separated the Base Offense and one enhancement, but still allowed the government the opportunity to present evidence and argue to the Court that the additional two enhancements, worth seven additional enhancement points, should apply. The government allowed until April 17, 2015 for Defendant to accept the plea, or it would be withdrawn, with the implication that a superseding indictment would be sought. The case is calendared for trial on May 12, 2015.

## II Argument

### 1. Superseding Indictment is improperly delayed
### and prejudicial to defendant

It is not uncommon in cases of this nature for the government to charge a defendant with violations of both, 18 U.S.C. 2423 (a) and 18 U.S.C. 1591. In this case, the government admitted it had all of the evidence it planned to present, whether it chose to file only one charge (18 U.S.C. 2423 (a)) against Defendant, or two (18 U.S.C. 1591). There was no last-minute revelation of new evidence which inspired the government to ponder the additional, more serious charge of 18 U.S.C. 1591.

4

EXHIBIT - C, 6

Instead, this was a late-in-the-game effort on the part of the government to get the defendant to accept a plea agreement that had been rendered meaningless by its offer of a sentence that could amount to 262 months in prison for Defendant.

During the March 26, 2015 reverse proffer meeting, the government indicated failure of Defendant to accept the plea agreement, it would likely file a superseding indictment to charge him with the more serious 18 U.S.C. 1591. While the addition of this charge presents substantial challenges for the defense, the government downplayed this maneuver by intimating that "no new evidence" would be presented, the erroneous implication being that "no new defense strategy" would need to be undertaken.

The government is using a heavy-handed threat of the additional charge in an effort to leverage Defendant into accepting a sentence that is far greater than the 120-month offer inferred during the March 26, 2015 reverse proffer, and is doing so intentionally close to the trial date of May 12, 2015, that has prejudiced the preparation of Defendant's defense . At the same time, the government has made an additional allegation that Defendant beat the alleged victim with a belt, which would gain additional enhancements.

Far from simply adding a second charge against Defendant

5

without addition of new evidence, the superseding indictment substantially alters the defense approach to this case. Far from a minor offense, 18 U.S.C. 2423 (a) alleges:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

This differs significantly from 18 U.S.C. 1591, which adds a series of elements and definitions that to this day are the subject of Circuit Court review. In addition, it provides for a mandatory minimum sentence of 180 months, as compared to 120 months for 18 U.S.C. 2423(a), not including anticipated sentencing enhancements the government has declared it will argue for.

Changing a defense theory and strategy so close to the date of trial, after the government has had nearly a year to contemplate which charges to file, is prejudicial to Defendant. The superseding indictment does not "clarify" the original count, it obviously adds to it. The government will likely argue that from the time the Plea Agreement was received by defense counsel to the trial date of May 12, 2015 is enough time to prepare for

6

EXHIBIT - C, 8

trial.

When presented with the question of whether the government has improperly delayed filing a superseding indictment, the court must ordinarily consider (1) whether the government intentionally delayed filing the superseding indictment either to gain a tactical advantage or to harass the defendant, and (2) whether the defendant is actually and substantially prejudiced by the delay. *See, e.g.*, *United States v. Benshop*, 138 F.3d 1229, 1232-35 (8th Cir. 1998). The two-pronged inquiry can be applied to the delay between the issuance of the original indictment and the superseding indictment, see, e.g., *United States v. Crow Dog*, 532 F.2d 1182, 1194 (8th Cir. 1976), which considered a delay of almost twenty months between the filing of the original indictment and the superseding indictment. The timing of the issuance of a superseding indictment on the eve of trial is also considered in *United States v. Hooton*, 933 F.2d 293, 296-297 (5 th Cir. 1991).

Such intentional delay may be found, for example, where the government was in possession of all of the facts needed to proceed with its superseding indictment for some time before trial, but waited until the eve of trial to file the superseding indictment, without valid explanation. *See United States v. Van Brandy*, 563 F. Supp. 438, 441 (S.D. Cal. 1983).

7

The litmus test in determining if prejudice has taken place as a result of pre-indictment delay is "whether the delay has impaired the defendant's ability to defend himself." *Crow Dog*, 532 F.2d at 1194 (quoting *United States v. Golden* , 436 F.2d 941, 943 (8th Cir.), *cert. denied* , 404 U.S. 910 (1971)). This mostly addresses unavailability of trial witnesses or other evidence (*Benshop,* 138 F.3d at 1234).

There would be no such prejudice when at the time of the filing of the superseding indictment, the defendant has been "under indictment for a crime encompassing the same set of events" and "[a]ny defense efforts made in regard to that first indictment carried over to the second and thus negated the chance of an impaired defense." *Crow Dog* , 532 F.2d at 1194. In this case, while the events might be consistent, the defense is significantly impaired because Defendant is being charged with an entirely new crime.

With regard to the concept of "intentional delay," the Fifth and Eighth Circuit Court of Appeals have described the requirement as proof that the government delayed the issuance of a superseding indictment until the eve of trial in order to "to gain a tactical advantage" over the defendant. (*Hooten* , 933 F.2d at 296-97). In this case, the government was in possession of all the facts and evidence it needed in order to file the

8

superseding indictment, but chose not to do so until just before trial in order to force Defendant into accepting a plea agreement for a sentence that would rival what he could receive for conviction on the 18 U.S.C. 1591 charge. The superseding indictment was not filed as the result of pre-trial interviews with witnesses in order to clarify the actions of Defendant at issue, but to intimidate him into acceptance of the plea agreement.

## CONCLUSION

For the foregoing reasons, defendant Laron Carter respectfully requests that the Court make this requested pretrial ruling.

DATED: April 20, 2015      Respectfully submitted,

LAW OFFICES OF BRIAN A. NEWMAN
Attorneys & Counselors At Law


By: _____/s/_____
       BRIAN A. NEWMAN
       Attorney for Defendant
       Laron Carter

9

EXHIBIT - C, 11

EXHIBIT - D

In Support of Ground Five

Exhibit - D, 1-2
April 20, 2016 Trial Transcripts (Day Two) Pages 163 & 164
(2) Pages

Exhibit - D, 3-4
April 21, 2016 Trial Transcripts (Day Three) Pages 5 & 6
(2) Pages

Exhibit - D, 5-6
April 26, 2016 Trial Transcripts (Day Five) Pages 183 & 184
(2) Pages

Exhibit - D, 7
April 26, 2016 Trial Transcript (Day Five) Page 224
(1) Page

Exhibit - D, 8
Jury Seating Chart
(1) Page

A    Yes.

Q    And looking at 10.3, how many charges from Backpage did you find on this card?

A    About two.

Q    Did you find any other credit cards in the defendant's name?

A    Yes.

Q    Please take a look at Government's Exhibit 10.2.

THE COURT:    Before we get into this exhibit, let's take our afternoon break.

MR. MITCHELL:    That's fine, your Honor.

THE COURT:    Ladies and gentlemen, we'll be in recess, again, for 15 minutes.  Please remember don't discuss or communicate anything about the case.  Don't make up your minds about any issue.  Don't do any research or investigation.  Thank you.

(Outside The Presence Of The Jury:)

THE COURT:    All right.  You may step down.  Thank you.

MR. AQUILINA:    Your Honor, I have a matter to take up either now or --

THE COURT:    Go ahead.

MR. AQUILINA:    Your Honor, I'm concerned, and I have a motion, regarding juror number 7.  During Agent Nunez' testimony this afternoon, she appears to have been asleep.

**UNITED STATES DISTRICT COURT**

EXHIBIT - D, 1

THE COURT:  Is that Ms. Picket?

MR. AQUILINA:  I'm sorry?

THE COURT:  Is that Ms. Pickett?

MR. AQUILINA:  I don't have the name in front of me.

THE COURT:  Yes.

MR. MITCHELL:  I believe it is, your Honor.

THE COURT:  It is.  Well, it's a little hard to tell.  Sometimes it looks like her eyes are closed, but they're not because she's making notes or something.

MR. AQUILINA:  I also just wanted to add that I noted the same thing several times yesterday.

THE COURT:  Yeah.  I've kept an eye on her.  Also, Mr. Nakamura, juror number 4, has had a little bit of the same problem.  I think the first step would be that I'd ask Ms. Rodgers to speak to the group and say it's very important that everyone pay attention.  If the problem continues, then we'll address it.

MR. AQUILINA:  Thank you.

THE COURT:  All right.

(Recess.)

(In the presence of the jury:)

THE COURT:  Let the record reflect the presence of all members of the jury, all counsel, and the defendant present, and the witness back on the witness stand.

**UNITED STATES DISTRICT COURT**

EXHIBIT - D, 2

5

THURSDAY, APRIL 21, 2016; LOS ANGELES, CALIFORNIA

-oOo-

(Out of the presence of the jury:)

THE CLERK:  Calling Case No. LACR-029 VAP, United States of America v. Laron Darrell Carter.

Counsel, please state your appearance.

MR. MITCHELL:  Good morning, Your Honor.  Jeff Mitchell and Jeff Chemerinsky on behalf of the United States.

THE COURT:  Good morning.

MR. AQUILINA:  Good morning.  John Aquilina and Ian Wallach on behalf of Mr. Carter who is present in court.

THE COURT:  Thank you.  Good morning.

Are there some matters that counsel wish to take up with me?

MR. AQUILINA:  Your Honor, I just wanted to clarify one thing from yesterday, and that is, I indicated on the record that when I noticed that Juror No. 7 appeared to be asleep, that I said that the defense had a motion to bring, but I never indicated what the motion was.

The motion at that point -- or this point, would have been to inquire of Juror No. 7, and in fact if she had missed any testimony or evidence, that we would move to have her excused and replaced with the alternate juror.

THE COURT:  All right.  What's the Government's position?

08:43

08:43

08:44

08:44

08:44

EXHIBIT - D, 3

MR. MITCHELL:  Your Honor, I noticed during my opening and during our first witness that the juror's head was down and what appeared to be possibly sleeping.  But after closer examination, I noticed that she was writing the entire time, it seems.

So at this point, I think with the CRD's instructions to her or inquiry of her I think would be sufficient, and I don't think there's any need to replace her at this time.

THE COURT:  Well, Ms. Rogers reported to me that after she spoke to the jury yesterday afternoon they all agreed that it was important, they would make more efforts.  One of them offered to bring diet Coke into the courtroom.  That offer was rejected.  But I watched after that in the last session, Mr. Nakamura appeared very alert.  He was the other juror I had mentioned.

It's hard to tell with Juror No. 7.  Sometimes it does look like she's asleep, but then it appears that she's writing.

I will take the matter under submission and continue to observe her, and we'll see how it goes.

MR. AQUILINA:  Thank you.

The only other matter I had, Your Honor, and it doesn't apply to the Government's first witness but may apply to other witnesses coming in today or tomorrow, primarily the victims.  In the Court's pretrial order on the motion to

08:45
08:45
08:45
08:46
08:46

EXHIBIT - D, 4

communicate amongst yourselves or with anyone else.  Don't discuss the case or communicate in any fashion.

And we'll see you back in 15 minutes.  Thank you.

(Out of the presence of the jury:)

THE COURT:  You may be seated.

We're on the record outside the presence of the jury.  Counsel, one issue that either side wanted to address was as to the alternate.

MR. AQUILINA:  Yes, Your Honor.

It would still be our position that Juror No. 7, I believe, Ms. Pickett, should be excused.

THE COURT:  And replaced with the alternate?

MR. AQUILINA:  With the alternate.

THE COURT:  Any objection?

MR. MITCHELL:  No objection, Your Honor.

THE COURT:  All right.  I think I'll wait until -- I'm trying to think what the best way to handle this is.  I think what I'll do is, after all the closings and the instructions, I will tell Ms. Pickett, Juror No. 7, that she's been selected as the alternate, that she's still under the instruction not to discuss the case, et cetera, just like I would do with a regular alternate.  And then I'll tell the other -- because I don't want to humiliate her in front of everyone else.  And then I'll excuse the 12 jurors to go and deliberate.

02:46
02:46
02:46
02:47
02:47

Is that agreeable?

MR. MITCHELL:  That's fine with the Government.

MR. AQUILINA:  That's fine.  I wasn't quite understanding.  The Court's going to select Ms. Pickett as the alternate?

THE COURT:  I'm going to tell her that -- I'm going to excuse her, but rather than humiliate her in front of everyone, I'll tell her that she's been selected as the alternate and that's why she's not going back in.

MR. AQUILINA:  That's fine.

(Recess)

(In the presence of the jury:)

THE COURT:  Let the record reflect the presence of all members of the jury, all counsel and the defendant present.

Mr. Wallach.

MR. WALLACH:  Thank you, Your Honor.

Good afternoon, ladies and gentlemen.  My name is Ian Wallach.  And along with John Aquilina, it's been our honor to represent Laron Carter in this matter.

Now, before I begin sort of my standard or prepared closing I had worked on, I want to make a few comments about the very impassioned opening -- or closing argument that was just given by the prosecution, and I understand that.  This is a very tough scenario.  It's a difficult case.  We've seen some very sympathetic-inducing testimony.  And there's a natural

questions, we prepared a working copy for each of you so each of you will have one to look at. Those are stamped "copy." And leave those in the jury room. They will be destroyed. Only the one that's stamped "original" should be completed, and then the foreperson brings that into the courtroom when you are all returning to the courtroom. In other words, the foreperson maintains custody of the original verdict form.

All right. Now, except for Juror No. 2, Ms. Pickett, you've been selected to be the alternate in the case, so I'm going to ask you to remain behind. And all the rest of you are excused at this time. Take anything that -- your notebooks and anything that you brought into the courtroom with you to the jury room.

(The jury exits courtroom to commence deliberations.)

(Out of the presence of the jury, except Juror No. 2:)

THE COURT: All right. Ms. Pickett, it is now my opportunity to thank you very much for your service.

The role of an alternate is a little bit thankless because you put in the work of sitting through the trial and then you don't deliberate with your fellow jurors. But we do need always to have at least one alternate, and we do appreciate your service very much.

Now, until this -- unless and until the jury reaches a verdict, you remain under the same instruction not to discuss the case with anyone or do any research or investigation.

EXHIBIT - D, 7

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## JURY SEATING CHART

Case No.  **LACR 14-00297(B) VAP**

Title: **U.S.A. v. Laron Darrell Carter**

| 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|---|---|---|
| Catherine Godkins-Potter | Cynthia Pickett | Michael Floro Urbano | Wanda Chambers | Glen Nakamura | Laura Michie Rulona | Rebecca Salazar | Emily Carlson |

| | Alt 1 | 12 | 11 | 10 | 9 |
|---|---|---|---|---|---|
| | Brue Myung Shin | Tracy Wells | Yvonne Fierro | Patrick Russell | Luwina Reyes |

EXHIBIT - D, 8

EXHIBIT - E

In Support of Ground Six

Exhibit - E, 1
Private Investigator Mr. John White's Memorandum of Detective Cary Bell notes of
10/28/2015 Interview
(1) Page

Exhibit - E, 2-4
Detective Stonich Incident Report Dated 03/21/2013, Bates # CARTER 04357, CARTER 04363
and CARTER 04364
(3) Pages

Exhibit - E, 5
CARTER- Trial Strategy, Defense Witness List
(1) Page

Exhibit - E, 6
CARTER- Trial, Defense Witness List
(1) Page

Exhibit - E, 7-8
Subpoena in a Criminal Case, Cary Bell, Served on 02/2/2016
(2) Pages

Exhibit - E, 9-10
Subpoena in a Criminal Case, Cary Bell, Served on March 28, 2016
(2) Pages

MEMORANDUM

Notes of interview:
10-28-15      9:00pm

**Detective Cary Bell - ID  #467717**
LA Sheriff Dept.,
301 S. Willowbrook Ave.,
Compton, CA 90220
(310) 605-6500

Detective Bill return my phone call.  I identified myself as a private investigator working for John Aquilina who represents Laron Carter in a federal criminal matter stemming in part from Bell's arrest of the juvenile from Minnesota on March 5, 2013.  I also told him he may be needed to testify and I was calling to inquire if he was going to be on vacation or otherwise unavailable in February, 2016.

Bell has no plans to go on vacation.

Bell recalled the incident.  At the time he was the detective but on March 5th he was working as a uniformed officer on patrol.  He had made a traffic stop although he doesn't recall the specific reason for the traffic stop.   In the car he found the juvenile, Carter and another black female who to him seem to be a prostitute.   He thought the juvenile appeared to be well under 18 and as a consequence he questioned her about her identity.   Her answers did not have the ring of truth about them and were somewhat inconsistent.  Using the LEXIS-NEXIS program on the computer in his car he is able to crosscheck several pieces of information the juvenile at given and learned initially to search that she had given the name of one of her relatives.   As he continued his cross-reference search he found a phone number for the juvenile's mother.   At the scene he called the juvenile's mother and learned that the juvenile was a runaway.   Part of the process to ensure that he was talking to the right person regarding this juvenile he told the mother about the tattoo on the right side of her forehead and the mother confirmed that was her daughter and she was a runaway.   I asked Bell if he recalled the design of the tattoo on the forehead he couldn't recall (tattoo of diamonds and dollar signs).   He took the juvenile in the custody and transported her to the Department of Children and Family Services Bureau where the juvenile was subsequently interviewed by social worker WATSON and later by LASO deputy Tiffany STONICH of the Special Victims Bureau in Whittier.   He recalls this incident because Watson and Stonich had subsequently called him for more details about the juvenile.

Bell said he did not write a report of the incident as the matter was handled by Department of Children and Family Services Bureau.   During this conversation he could not remember the juvenile's name.
------------------------------------------------------------------

**John's note: I do not believe Detective Bell was telling the truth when he said he did not write a report.   It is standard practice in law enforcement  whenever anyone is taken into custody a report is written.**

(BELL interview LASO   10-28-15)

−  page 1 of 1  −−

_____JOHN WHITE

& ASSOCIATES, Inc
76915 London Court, Palm Desert, CA 92211 (760) 365-1284 - Fax (760) 457-3332
Criminal, Civil and Personal Investigations - P.I. License #23988

EXHIBIT − E, 1

**A TRADITION OF SERVICE**

**COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT**

## INCIDENT REPORT

DATE 03-21-13     PAGE 1 OF 8

| ACTION: ☒ ACTIVE | NON-CRIMINAL | # OF ADULT ARRESTS | # OF SUBJECT DETENTIONS | URN # | 0 | 13 | 03685 | 2825 | 121 |
|---|---|---|---|---|---|---|---|---|---|
| ☐ INACTIVE ☐ PENDING | ☐ | | | | RETENTION | YEAR | SEQUENTIAL | REPORTING DISTRICT | STAT CODE |

**CLASSIFICATION 1 / LEVEL / STAT CODE**
Unlawful Sexual Intercourse 261.5(d)PC / F / 121

SEX OFFENSE - VICTIM INFO? YES ☒ NO ☐

**CLASSIFICATION 2 / LEVEL / STAT CODE**
Pimping, Minor over 16 years of Age 266h(b)PC / F / 129

DOMESTIC VIOLENCE
☐ NON-PERSONAL (GUN, KNIFE, ETC)

**CLASSIFICATION 3 / LEVEL / STAT CODE**
Pandering by Procuring a Minor under age 16, 266i(b)(2)PC / F / 129

☐ PERSONAL (HANDS, FEET, FIST, ETC)

**DATE, TIME, DAY OF OCCURRENCE**
B/T 01-03-13 to 03-05-13

PRINTS REQUESTED ☐   BY:
COMPLETED ☐   TIME

INJURY
☐ Major ☐ Minor ☐ None

**LOC. OF OCCURRENCE**
Long Beach Blvd/Tucker Avenue, Compton

BUS. NAME

☐ NON-CRIMINAL

**CODE: V-VICTIM     W-WITNESS     I-INFORMANT     R-REPORTING PARTY     P-PARTY**

| CODE | # of | LNAME | FNAME | MNAME | SEX | RACE | ETHNIC ORIGIN | DOB | Age |
|---|---|---|---|---|---|---|---|---|---|
| V | 1 of 1 | C▓▓▓ | J▓▓▓ | ▓▓▓▓▓ | F | B | | ▓▓▓▓ | 16 |

RES. ADDR. ▓▓▓▓▓▓▓▓     CITY Minneapolis     ZIP 55411

VICTIM OF OFFENSE(S) (CLASSIFICATION) #: ·1 ,2 ,3     REG. PHONE (Area Code) ▓▓▓▓     Day Phone ☞

BUS. ADDR. Not enrolled in school     CITY     ZIP

ENGLISH SPEAKING ☒ YES ☐ NO     BUS. PHONE (Area Code)     Day Phone ☞

| CODE | # of | LNAME | FNAME | MNAME | SEX | RACE | ETHNIC ORIGIN | DOB | Age |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

RES. ADDR.     CITY     ZIP

VICTIM OF OFFENSE(S) (CLASSIFICATION) #:     REG. PHONE (Area Code)     Day Phone ☞

BUS. ADDR.     CITY     ZIP

ENGLISH SPEAKING ☐ YES ☐ NO     BUS. PHONE (Area Code)     Day Phone ☞

| CODE | # of | LNAME | FNAME | MNAME | SEX | RACE | ETHNIC ORIGIN | DOB | Age |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

RES. ADDR.     CITY     ZIP

VICTIM OF OFFENSE(S) (CLASSIFICATION) #:     REG. PHONE (Area Code)     Day Phone ☞

BUS. ADDR.     CITY     ZIP

ENGLISH SPEAKING ☐ YES ☐ NO     BUS. PHONE (Area Code)     Day Phone ☞

**CODE:     S-SUSPECT     SJ-SUBJECT     M-PATIENT     S/V-SUSPECT /VICTIM     SJ /V -SUBJECT /VICTIM**

| CODE | # of | LNAME | FNAME | MNAME | DRIVER'S LICENSE (STATE & No.) |
|---|---|---|---|---|---|
| S | 1 of 4 | unknown | | | |

RES. ADDR.     CITY Gardenia     ZIP     RES. PHONE (Area Code) 702-504-2794

BUS. ADDR. Self-Employed     CITY     ZIP     BUS. PHONE (Area Code)

| SEX | RACE | ETHNIC ORIGIN | HAIR | EYES | HGT. | WGT. | DOB | Age |
|---|---|---|---|---|---|---|---|---|
| M | B | | Blk | Bro | 5'9 to 6'1 | 160-220 | | 30-38 |

CHARGE     WHERE DETAINED OR CITE # NIC

AKA     MONIKER "Birdd" "Pimpin Birdd"     BOOKING #

| CODE | # of | LNAME | FNAME | MNAME | DRIVER'S LICENSE (STATE & No.) |
|---|---|---|---|---|---|
| S | 2 of 4 | Drake | Michael | Anthony | |

RES. ADDR.     CITY Carson     ZIP     REG. PHONE (Area Code)

BUS. ADDR.     CITY     ZIP     BUS. PHONE (Area Code)

| SEX | RACE | ETHNIC ORIGIN | HAIR | EYES | HGT. | WGT. | DOB | Age |
|---|---|---|---|---|---|---|---|---|
| M | B | | Blk | Bro | 5'8-6'0 | 160-200 | | 30-33 |

CHARGE     WHERE DETAINED OR CITE # NIC

AKA     MONIKER "Dreeze Mack"     BOOKING #

| VEHICLE # ___ | SUSPECT ☐ STATUS | ☐ IMPOUNDED | LICENSE (STATE & No.) | YEAR | MAKE | MODEL | BODY TYPE | COLOR |
|---|---|---|---|---|---|---|---|---|
| # ___ | VICTIM ☐ STORED | ☐ OUTSTANDING | | | | | | |

REGISTERED OWNER     IDENTIFYING FEATURES     CHP 180 SUBMITTED: ☐ YES ☐ NO     GARAGE NAME & PH.

| BY DEP. Stonich, T | EMPLOYEE # 509610 | VACATION DATES 0 | DEP. | EMPLOYER # | VACATION DATES |
|---|---|---|---|---|---|
| STATION Compton | UNIT / CAR # 283E | SHIFT Days | APPROVED SGT T. BELL #456062 3/21/13 · 2026 | EMPLOYEE # | DATE   TIME |

VICTIM DESIROUS OF PROSECUTION ☒ YES ☐ NO     ASSIGNMENT D.B

HQ NOTIFICATION REQ: ☐ YES ☒ NO     DEP.     DATE / TIME     SPECIAL REQUEST DISTRIBUTION D.E.T. BELL KIGH3

SUSP / SUBJ RELEASE APPROVED BY     TIME     PCD SUBMITTED: ☐ YES ☒ NO     TT B/O BY     DATE   TIME   SECTY.

76C300F · SH-R-49 (Rev. 10/89)

SGT. SNYDER
MINNEAPOLIS PD     ☎   (651) 283-4693

CARTER_04357

EXHIBIT - E, 2

013-03685-2825-121

shop in an attempt to get Bash's attention. While standing outside Bash immediately takes her in is stable. He tells her that she can live with him as long as she makes him money. Bash informs V/▓▓▓ that they will not have sex until she brings home money for him. Bash brought her clothes, food and took her to his house at ▓▓▓▓▓▓, Compton. At his house he has the following girls living with him;

Fancee Faces (She is known as the "bottom bitch" which is known as the main girl) described as Female Cuben, skinny, "bash millions" tattoo on her left hip and "Bash" written on her neck

Raven- Female, Black, 5'5, skinny, light skin with "bash millions" tattoo on her stomach

Tops- Female Black, Dark skin, skinny and 5'6

Pockets- Female, black, 5'3 (Later known as A▓ B.▓, 17 yrs old)

Mercedes- Female, Black, skinny, tattoo on back (NFD) with a large buttock

While working for S/Bash she went by the name "China Baby." S/Bash picked the name "China Baby" because she had a Chinese baby look.

V/▓▓▓ worked for S/Bash from February 25th to March 3rd, 2013. During this time she witnessed all the above girls prostituting themselves for S/Bash. She watched "Pockets" get badly beat up by S/Bash because she slowed down the money she was making. V/▓▓▓ believes S/Bash kicked her out of the house because she didn't make him any money. V/▓▓▓ didn't want to prostitute herself and tried to get away with not working. V/▓▓▓ found herself back alone on the street.

While wandering the streets another pimp named "Boogie" which was later positively identified as Jonathan Ramon Woods MB/▓▓▓▓ picked her up. He told her he would take care of her as long as she worked for him. S/Boogie and V/▓▓▓ had sexual intercourse multiple times. From March 3rd through the 5th they drove around a lot and stayed in multiple motels. S/Boogie had two other girls working for him which were known as "Music" (described as female black, thin, large buttock, low hair line, light skin with tattoos all over her arms) and "Candice" (described as dark caramel, skinny with long hair).

On March 5th, 2013 V/▓▓▓ was stopped in S/Boogie's vehicle (6YKC732, Orange Cadillac GTS) by Detective Bell under T-264 3/5/13. V/▓▓▓ was taken into protective custody at this time under 601 WIC.

V/▓▓▓ is upset over everything that has occurred in the past few months and she wants justice. She wants to press charges against all the pimps that forced her into sexual acts and physically abused her. V/▓▓▓ provided me with her Facebook account name and password.

I informed V/▓▓▓ that this is a serious matter that I will look into and I would be visiting her again soon.

CARTER_04363

EXHIBIT - E, 3

013-03685-2825-121

On March 19th-20th, I used Departmental resources to identify some of the above suspects. I logged onto V/████ Facebook account and found S/Birdd under "Pi Birdd." I searched his Facebook page and discovered that he is a self-titled pimp who survives on pimping out women for an income. He had over thirty pictures of women with his "bird" symbol tattooed on their bodies (EV-2). There were multiple postings by S/Birdd stating he's a pimp and pictures with him conducting pimp signs with his hands, (EV-3).

I was unable to retrieve S/Birdd's and S/Dreeze's true identity. I already knew the identity of S/Boogie due to Detective Bell citing him for traffic violations on the night V/████ was found. I retrieved S/Bash true identity. I made a photographic line up of S/Bash.

I returned to Sylmar Juvenile hall on 3-19-13. I admonished V/████ of the photographic line up admonishment. She stated she understood and signed the form, (Ev-4). I showed V/████ the photographic line up and she immediately identified S/Bash as #3 in the lineup, (EV-5). V/████ circled picture #3 and wrote "I recognize 3 as Bash Millions."

Due to not having S/Birdd's true identity revealed I showed V/████ a print out from his Facebook page. She immediately stated that was S/Birdd.

I provided V/████ with a report memo.

Using departmental resources I will attempt to identify S/Birdd and S/Dreeze.

CARTER_04364

## CARTER - TRIAL STRATEGY

**DEFENSE WITNESSES**

AHIR, MIKE             TRAVELODGE

BEAVERS, ANDREA        702-761-1627

                       424-221-4368

BELL, CARY             LOS ANGELES SHERIFF

                       818-914-8374 (C)

DeLaROSA, MARK         RIVERSIDE POLICE DEPARTMENT

GORSKI, GARY           LAS VEGAS METRO POLICE DEPARTMENT

                       702-828-3111

GRAHAM, MARGARET       HENNEPIN COUNTY, MINNESOTA

                       DOB:  04-11-83
                       612-432-7640

                       4-6-16:DEBORAH DAYON
                               510 PARK AVENUE SOUTH
                               MINNEAPOLIS 55415
                               612-348-2924

JACKSON, EVAN          GARDENA POLICE DEPARTMENT

1

EXHIBIT - E, 5

## CARTER - TRIAL

### DEFENSE WITNESSES

| | |
|---|---|
| AHIR, MIKE | TRAVELODGE |
| BELL, CARY | LOS ANGELES SHERIFF |
| DeLaROSA, MARK | RIVERSIDE POLICE DEPARTMENT |
| GORSKI, GARY | LAS VEGAS METRO POLICE DEPARTMENT |
| GRAHAM, MARGARET | HENNEPIN COUNTY, MINNESOTA |
| JACKSON, EVAN | GARDENA POLICE DEPARTMENT |
| LICONA, CORNELIA | LOS ANGELES COUNTY |
| OCHOA, JORGE | GREYHOUND |
| SNYDER, GRANT | MINNEAPOLIS POLICE DEPARTMENT |
| STONICH, TIFANI | LOS ANGELES SHERIFF |

### DEFENSE EXHIBITS

BACKPAGE.COM

CALIFORNIA PRISON RECORDS

CREDIT CARD RECORDS:

    BANCORP

    UNIRUSH

NEVADA JAIL

NEVADA PAROLE

NEVADA PRISON

TELEPHONE RECORDS

TTI TECHNOLOGIES

1

EXHIBIT - E, 6

Attorney's Name, Address & Phone:
JOHN N. AQUILINA          Ca. Bar No. 096880
5055 Canyon Crest Drive, #221
Riverside, California 92507
951-682-1700
951-276-1427 (Fax)
Aquilina@johnaquilina.com

Attorney for Defendant, Laron Carter

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| United States of America | | CASE NUMBER |
| --- | --- | --- |
| PLAINTIFF | | 2:14-cr-00297-VAP |
| v. | | |
| LARON DARRELL CARTER | | SUBPOENA IN A CRIMINAL CASE |
| DEFENDANT(S) | | |

TO: LOS ANGELES SHERIFF CARY BELL (ID #467717)

☑ **YOU ARE HEREBY COMMANDED** to appear in the United States District Court at the place, date and time specified below to testify in the above case.

Place: 3470 Twelfth Street, Riverside, California 92501 _____, Courtroom: II _____

Date: February 26, 2016 _____ , Time: 8:30 a.m. _____ .

☐ **YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):



*Kiry K. Gray*
_____
Kiry K. Gray, Clerk of Court

February 1, 2016
_____
Date

| CR-21 (10/15) | SUBPOENA IN A CRIMINAL CASE | Page 1 of 2 |
| --- | --- | --- |

EXHIBIT - E, 7

## PROOF OF SERVICE

| Received by Server | DATE 2-1-16 | PLACE 76915 London Court, Palm Desert, CA 92211 |
|---|---|---|
| Served | DATE 2-2-16 | PLACE LOS ANGELES COUNTY SHERIFF 301 S. Willowbrook Avenue, Compton, CA 90220 |

| SERVED ON (PRINT NAME) Miss Pointer - Clerk (she will forward to Sgt. Miller who handles subpoenas (310) 605-6573 | FEES AND MILEAGE TENDERED TO WITNESS ☐ Yes ☐ No Amount $ _____ |
|---|---|
| SERVED BY (PRINT NAME) John C. White | TITLE P. I. |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____February 2, 2016_____
       Date

Signature of Server

Address of Server:  76915 London Court, Palm Desert, CA 92211

ADDITIONAL INFORMATION

CR-21 (10/15)                          SUBPOENA IN A CRIMINAL CASE                          Page 2 of 2

EXHIBIT - E, 8

Attorney's Name, Address & Phone:
JOHN N. AQUILINA
Cal. Bar No. 096880
5055 Canyon Crest Drive, #221
Riverside, California 92507
951-682-1700
951-276-1427 (Fax)
Aquilina@johnaquilina.com
Attorney for Defendant, LARON DARRELL CARTER

**ORIGINAL**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| United States of America PLAINTIFF | | CASE NUMBER |
| v. | | 2:14-cr-00297-VAP |
| LARON DARRELL CARTER | | |
| | | **SUBPOENA IN A CRIMINAL CASE** |
| DEFENDANT(S) | | |

TO: LOS ANGELES COUNTY SHERIFF, CARY BELL (ID #467717)

☑ **YOU ARE HEREBY COMMANDED** to appear in the United States District Court at the place, date and time specified below to testify in the above case.

Place: Roybal Federal Building, 255 East Temple Street, Los Angeles, California 90012 , Courtroom: 780

Date: April 26, 2016 , Time: 8:30 a.m. .

☐ **YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):

*Kiry K. Gray*  March 7, 2016

Kiry K. Gray, Clerk of Court                 Date

CR-21 (10/15)                 SUBPOENA IN A CRIMINAL CASE                 Page 1 of 2

EXHIBIT - E, 9

# PROOF OF SERVICE

| Received by Server | DATE<br>March 23, 2016 | PLACE<br>76915 London Court, Palm Desert, CA 92211 |
|---|---|---|
| Served | DATE<br>March 28, 2016 | PLACE<br>Los Angeles Sheriff's Department<br>301 South Willowbrook Ave., Compton, CA |

| SERVED ON (PRINT NAME)<br><br>Sgt. Connor (818) 914-8374 | FEES AND MILEAGE TENDERED TO WITNESS<br><br>☐ Yes ☐ No Amount $ _____ |
|---|---|
| SERVED BY (PRINT NAME)<br>John C. White | TITLE<br>P.I. |

# DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on  March 28, 2016
           *Date*                       *Signature of Server*

Address of Server: 76915 London Court, Palm Desert, CA 92211

ADDITIONAL INFORMATION

EXHIBIT - E, 10

EXHIBIT - F

In Support of Ground Seven

Exhibit - F, 1
April 22, 2016 Trial Transcript (Day Four) Page 125
(1) Page

Exhibit - F, 2
April 26, 2016 Trial Transcript (Day Five) Page 188
(1) Page

Exhibit - F, 3
April 26, 2016 Trial Transcript (Day Five) Page 29
(1) Page

Exhibit - F, 4
April 26, 2016 Trial Transcript (Day Five) Page 208
(1) Page

Exhibit - F, 5
Criminal Complaint Doc 1, Page 26
(1) Page

Exhibit - F, 6
State of Nevada Board of Parole Commissioners Parole Agreement
(1) Page

I -- like I told you, you keep asking me exact dates and I'm not sure of exact dates, so it's not -- you know, I don't know.

MR. AQUILINA:  May I be heard on this?

THE COURT:  No.

BY MR. AQUILINA:

Q    Were you ever at a police station around January 1st, 2013?

A    I don't know.  Are you asking me was I -- did I get arrested or something?

Q    No.  I'm not asking if you were arrested.  I'm asking -- let me ask a double question.  Were you at a police station and you called Mr. Carter to pick you up and he did so?

A    Yeah.  I -- I think.  Yeah.

Q    Was that the Gardena Police Department?

A    I don't know if it was Gardena.

Q    Okay.

A    But I remember being in jail and him coming and getting me, yes.

Q    And at that time you told the police that you were working for Mr. Carter, did you not?

A    Yes.

Q    Okay.  And, in fact, you told about this incident or of this incident to Special Agent Nunez, correct?

A    Yes.

**UNITED STATES DISTRICT COURT**

EXHIBIT - F, 1

you cannot really trust her testimony and realize that there is a fair amount of relevant factors that she is not sharing with us.  First of all, while Carter is in custody, this January 4th, 2013, we know that she is calling Bunny, or Latisha White, through someone out here who she apparently knew.  These phone calls start on January 11th and they continue through January 16th, per Agent Nunez.  And the defendant's incarcerated after the 14th.

We also have her statement that she didn't have Bunny's number.  Well, now we know she had it as early as January 11th.

The Government is going to argue that those calls -- or that that's reasonable, that that's possible that Carter was working with Latisha White and Latisha White runs the show after he goes into custody.  But if their position is it's reasonable that she was running the show after he goes into custody, it's likewise reasonable that she was running the show before he went into custody.

She says she knows no one in California, but the phone records here, she was calling two people in California on the way out here.

She tells Officer Stonich that Carter picked her up from the Gardena Police Department on January 19th.  We know he's in custody on January 19th.  While he's in custody, she's calling Latisha White.  The password has changed -- Carter's

EXHIBIT - F, 2

*exit the bathroom.*

And my question was whether Ms. Collaso responded to Birdd telling her she would be prostituting herself.

A.    The middle of the paragraph, *Suspect Birdd then informs her she will be prostituting herself for him.  He will buy her clothes, food --*

Q.    Excuse me.  I don't want you to read it.

So Ms. Collaso told you Birdd informed her she would be prostituting herself for him, correct?

A.    Correct.

Q.    And the sentence before that, did Ms. Collaso respond to Birdd's information?

A.    I'm not understanding what you mean by "respond."  What I wrote in this report?

THE COURT:  No.  Don't read the report.

BY MR. AQUILINA:

Q.    Let me ask it a different way, Detective.

Did Ms. Collaso inform you that she had said to Birdd, *I don't want any part of what you're doing?*

A.    Yes, but that was earlier.

Q.    Okay.  And then it was afterwards that Mr. -- excuse me.  Birdd told her she would be prostituting herself?

A.    Correct.

Q.    Did Ms. Collaso tell you how long she was with Birdd?

A.    From January 6th to the 21st of 2013.

Also, it's right around the time where he's getting out. We don't know when in January of 2005. That's when Jaleeza Clark says that she must have been working for Carter. So in order for that to happen, it would have been the last 20 possible days. And he would have had to get out, make the connection, get her working immediately, and that's just ridiculously farfetched.

Fall 2005, Deserie Sherlock says she works for Mr. Carter.

We go on to two weeks prior to May 23rd, 2010, that's when Monique Cline says, *Oh, two weeks before? Yes, I'm working for Carter out in Los Angeles. I know him. We've known each other for weeks. He takes me to the swap meet.*

But then every other time she's talking, in 2012 when she's giving testimony under oath, from 2013 when she's speaking to Nunez, in 2016 when she's testifying on that stand, she says, *Oh, no, no, no. The first time I met him was May 23rd. I never met him before.*

January 6th, 2013, Collaso arrives by bus to Los Angeles. She tells you, *Oh, we went straight to the Travelodge.* But we know he didn't check into the Travelodge until January 8th.

We know January 14th, 2013, Mr. Carter goes back into custody. And January 19th, Collaso says Carter picked her up at the Gardena police station. And that, which is completely

she was arrested in Gardena while working for CARTER. She provided a family member's information, was taken to jail, and did not identify CARTER as her pimp. When she was released, she called CARTER, whose number she knew because he had previously instructed her to memorize it. CARTER picked her up after she walked some distance from the police station.[1]

29.   On December 18, 2013, I conducted a frequency analysis report for the telephone number (702) XXX-2794. This number was subscribed to "Garr Street," XXXX Silver Glen Avenue, Las Vegas, Nevada (an address associated with CARTER as discussed below) between October 25, 2012, and February 25, 2013. According to the frequency analysis, this telephone number had 103 calls/contacts between January 3, 2013, and January 13, 2013, with telephone number (612) XXX-4063 (believed to be used by Jane Doe 1 and included on the Backpage.com advertisements discussed above). This telephone number also had 24 calls / contacts between January 1, 2013, and January 10, 2013, with telephone number (612) XXX-6061 (believed to be used by McCabe and provided by McCabe to CARTER via Facebook on January 1,

---

[1] I have not yet identified an arrest report that corresponds with this arrest. As discussed below, Jane Doe 1's criminal history indicates that she was arrested by the Gardena Police Department on or about January 19, 2013. However, as also discussed below, according to information I have received from the State of Nevada, Clark County, District Court, and State of Nevada Parole Officer A. Watford, CARTER would have been in custody in Nevada on this date.

25

State of Nevada
Board of Parole Commissioners

NDOC No. 1097868
File No. L14-0530M
CC No. C279581

**PAROLE AGREEMENT**

HDSP   Nevada

On the 14 day of January, 2013, LARON CARTER was sentenced by KATHLEEN DELANEY, District Judge of the EIGHTH Judicial District Court in and for the County of Clark, State of Nevada, to imprisonment in the Nevada Department of Corrections, for the crime of CT 1: PANDERING for a term of 12-36 MOS NDOC/$25 AA/$150 DNA.

The Board of Parole Commissioners, by virtue of the authority vested in it by the laws of the State of Nevada, hereby authorizes the Director of the Department of Corrections to allow said LARON CARTER on the 04 day of December, 2013, or as soon thereafter as a satisfactory program can be arranged and approved by the Division of Parole and Probation, to go upon parole outside the prison buildings and enclosure, subject to the following conditions:

1. **Reporting:** You are to report in person to the Division of Parole and Probation as instructed by the Division or its agent. You are required to submit a written report each month on forms supplied by the Division. This report shall be true and correct in all respects.

2. **Residence:** You shall not change your place of residence without first obtaining permission from the Division of Parole and Probation, in each instance.

3. **Controlled Substances:** You shall not use, purchase or possess any illegal drugs, or any prescription drugs, unless first prescribed by a licensed medical professional. You shall immediately notify the Division of Parole and Probation of any prescription received. You shall submit to drug testing as required by the Division or its agent.

4. **Weapons:** You shall not possess, have access to, or have under your control, any type of weapon unless the item is used in conjunction with the duties of legitimate employment and has been approved in writing by the Division of Parole and Probation or its agent.

5. **Search:** You shall submit your person, property, place of residence, vehicle or areas under your control to search at any time, with or without a search warrant or warrant of arrest, for evidence of a crime or violation of parole by the Division of Parole and Probation or its agent.

6. **Associates:** You must have prior approval by the Division of Parole and Probation to associate with any person convicted of a felony, or any person on probation or parole supervision. You shall not have any contact with persons confined in a correctional institution unless specific written permission has been granted by the Division and the correctional institution.

7. **Directives:** You shall follow the directives of the Division of Parole and Probation.

8. **Conduct:** Your conduct shall justify the opportunity granted to you by this community supervision.

9. **Laws:** You shall comply with all institutional rules, municipal, county, state, and federal laws and ordinances.

10. **Out-of-State Travel:** You shall not leave the state without first obtaining written permission from the Division of Parole and Probation.

11. **Employment/Program:** You shall seek and maintain legal employment, or maintain a program approved by the Division of Parole and Probation and not change such employment or program without first obtaining permission. All terminations of employment or program shall be immediately reported to the Division.

12. **Financial Obligation:** You shall pay court ordered restitution on a monthly basis in the amount equal to the total amount of restitution owed as determined by the Division of Parole and Probation at the projected date of release on parole, divided by the number of months to be served on parole, but no less than a monthly amount of $50.00. The total amount of restitution owed is $. The monthly payment amount for restitution is $. Pay all applicable fines and fees on a schedule determined by the Division of Parole and Probation.

13. **Intoxicants:** Except when prohibited by order of the Board, you shall not consume alcohol beverages to excess. Upon the direction of the Division of Parole and Probation, you shall submit to a medically recognized test for blood/breath content. Test result of .08 blood alcohol or higher shall be sufficient proof of excess.

14. **Special Conditions: SEE ATTACHED**

EXHIBIT - G

In Support of Ground Eight

Exhibit - G, 1
State of Nevada Board of Parole Commissioners Parole Agreement
(1) Page

Exhibit - G, 2-6
April 26, 2016 Trial Transcripts (Day Five) Pages 15-19
(5) Pages

State of Nevada
Board of Parole Commissioners

NDOC No. 1097868
File No. L14-0530M
CC No. C279581

**PAROLE AGREEMENT**

HDSP    Nevada

On the 14 day of January, 2013, LARON CARTER was sentenced by KATHLEEN DELANEY, District Judge of the EIGHTH Judicial District Court in and for the County of Clark, State of Nevada, to imprisonment in the Nevada Department of Corrections, for the crime of CT I: PANDERING for a term of 12-36 MOS NDOC/$25 AA/$150 DNA.

The Board of Parole Commissioners, by virtue of the authority vested in it by the laws of the State of Nevada, hereby authorizes the Director of the Department of Corrections to allow said LARON CARTER on the 04 day of December, 2013, or as soon thereafter as a satisfactory program can be arranged and approved by the Division of Parole and Probation, to go upon parole outside the prison buildings and enclosure, subject to the following conditions:

1. **Reporting:** You are to report in person to the Division of Parole and Probation as instructed by the Division or its agent. You are required to submit a written report each month on forms supplied by the Division. This report shall be true and correct in all respects.

2. **Residence:** You shall not change your place of residence without first obtaining permission from the Division of Parole and Probation, in each instance.

3. **Controlled Substances:** You shall not use, purchase or possess any illegal drugs, or any prescription drugs, unless first prescribed by a licensed medical professional. You shall immediately notify the Division of Parole and Probation of any prescription received. You shall submit to drug testing as required by the Division or its agent.

4. **Weapons:** You shall not possess, have access to, or have under your control, any type of weapon unless the item is used in conjunction with the duties of legitimate employment and has been approved in writing by the Division of Parole and Probation or its agent.

5. **Search:** You shall submit your person, property, place of residence, vehicle or areas under your control to search at any time, with or without a search warrant or warrant of arrest, for evidence of a crime or violation of parole by the Division of Parole and Probation or its agent.

6. **Associates:** You must have prior approval by the Division of Parole and Probation to associate with any person convicted of a felony, or any person on probation or parole supervision. You shall not have any contact with persons confined in a correctional institution unless specific written permission has been granted by the Division and the correctional institution.

7. **Directives:** You shall follow the directives of the Division of Parole and Probation.

8. **Conduct:** Your conduct shall justify the opportunity granted to you by this community supervision.

9. **Laws:** You shall comply with all institutional rules, municipal, county, state, and federal laws and ordinances.

10. **Out-of-State Travel:** You shall not leave the state without first obtaining written permission from the Division of Parole and Probation.

11. **Employment/Program:** You shall seek and maintain legal employment, or maintain a program approved by the Division of Parole and Probation and not change such employment or program without first obtaining permission. All terminations of employment or program shall be immediately reported to the Division.

12. **Financial Obligation:** You shall pay court ordered restitution on a monthly basis in the amount equal to the total amount of restitution owed as determined by the Division of Parole and Probation at the projected date of release on parole, divided by the number of months to be served on parole, but no less than a monthly amount of $50.00. The total amount of restitution owed is $. The monthly payment amount for restitution is $. Pay all applicable fines and fees on a schedule determined by the Division of Parole and Probation.

13. **Intoxicants:** Except when prohibited by order of the Board, you shall not consume alcohol beverages to excess. Upon the direction of the Division of Parole and Probation, you shall submit to a medically recognized test for blood/breath content. Test result of .08 blood alcohol or higher shall be sufficient proof of excess.

14. **Special Conditions: SEE ATTACHED**

EXHIBIT - G, 1

15

THE COURT:  Thank you.

MR. AQUILINA:  Good morning, Your Honor.  John Aquilina and Ian Wallach on behalf of Mr. Carter, who is present in court.

THE COURT:  Thank you.

Good morning, ladies and gentlemen.  Let the record reflect the presence of all members of the jury.

All right.  Mr. Aquilina, you may call your first witness.

MR. AQUILINA:  Yes, Your Honor.  If I may get him, it would be Evan Jackson.

THE CLERK:  Please raise your right hand.

**DEFENSE WITNESS, EVAN JACKSON, WAS SWORN**

THE CLERK:  Thank you.  You may be seated.

Please state your full name and spell it for the record.

THE WITNESS:  First name is Evan, E-V-A-N.  Last name Jackson, J-A-C-K-S-O-N.

THE COURT:  Thank you.

You may inquire.

MR. AQUILINA:  May I have one moment with counsel?

THE COURT:  Yes.

(Counsel confer off the record.)

**DIRECT EXAMINATION**

BY MR. AQUILINA:

16

Q.   Good morning, Mr. Jackson.

A.   Morning, sir.

Q.   Can you tell us by whom you're employed?

A.   I am employed by the City of Gardena.

Q.   In what capacity, sir?

09:13

A.   I am a police officer.

Q.   Were you so employed in January of 2013?

A.   Yes.

Q.   Specifically on or about January 19th of 2013, can you tell us what your responsibilities were as a Gardena Police Department officer?

09:14

A.   At that time, I was working uniformed patrol.

Q.   What did that entail?

A.   That entails all facets of street-level police work, just driving a patrol car, responding to radio calls, proactively looking for crime as well.

09:14

Q.   On January 20th of 2013, at about 11:40 p.m., were you on duty?

A.   Yes.

Q.   And were you patrolling the City of Gardena?

09:14

A.   Yes.

Q.   At that time, were you conducting a security check of a parking lot area?

A.   Yes.

Q.   Did you come in contact with a female?

09:14

A.    Yes.

Q.    Did the female provide her name?

A.    Yes.

Q.    What was the name provided to you?

A.    Anescia Collaso.                                    09:14

Q.    Can you spell the first name, please?

A.    Could I look at my report to refresh my recollection as to the spelling?

Q.    Would it refresh your recollection?

A.    It would.                                          09:15

MR. AQUILINA:  With the Court's permission, Your Honor?

THE COURT:  Go ahead.

THE WITNESS:  My recollection has been refreshed.

BY MR. AQUILINA:                                         09:15

Q.    And how was the first name spelled?

A.    A-N-E-S-C-I-A.

Q.    And did Ms. Collaso provide you with a date of birth?

A.    Yes.

Q.    Can you tell us what month and year was provided to you?    09:15

A.    The year was 1993.  And again, I would have to look at my report to see the month.

Q.    And would it refresh your recollection?

A.    It would.

MR. AQUILINA:  With the Court's permission.    09:15

EXHIBIT - G, 4

18

THE COURT:  Go ahead.

THE WITNESS:  It is refreshed.

BY MR. AQUILINA:

Q.   And what was the month of birth she gave you?

A.   May.

Q.   Did Ms. Collaso give you a residence where she lived?

A.   Not a residence, like, a permanent residence, no.

Q.   Did she tell you whether or not she was from California?

A.   She told me she was not from California.

Q.   Did she say where she -- what state she was from?

A.   She said she was from Minnesota.

Q.   Did she tell you what city?

A.   Yes.

Q.   And what city did she tell you she was from?

A.   Minneapolis.

Q.   Did Ms. Collaso tell you what she was doing in this parking lot area that you were checking?

A.   Yes.

Q.   And what did she tell you she was doing there?

MR. MITCHELL:  Objection, hearsay.

THE COURT:  Are you offering this to show subsequent action, or what?

MR. AQUILINA:  No, Your Honor.  I believe it was inconsistent with testimony.

THE COURT:  So you're offering it as a prior

EXHIBIT - G, 5

inconsistent statement?

MR. AQUILINA: Yes, Your Honor, for purposes of impeachment.

THE COURT: All right.

Ladies and gentlemen, you're to consider the testimony you're about to hear as to what Ms. Collaso -- what the officer is testifying that Ms. Collaso said to him only for the purpose of considering whether it's inconsistent with testimony that you heard from Ms. Collaso herself.

All right. Do you remember the question?

THE WITNESS: Yes, Your Honor.

THE COURT: You may answer.

THE WITNESS: She said she was shopping.

BY MR. AQUILINA:

Q. Now, just a yes or no, Officer Jackson. Did you then transport Ms. Collaso somewhere?

A. Yes.

MR. AQUILINA: Thank you. I have nothing further at this time.

THE COURT: Cross-examination?

MR. MITCHELL: No questions, Your Honor.

THE COURT: Thank you. You're excused.

Your next witness?

MR. AQUILINA: Yes, Your Honor. At this time, we would call Detective Tifani Stonich, if I may get her?

EXHIBIT - H

In Support of Ground Nine

Exhibit - H, 1-2
Second Superseding Indictment "Doc 195" Counts Five and Seven
(2) Pages     .

Exhibit - H, 3
April 27, 2016 Trial Transcript (Day Six) Jury Instructions
(1) Page

Exhibit - H, 4-5
April 27, 2016 Jury Verdict Forms "Doc 247"
(2) Pages

COUNT FIVE

[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(2)]

Starting in 2004, and continuing to on or about October 18, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained by any means a person, namely, A.D. ("A.D."), and benefitted, financially and by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means A.D., knowing that A.D. had not attained the age of 18 years and would be caused to engage in a commercial sex act.

6

EXHIBIT - H, 1

COUNT SEVEN

[18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(2)]

Beginning on an unknown date, and continuing to on or about October 18, 2005, in San Bernardino and Los Angeles Counties, within the Central District of California, and elsewhere, defendant LARON DARRELL CARTER, also known as ("aka") "Birdd," aka "Pi Birdd," aka "Pi Pimpin Birdd," aka "Garr Birdd," aka "Gardena Pimpin Birdd," knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained by any means a person, namely, D.S. ("D.S."), and benefitted, financially and by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means D.S., knowing that D.S. had not attained the age of 18 years and would be caused to engage in a commercial sex act.

8

EXHIBIT - H, 2

8

Section 2423(a), we, the jury, find the defendant guilty.

**5.   Count 5 of the Indictment.**   As to the offense of sex trafficking of a minor or by force, fraud, or coercion as to victim Andrea Beavers-Davis, in violation of Title 18, United States Code Section 1591(a)(1), (a)(2), (b)(2), we, the jury, find the defendant guilty.

**6.   Count 6 of the Indictment.**   As to the offense of transporting a child to engage in prostitution as to victim Andrea Beavers-Davis, in violation of Title 18, United States Code Section 2423(a), we, the jury, find the defendant guilty.

**7.   Count 7 of the Indictment.**   As to the offense of sex trafficking of a minor or by force, fraud, or coercion as to victim Deserie Sherlock, in violation of Title 18, United States Code Section 1591(a)(1), (a)(2), (b)(2), we, the jury, find the defendant guilty.

**8.   Count 8 of the Indictment.**   As to the offense of transporting a child to engage in prostitution as to victim Deserie Sherlock, in violation of Title 18, United States Code Section 2423(a), we, the jury, find the defendant guilty.

**9.   Count 9 of the Indictment.**   As to the offense of sex trafficking of a minor or by force, fraud, or coercion as to victim Jaleeza C. Clark, in violation of Title 18, United States Code Section 1591(a)(1), (a)(2), (b)(1), (b)(2), we, the jury, find the defendant guilty.

If you find the defendant guilty, did you unanimously

EXHIBIT - H, 3

5.  **Count Five of the Indictment**

As to the offense of sex trafficking of a minor, or by force, fraud, or coercion, as to Victim Andrea Beavers-Davis, in violation of Title 18, United States Code, Section 1591(a)(1), (a)(2), (b)(2),

We, the Jury, find the defendant:

Guilty____✕____              Not Guilty_____

6

EXHIBIT - H, 4

7.   **Count Seven of the Indictment**

As to the offense of sex trafficking of a minor, or by force, fraud, or coercion, as to Victim Deserie Sherlock, in violation of Title 18, United States Code, Section 1591(a)(1), (a)(2), (b)(2),

We, the Jury, find the defendant:

Guilty___X___                    Not Guilty_____

8

EXHIBIT - I

In Support of Ground Eleven

Exhibit - I, 1-2
April 20, 2016 Trial Transcripts (Day Two) Pages 101 and 102
(2) Pages

Q    Okay.  You met Mr. Carter, or the defendant, at a gas station?

A    Yes.

Q    And that was on May 23rd, 2010?

A    Yes.

Q    In San Diego?

A    No.

Q    In Escondido?

A    Yes.

Q    Okay.  Did you ever tell -- so you've never -- thank you.

You got in his car?

A    Yes.

Q    Okay.  And that was it, you were on your way to Las Vegas?

A    No.  We went down the street first.

Q    Okay.  So first you went down the street, and then you found yourself in his car driving to Las Vegas?

A    I was already in his car when we went down the street.

Q    Was there a time when you were in a car with him heading to Las Vegas?

A    Yes.

Q    And that was on the same day, correct?

A    Yes.

Q    Okay.  And you've never given any money to Mr.  -- to

**UNITED STATES DISTRICT COURT**

EXHIBIT - I, 1

the defendant, correct?

A    No.

Q    You've never had intimate relationships, an intimate -- you've never had sex with the defendant?

A    No.

Q    What time did you leave Escondido?

A    Around 2:00.

Q    Okay.  And, again, this was the first day that you met the defendant?

A    Yes.

Q    You never worked for him previously in any capacity?

A    No.

Q    And you never told anyone that you worked with him -- you worked for him in any capacity?

A    No.

Q    Okay.  You never told anyone, for example, that he -- a month before or two weeks before he drove you to a swap meet on Vernon?

A    No.  Not that I can recall.

Q    Okay.  Once you got to Las Vegas -- in the car there was -- who else was in the car with you and the defendant?

A    Two other females.

Q    Okay.  And then there was -- they stopped at a hotel?

A    When we got to Vegas.

Q    When you got to Vegas.

**UNITED STATES DISTRICT COURT**

EXHIBIT - I, 2